UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Crim. No. 99-10371-RGS |
| | ) |
| v. | ) Violations: |
| | ) 18 U.S.C. § 1962(d) |
| JAMES J. BULGER, | ) 18 U.S.C. § 1962(c) |
| STEPHEN J. FLEMMI, and | ) 18 U.S.C. § 1963 |
| MICHAEL S. FLEMMI, | ) 18 U.S.C. § 1956(a)(1) |
| | ) 18 U.S.C. § 1956(h) |
| Defendants. | ) 18 U.S.C. § 1951 |
| | ) 18 U.S.C. § 1623 |
| | ) 18 U.S.C. § 1512 |
| | ) 18 U.S.C. § 1503 |
| | ) 18 U.S.C. § 982 |
| | ) 18 U.S.C. § 924(c) |
| | ) 18 U.S.C. § 922(k) |
| | ) 18 U.S.C. § 922(o) |
| | ) 18 U.S.C. § 894 |
| | ) 26 U.S.C. § 5841 |
| | ) 26 U.S.C. § 5845(a) |
| | ) 26 U.S.C. § 5861(d) |
| | ) 26 U.S.C. § 5871 |
| | ) 18 U.S.C. § 2 |

SECOND SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY in and for the District of

Massachusetts charges that:

COUNT ONE
(Racketeering Conspiracy)

THE ENTERPRISE

1.   From in or before 1972 and continuing until in or about

2000, within the District of Massachusetts and elsewhere, the

defendants **JAMES J. BULGER**, also known as "Whitey," "Jim," and

"Jimmy," and **STEPHEN J. FLEMMI**, and others known and unknown to

the grand jury, were members and associates of a criminal

organization known by various names such as "Winter Hill," "the

Hill," "the Winter Hill Gang," and "South Boston" (hereinafter
the "Bulger Group") whose members and associates associated
together and with others for the purpose of, among other things,
earning money through extortion, loansharking, bookmaking,
trafficking in narcotics and other controlled substances, and
committing crimes of violence including murder, attempted murder,
and assault.

2.    The Bulger Group, including its leadership, membership,
and associates, constituted an "enterprise" as defined by Title
18, United States Code, Section 1961(4), that is, a group of
individuals associated in fact, which engaged in, and the
activities of which affected, interstate and foreign commerce.
The Bulger Group affected interstate and foreign commerce by,
among other things, the sale of narcotics and other controlled
substances in Massachusetts and elsewhere that had been brought
into Massachusetts from places outside thereof, the extortion of
individuals and entities whose activities affected interstate
commerce, the control and operation of businesses affecting
interstate commerce, the use of financial institutions affecting
interstate commerce, and travel in interstate commerce.

3.    At various times during the period covered by this
Superseding Indictment, the defendants **JAMES J. BULGER** and
**STEPHEN J. FLEMMI** were the leaders of the Bulger Group.  At all
times covered by this Superseding Indictment, **MICHAEL S. FLEMMI**

was the brother of the defendant **STEPHEN J. FLEMMI**.  At various
times during the period covered by this Superseding Indictment,
**MICHAEL S. FLEMMI** rendered assistance to the defendant **STEPHEN J.
FLEMMI** and other members and associates of the Bulger Group,
including through, among other means, the commission of crimes
relating to obstruction of justice and weapons possession.

4.   The Bulger Group formed in or about 1972 as a result of
a merger of two South Boston criminal groups and one criminal
group based in Somerville, Massachusetts.  The two South Boston
criminal groups, one known as the Mullins Gang and another led by
two brothers, Donald and Kenneth Killeen, had waged a shooting
war for preeminence in South Boston in which the ranks of both
groups had been decimated.  The defendant **JAMES J. BULGER,** who
was aligned with the Killeen brothers, requested that Howard T.
Winter, the leader of the Somerville criminal group, intercede to
end the fighting in South Boston.  Winter agreed and the remnants
of the two South Boston groups were merged into one group led by
**BULGER.  BULGER** and his South Boston criminal associates
subsequently associated themselves with Winter's Somerville
group.  The resulting criminal organization became colloquially
known as the Winter Hill Gang.  The Winter Hill Gang engaged in
criminal activity throughout the Boston area and elsewhere.

5.   The principal members of the Winter Hill Gang included
Howard T. Winter, James L. Sims, Joseph M. McDonald, the

3

defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, and John V. Martorano.  In approximately 1976, Sims and McDonald became fugitives from federal charges relating to the theft and interstate transportation of stolen rare stamps.  In approximately 1978, Winter was incarcerated as a result of a conviction on state extortion charges.  In late 1978, Martorano became a fugitive in anticipation of his indictment on federal racketeering charges.  Martorano remained a fugitive until 1995, when he was apprehended in Florida.  Consequently, by approximately 1979, **BULGER** and **FLEMMI** assumed control of the activities of this criminal organization, referred to herein as the Bulger Group, and maintained that control through 1999. During this period, South Boston was the primary base of operations for this organization, which continued to operate throughout the Boston area and elsewhere.

<u>GOALS AND PURPOSES OF THE ENTERPRISE</u>

6.   The primary goals and purposes of the Bulger Group included the following:

a.   Generating money for members and associates of the enterprise through extortion, loansharking, bookmaking, and the sale and distribution of narcotics and other controlled substances;

4

b.    Preserving and protecting the enterprise's territories, operations, and profits through the use of violence and threats of violence;

c.    Promoting and enhancing the prestige, reputation, and position of the enterprise with respect to rival criminal organizations, victims, and members of the public through the use of violence and threats of violence;

d.    Intimidating and punishing members, workers, and associates of the enterprise who had fallen into disfavor or who had failed to remain loyal to the leadership of the enterprise; and

e.    Protecting the enterprise and its members from criminal prosecution through efforts to obstruct justice, including the use of violence and threats of violence against potential witnesses.

<u>MEANS AND METHODS OF THE ENTERPRISE</u>

7.    To further their goal of generating money for the enterprise, members and associates of the Bulger Group extorted money from persons generating illegal income, including persons engaged in the distribution of narcotics and other controlled substances, in bookmaking, and in loansharking.  In order to operate their illegal businesses without reprisals or interference from the Bulger Group, drug dealers, bookmakers and loansharks were required to make regular payments to the Bulger

5

Group.  These payments were commonly known as "rent."  Such
payments were made to representatives of the Bulger Group both
according to regular schedules and in the form of lump sums,
sometimes referred to as "fines," paid on one or several
occasions.

8.   To further their goal of generating money for the
enterprise, members and associates of the Bulger Group also
extorted money and other things of value from persons engaged in
commercial activities, such as the operation of taverns, liquor
stores, and real estate and lending transactions, and from
persons who otherwise had access to large amounts of funds.

9.   To further their goal of generating money for the
enterprise, members and associates of the Bulger Group also
engaged in income-generating criminal businesses, including
bookmaking and loansharking operations and wholesale and retail
trafficking in narcotics and other controlled substances.
Ordinarily, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**
delegated the operation of these criminal businesses to other
members and associates of the Bulger Group from whom they
collected a share of the proceeds of these illegal activities.

10.   The locations in which members and associates of the
Bulger Group frequently met for the purposes of planning and
conducting their criminal activities included among others, at
various times, Marshall Motors (also known as Motorama Sales,

6

Inc.), located at 12 Marshall Street, Somerville, Massachusetts, the Lancaster Foreign Car Service Garage, located at 19 Lancaster Street, Boston, Massachusetts, the South Boston Liquor Mart (also known as Stippo's Liquor Mart and Columbia Wine and Spirits), located at 295 Old Colony Avenue in South Boston, Massachusetts, the Rotary Variety Store (also known as the Rotary Video Store and South Boston Check Cashing), located at 309-325 Old Colony Avenue in South Boston, Massachusetts, and Triple-O's Lounge, located at 28 West Broadway in South Boston, Massachusetts.  The defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, were, at various times, among the owners, operators, and employees of the South Boston Liquor Mart, the Rotary Variety Store, and the parcels of real property on which they were located.

11.  Members and associates of the Bulger Group engaged in financial transactions with the proceeds of the Bulger Group's criminal activities, many of which were designed, in whole or in part, to disguise the nature and sources of those proceeds and the relationships of members and associates of the Bulger Group to those assets, and to shield those proceeds from seizure and forfeiture by law enforcement authorities.  For example, between approximately 1984 and 1999, members and associates of the Bulger Group, including the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI,** attempted to conduct and conducted a series of financial transactions involving the South Boston Liquor Mart, the real

property at 295 Old Colony Avenue on which the South Boston Liquor Mart was located, the real property adjacent to the South Boston Liquor Mart at 309-325 Old Colony Avenue, and the Rotary Variety Store located within 309-325 Old Colony Avenue.  These transactions were designed to facilitate the control of, and acquisition of income from, those assets by members of the Bulger Group, while disguising their true relationships to those assets and that the assets had been obtained, maintained, and operated through extortion and with the proceeds of extortion and other racketeering activities.

12.  To further their goals of earning money and gaining prestige within the Bulger Group, as well as to protect members of the Bulger Group, to preserve and enhance the reputation and position of the Bulger Group with respect to others, and to foster and maintain the Bulger Group's relationships with others, members and associates of the Bulger Group engaged in the threatened and actual use of violence, including assault, attempted murder and murder.  These activities included, but were not limited to, the following:

a.   In or about and between March 1973 and February 1974, at various locations in the District of Massachusetts and elsewhere, members and associates of the Bulger Group including **JAMES J. BULGER**, John V. Martorano, Joseph M. McDonald, James L. Sims, and others known and unknown to the grand jury, assaulted

8

and murdered the following individuals in connection with a
dispute with members of a rival group led by Al Notorangeli:

> (1)   Michael Milano - murdered on March 8, 1973;
>
> (2)   Dianne Sussman - shot on March 8, 1973;
>
> (3)   Louis Lapiana - shot on March 8, 1973;
>
> (4)   Al Plummer - murdered on March 19, 1973;
>
> (5)   Hugh Shields - shot on March 19, 1973;
>
> (6)   Frank Capizzi - shot on March 19, 1973;
>
> (7)   William O'Brien - murdered on March 24, 1973;
>
> (8)   Ralph DiMasi - shot on March 24, 1973;
>
> (9)   James Leary - murdered on April 3, 1973;
>
> (10) Joseph Notorangeli - murdered on April 18,
>       1973; and
>
> (11) Al Notorangeli - murdered on February 21,
>       1974.

     b.    On or about December 1, 1973, in the vicinity of
Dorchester, Massachusetts, the defendant **JAMES J. BULGER**, John V.
Martorano, Joseph M. McDonald, and others known and unknown to
the grand jury, murdered James O'Toole, a former associate of the
Charlestown-based McLaughlin Gang and an enemy of members and
associates of the Bulger Group.

     c.    In or about October 1974, in the vicinity of
Somerville, Massachusetts, the defendants **JAMES J. BULGER** and
**STEPHEN J. FLEMMI**, John V. Martorano, Joseph M. McDonald, and

9

others known and unknown to the grand jury, murdered James Sousa, a criminal associate who was involved in a botched robbery with other members and associates of the Bulger Group, after he was arrested and charged in connection with that robbery because he was believed to be a potential witness against and liability to members of the Bulger Group.

d.   In or about November 1974, in the vicinity of South Boston, Massachusetts, the defendant **JAMES J. BULGER**, and others known and unknown to the grand jury, murdered Paul McGonagle, who had been a member of the Mullins Gang and an opponent of **BULGER** during the battle for control of South Boston among rival criminal groups, and thereafter buried his remains in the vicinity of Tenean Beach, Dorchester, Massachusetts.

e.   On or about June 12, 1975, in the vicinity of Dorchester, Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, and others known and unknown to the grand jury, murdered Edward Connors, a person who had knowledge of the participation of members of the Bulger Group in the murder of James O'Toole.

f.   On or about November 5, 1975, in the vicinity of South Boston, Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, and others known and unknown to the grand jury, murdered Thomas King, a member of the

Bulger Group who was viewed as a threat to **BULGER** and other members of the organization, and thereafter buried his remains in the vicinity of the Neponset River, Quincy, Massachusetts.

g.   On or about November 6, 1975, in the vicinity of South Boston, Massachusetts, the defendant **JAMES J. BULGER**, and others known and unknown to the grand jury, murdered Francis "Buddy" Leonard, in an effort to divert attention from the disappearance of Thomas King.

h.   In or before May 1981, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, Joseph M. McDonald, John B. Callahan, and others known and unknown to the grand jury, conspired to murder Roger Wheeler, the owner of a business known as World Jai Alai.  On or about May 27, 1981, in the vicinity of the Southern Hills Country Club, Tulsa, Oklahoma, John V. Martorano and Joseph M. McDonald murdered Roger Wheeler.

i.   In or about late 1981, in the vicinity of South Boston, Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** murdered Debra Davis, a girlfriend of **FLEMMI** whom **BULGER** and **FLEMMI** viewed as posing a threat to **FLEMMI**, and thereafter buried her remains in the vicinity of the Neponset River, Quincy, Massachusetts.

j.   In or about July 1983, in the vicinity of South Boston, Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin J. Weeks, and others known and unknown to the

11

grand jury, kidnaped, extorted, and murdered Arthur "Bucky" Barrett.

k.   In or about early 1985, in the vicinity of South Boston, Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** murdered Deborah Hussey, who was the step-daughter of **FLEMMI** and whom **BULGER** and **FLEMMI** viewed as posing a threat to **FLEMMI**.

13.   In preparation for and in furtherance of their commission of crimes of violence, members and associates of the Bulger Group acquired and maintained firearms of various types and calibers, including handguns, rifles, automatic weapons, and shotguns, ammunition of various types and calibers, explosive devices and materials, silencers, other weapons, and disguises, badges, and other tools of the trade. Such weapons, ammunition, and other materials were secreted and stored at times in hidden locations and in large stockpiles. Such locations included, but were not limited to: a hidden location at the residence of George Kaufman in Brookline, Massachusetts which was utilized during at least the 1980s; a hidden compartment in the interior wall of a detached structure in the rear yard of 832 East Third Street, South Boston, Massachusetts, which was the residence at times of the defendant **STEPHEN J. FLEMMI** and of the parents of the defendant **STEPHEN J. FLEMMI** and **MICHAEL S. FLEMMI**, and where a large quantity of weapons and ammunition were placed and stored

12

at about the time of the sale of Kaufman's Brookline home; and
the premises at 8 Pilsudski Way, South Boston, Massachusetts,
which was the residence at times of Kevin J. Weeks and where, at
the direction of the defendant **JAMES J. BULGER**, a large quantity
of weapons and ammunition were placed that previously had been
stored both at Kaufman's Brookline home and at 832 East Third
Street in South Boston.   In or about January 2000, **MICHAEL S.
FLEMMI,** and others known and unknown to the grand jury, at the
direction of the defendant **STEPHEN J. FLEMMI,** removed a large
number of the weapons stored at 832 East Third Street in South
Boston in order to prevent their recovery and seizure by law
enforcement officers.

14.   As a means of preserving and protecting the enterprise
and its leadership from prosecution, members and associates of
the Bulger Group engaged in activities designed to hinder and
obstruct the administration of justice.   These activities
included, but were not limited to, the following:

a.   Members and associates of the Bulger Group used
and threatened to use violence, including murder, against actual
and potential witnesses with knowledge of the criminal activities
of the Bulger Group.   These activities included, but were not
limited to, the following:

(1)   In or about December 1976, members and
associates of the Bulger Group learned that Richard Castucci was

13

providing information to agents of the Federal Bureau of Investigation regarding the whereabouts of fugitives Joseph M. McDonald and James L. Sims. On or about December 30, 1976, in the vicinity of Somerville, Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, and others known and unknown to the grand jury, murdered Richard Castucci.

(2)   In or about May 1982, members and associates of the Bulger Group learned that Brian Halloran was providing information to agents of the Federal Bureau of Investigation regarding, among other things, the involvement of the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** and John V. Martorano in the murder of Roger Wheeler, and the involvement of **BULGER** and others in the murder of Louis Litif. On or about May 11, 1982, in the vicinity of Northern Avenue, South Boston, Massachusetts, **BULGER**, Kevin J. Weeks, and others known and unknown to the grand jury, murdered Brian Halloran and Michael Donahue, who was riding in an automobile with Halloran at the time Halloran was murdered.

(3)   In or about July 1982, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** learned that investigative efforts relating to the murder of Roger Wheeler were being directed towards John B. Callahan, former president of World Jai Alai. Concerned that Callahan might implicate **BULGER** and **FLEMMI** in the murder of Wheeler, **BULGER** and **FLEMMI** agreed with John V. Martorano to murder Callahan. On or about August 1, 1982, in the

14

vicinity of Ft. Lauderdale, Florida, John V. Martorano and Joseph
M. McDonald murdered John Callahan.

(4) In or about October and November 1984,
members and associates of the Bulger Group learned that John
McIntyre was cooperating with law enforcement officials including
agents of the Federal Bureau of Investigation and the United
States Customs Service concerning illegal activities of the
Bulger Group.  These illegal activities included the illegal
shipment of arms and ammunition aboard the fishing trawler
Valhalla to elements of the Irish Republican Army in Ireland in
September of 1984.  Members and associates of the Bulger Group,
including the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**
had contributed firearms and other materials to that shipment.
These illegal activities further included the illegal
distribution of drugs by members and associates of the Bulger
Group, including the importation of approximately thirty-six tons
of marihuana into Boston Harbor on board the vessel Ramsland,
which had been seized by federal authorities on or about November
14, 1984.  On or about November 30, 1984, in the vicinity of
South Boston, Massachusetts, the defendants **JAMES J. BULGER** and
**STEPHEN J. FLEMMI**, Kevin J. Weeks, and others known and unknown
to the grand jury, kidnaped and murdered John McIntyre.

(5)  In order to evade detection for the murders
of Arthur "Bucky" Barrett, John McIntyre, and Deborah Hussey, the

15

defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin J. Weeks, and other members and associates of the Bulger Group, buried the remains of these three persons in the basement of a private home located in South Boston, Massachusetts. In or about October 1985, **BULGER, FLEMMI**, Weeks, and others, having learned of the impending sale of that residence, exhumed the remains of these three persons and buried those remains in a common grave which they prepared in the vicinity of 55 Hallett Street, Dorchester, Massachusetts.

b.   Members and associates of the Bulger Group attempted to monitor the activities of grand juries investigating the Bulger Group, to improperly influence the testimony of witnesses called before those grand juries, and to improperly influence grand juries and courts conducting proceedings related to members and associates of the Bulger Group, including through perjury. For example, in or about late 1993, the defendant **STEPHEN J. FLEMMI** attempted to prevent the potential testimony of Richard O'Brien. In or about and between August and November 1995, **FLEMMI** improperly influenced the grand jury testimony of Richard O'Brien. In or about 1997 and 1998, Kevin J. Weeks met with and passed information between the defendant **STEPHEN J. FLEMMI** and John J. Connolly as part of an effort by **FLEMMI**, Connolly, and others to improperly influence federal court proceedings involving **FLEMMI**, including through perjury. In or

16

about June 2000, **MICHAEL S. FLEMMI** obstructed, by means of

perjury, a grand jury investigation concerning, among other

matters, the Bulger Group's weapons that had been concealed and

stored at 832 East Third Street in South Boston.

c. The leadership of the Bulger Group at times

arranged for or funded, in whole or in part, legal representation

of persons facing criminal charges who were associated with the

Bulger Group and who were believed to be potentially damaging

witnesses against the leadership of the Bulger Group. Such

persons included, among others, Paul Moore and David Lindholm.

In addition, leaders of the Bulger Group assisted each other, as

well as leaders of allied criminal groups, in funding their

defenses to criminal charges and other expenses associated with

arrest, detention, and prosecution. For example, in or about

1996, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin

J. Weeks, and others, caused approximately $10,000 in cash, which

was proceeds of racketeering activity, to be conveyed for use by

John V. Martorano for legal and other expenses.

d. Members and associates of the Bulger Group,

including the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**,

fostered and maintained relationships with active and former law

enforcement officers in order to obtain confidential

investigative information to which they were not entitled. Such

information included, for example, the existence of electronic

surveillance targeting members and associates of the Bulger Group
and the activities of grand juries investigating the Bulger
Group.  Other such information included the identities of
individuals actually and potentially cooperating with law
enforcement authorities in various capacities, including as
informants and witnesses.

e.  Members and associates of the Bulger Group at
times fled the jurisdiction to avoid apprehension by federal and
state law enforcement authorities and provided financial and
other support to other members and associates of the Bulger Group
who did the same.  For example, the defendants **JAMES J. BULGER**
and **STEPHEN J. FLEMMI,** and other members and associates of the
Bulger Group, provided financial support to federal fugitive John
V. Martorano during the period from approximately 1978 through
1995.  **BULGER** and **FLEMMI,** and other members and associates of the
Bulger Group, provided financial support to federal fugitives
Joseph M. McDonald and James L. Sims during the period from
approximately 1975 through 1982.  Kevin J. Weeks spoke with, met
with, and provided information and false identification to **BULGER**
while **BULGER** was a federal fugitive during 1995 and 1996.  In or
about late 1999, at **FLEMMI**'s behest and through a source supplied
by **FLEMMI,** Kevin J. Weeks obtained and provided to **FLEMMI** and
others confidential information concerning electronic

18

surveillance being conducted in connection with efforts to apprehend **BULGER**.

<u>THE RACKETEERING CONSPIRACY</u>

15.   From in or before 1972 and continuing until in or about 2000, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI**,

and others known and unknown to the grand jury, being persons employed by and associated with the Bulger Group, which enterprise engaged in, and whose activities affected, interstate and foreign commerce, did knowingly and intentionally conspire to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as that term is defined by Title 18, United States Code, Sections 1961(1) and 1961(5), and as set forth in paragraphs 17 through 80 of this Superseding Indictment.

16.   It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering.

<u>RACKETEERING ACT NUMBER ONE</u>
(Conspiracy to Murder Members of Notorangeli Group)

17.   From in or about early 1973 and continuing until in or about early 1974, in the District of Massachusetts and elsewhere,

19

the defendant **JAMES J. BULGER,** John V. Martorano, and others known and unknown to the grand jury, did commit an act involving murder, that is, did conspire together to murder members of a criminal organization headed by Al Notorangeli that was viewed as a threat to the Bulger Group, in violation of Section 1 of Chapter 265 and Section 7 of Chapter 274 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER TWO
(Murder of Michael Milano)

18.  On or about March 8, 1973, in the District of Massachusetts, the defendant **JAMES J. BULGER,** John V. Martorano, and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with dangerous weapons, did assault Michael Milano with the intent to murder him and did thereby kill and murder Michael Milano in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER THREE
(Murder of Al Plummer)

19.  On or about March 19, 1973, in the District of Massachusetts, the defendant **JAMES J. BULGER,** John V. Martorano, and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with dangerous weapons did assault Al Plummer with the intent to murder him and did thereby kill and murder Al

20

Plummer in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

### RACKETEERING ACT NUMBER FOUR
(Murder of William O'Brien)

20.  On or about March 24, 1973, in the District of Massachusetts, the defendant **JAMES J. BULGER**, John V. Martorano, and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with dangerous weapons, did assault William O'Brien with the intent to murder him and did thereby kill and murder William O'Brien in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

### RACKETEERING ACT NUMBER FIVE
(Murder of James O'Toole)

21.  On or about December 1, 1973, in the District of Massachusetts, the defendant **JAMES J. BULGER**, John V. Martorano, and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with dangerous weapons, did assault James O'Toole with the intent to murder him and did thereby kill and murder James O'Toole in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

### RACKETEERING ACT NUMBER SIX
(Murder of Al Notorangeli)

22.  On or about February 21, 1974, in the District of Massachusetts, the defendant **JAMES J. BULGER**, John V. Martorano,

and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with dangerous weapons, did assault Al Notorangeli with the intent to murder him and did thereby kill and murder Al Notorangeli in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER SEVEN
(Murder of James Sousa)

23.   The defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** committed the following acts involving murder, the commission of any one of which constitutes the commission of Racketeering Act Number Seven:

A.   Murder Conspiracy

24.   In or about October 1974, in the District of Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, and others known and unknown to the grand jury, did commit an act involving murder, that is, did conspire together to murder James Sousa, in violation of Section 1 of Chapter 265 and Section 7 of Chapter 274 of the Massachusetts General Laws.

B.   Murder

25.   In or about October 1974, in the District of Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, and others known and unknown to the

22

grand jury, did commit an act involving murder, that is, aiding
and abetting one another and being armed with a dangerous weapon,
did assault James Sousa with the intent to murder him and did
thereby kill and murder James Sousa in violation of Section 1 of
Chapter 265 and Section 2 of Chapter 274 of the Massachusetts
General Laws.

### RACKETEERING ACT NUMBER EIGHT
(Murder of Paul McGonagle)

26.   In or about November 1974, in the District of
Massachusetts, the defendant **JAMES J. BULGER,** and others known
and unknown to the grand jury, did commit an act involving
murder, that is, aiding and abetting one another and being armed
with dangerous weapons, did assault Paul McGonagle with the
intent to murder him and did thereby kill and murder Paul
McGonagle in violation of Section 1 of Chapter 265 and Section 2
of Chapter 274 of the Massachusetts General Laws.

### RACKETEERING ACT NUMBER NINE
(Murder of Edward Connors)

27.   On or about June 12, 1975, in the District of
Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J.
FLEMMI,** John V. Martorano, and others known and unknown to the
grand jury, did commit an act involving murder, that is, aiding
and abetting one another and being armed with dangerous weapons,
did assault Edward Connors with the intent to murder him and did
thereby kill and murder Edward Connors in violation of Section 1

23

of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts
General Laws.

RACKETEERING ACT NUMBER TEN<br>(Murder of Thomas King)

28.  The defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**
committed the following acts involving murder, the commission of
any one of which constitutes the commission of Racketeering Act
Number Ten:

A.  Murder Conspiracy

29.  In or about November 1975, in the District of
Massachusetts and elsewhere, the defendants **JAMES J. BULGER** and
**STEPHEN J. FLEMMI**, John V. Martorano, and others known and
unknown to the grand jury, did commit an act involving murder,
that is, did conspire together to murder Thomas King, in
violation of Section 1 of Chapter 265 and Section 7 of Chapter
274 of the Massachusetts General Laws.

B.  Murder

30.  On or about November 5, 1975, in the District of
Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J.
FLEMMI**, John V. Martorano, and others known and unknown to the
grand jury, did commit an act involving murder, that is, aiding
and abetting one another and being armed with dangerous weapons,
did assault Thomas King with the intent to murder him and did
thereby kill and murder Thomas King in violation of Section 1 of

24

Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

## RACKETEERING ACT NUMBER ELEVEN
### (Murder of Francis "Buddy" Leonard)

31.  On or about November 6, 1975, in the District of Massachusetts, the defendant **JAMES J. BULGER,** and others known and unknown to the grand jury, did commit an act involving murder, that is, being armed with a dangerous weapon, did assault Francis "Buddy" Leonard with the intent to murder him and did thereby kill and murder Francis "Buddy" Leonard in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

## RACKETEERING ACT NUMBER TWELVE
### (Murder of Richard Castucci)

32.  On or about December 30, 1976, in the District of Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI,** John V. Martorano, and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with a dangerous weapon, did assault Richard Castucci with the intent to murder him and did thereby kill and murder Richard Castucci in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

## RACKETEERING ACT NUMBER THIRTEEN
### (Murder of Roger Wheeler)

33.   The defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** committed the following acts involving murder, the commission of any one of which constitutes the commission of Racketeering Act Number Thirteen:

> A.   Murder Conspiracy

34.   In or about May 1981, in the District of Massachusetts and elsewhere, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, Joseph McDonald, and others known and unknown to the grand jury, did commit an act involving murder, that is, did conspire together to murder Roger Wheeler, in violation of Section 1 of Chapter 265 and Section 7 of Chapter 274 of the Massachusetts General Laws.

> B.   Murder

35.   On or about May 27, 1981, in the Northern District of Oklahoma, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, Joseph McDonald, and others known and unknown to the grand jury, did commit an act involving murder, that is, did unlawfully and with malice aforethought cause the death of Roger Wheeler, in violation of Section 701.7 of Title 21 and Section 432 of Title 22 of the Oklahoma Statutes.

RACKETEERING ACT NUMBER FOURTEEN
(Murder of Debra Davis)

36.   In or about late 1981, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** did commit an act involving murder, that is, aiding and abetting one another, did assault Debra Davis with the intent to murder her and did thereby kill and murder Debra Davis in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER FIFTEEN
(Murder of Brian Halloran)

37.   On or about May 11, 1982, in the District of Massachusetts, the defendant **JAMES J. BULGER**, and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with dangerous weapons, did assault Brian Halloran with the intent to murder him and did thereby kill and murder Brian Halloran in violation of Section 1 of Chapter 265 and Section 2 of Chapter 274 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER SIXTEEN
(Murder of Michael Donahue)

38.   On or about May 11, 1982, in the District of Massachusetts, the defendant **JAMES J. BULGER**, and others known and unknown to the grand jury, did commit an act involving murder, that is, aiding and abetting one another and being armed with dangerous weapons, did assault Michael Donahue with the intent to murder Brian Halloran and did thereby kill and murder

27

Michael Donahue in violation of Section 1 of Chapter 265 and

Section 2 of Chapter 274 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER SEVENTEEN
(Murder of John Callahan)

39.   The defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**

committed the following acts involving murder, the commission of

any one of which constitutes the commission of Racketeering Act

Number Seventeen:

A.   Murder Conspiracy

40.   In or about and between June and August 1982, in the

District of Massachusetts and elsewhere, the defendants **JAMES J.**

**BULGER** and **STEPHEN J. FLEMMI**, John V. Martorano, Joseph McDonald,

and others known and unknown to the grand jury, did commit an act

involving murder, that is, did conspire together to murder John

Callahan, in violation of Section 1 of Chapter 265 and Section 7

of Chapter 274 of the Massachusetts General Laws.

B.   Murder

41.   On or about August 1, 1982, in the Southern District of

Florida and elsewhere, the defendants **JAMES J. BULGER** and **STEPHEN**

**J. FLEMMI**, John V. Martorano, Joseph McDonald, and others known

and unknown to the grand jury, did commit an act involving

murder, that is, did unlawfully kill a human being, to wit, John

Callahan, which killing was perpetrated from a premeditated

28

design to effect the death of a human being, in violation of

Sections 782.04(1)(a) and 777.011 of the Florida Statutes.

### RACKETEERING ACT NUMBER EIGHTEEN
(Murder of Arthur "Bucky" Barrett)

42.  In or about August 1983, in the District of

Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J.**

**FLEMMI**, and others known and unknown to the grand jury, did

commit an act involving murder, that is, aiding and abetting one

another and being armed with a dangerous weapon, did assault

Arthur "Bucky" Barrett with the intent to murder him and did

thereby kill and murder Arthur "Bucky" Barrett in violation of

Section 1 of Chapter 265 and Section 2 of Chapter 274 of the

Massachusetts General Laws.

### RACKETEERING ACT NUMBER NINETEEN
(Murder of John McIntyre)

43.  On or about November 30, 1984, in the District of

Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J.**

**FLEMMI**, and others known and unknown to the grand jury, did

commit an act involving murder, that is, aiding and abetting one

another and being armed with a dangerous weapon, did assault John

McIntyre with the intent to murder him and did thereby kill and

murder John McIntyre in violation of Section 1 of Chapter 265 and

Section 2 of Chapter 274 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER TWENTY
(Murder of Deborah Hussey)

44.  In or about early 1985, in the District of
Massachusetts, the defendants **JAMES J. BULGER** and **STEPHEN J.
FLEMMI,** and others known and unknown to the grand jury, did
commit an act involving murder, that is, aiding and abetting one
another, did assault Deborah Hussey with the intent to murder her
and did thereby kill and murder Deborah Hussey in violation of
Section 1 of Chapter 265 and Section 2 of Chapter 274 of the
Massachusetts General Laws.

RACKETEERING ACT NUMBER TWENTY-ONE
(Extortion Conspiracy: "Rent")

45.  From in or before 1979 and continuing until in or about
1996, both dates being approximate and inclusive, within the
District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and
intentionally conspire to obtain property from persons known and
unknown to the grand jury, including but not limited to the
following individuals,

Paul Moore,
William Shea,
John Cherry,
Thomas Cahill,
John "Red" Shea,
Joseph Tower,
Anthony Attardo,
David Lindholm,
Richard O'Brien,

Richard "Jay" Johnson, and
Kevin Hayes,

who were engaged in unlawful activities, including illegal
gambling, illegal money lending, and illegal trafficking in
narcotics and other controlled substances, with their consent,
which consent was induced by the wrongful use of actual and
threatened force, violence, and fear, and to thereby obstruct,
delay, and affect commerce and the movement of any article in
commerce, in violation of Section 1951 of Title 18 of the United
States Code.

46.   It was part of the conspiracy that members and
associates of the Bulger Group identified individuals engaged in
illegal business in South Boston and elsewhere who were
considered to be favorable targets for extortionate demands,
based upon such factors as those individuals' own involvement in
illegal activities, their possession of and access to large
amounts of cash and other things of value to the Bulger Group,
and their lack of prior affiliation with organized crime groups.

47.   It was further part of the conspiracy that, while
directly and indirectly communicating extortionate demands to
targeted individuals, members and associates of the Bulger Group
sometimes communicated to those targeted individuals, both
directly and indirectly and at times by means of deception,
threats of physical violence and other forms of reprisal against

31

those individuals in the event they failed to meet the demands of
members and associates of the Bulger Group.

48.   It was further part of the conspiracy that, at the same
time that direct and indirect threats were communicated to
targeted individuals, members and associates of the Bulger Group
sometimes offered enticements to targeted individuals, including
but not limited to the prospects of protection by the Bulger
Group and future opportunities for generating income through
association with the Bulger Group, as a means of further inducing
compliance with their extortionate demands.

49.   It was further part of the conspiracy that, through
words and actions, members and associates of the Bulger Group
established, maintained, fostered, and sought advantage from a
reputation for ruthlessness and violence in order to assist in
inducing compliance with extortionate demands.  In addition and
for the same purpose, members and associates of the Bulger Group,
through words and actions, established, maintained, fostered, and
sought advantage from the knowledge, understanding and acceptance
among persons engaged in illegal activities, including narcotics
trafficking, loansharking and bookmaking, that so-called "rent"
payments to members and associates of the Bulger Group were
required in order to conduct those activities in the South Boston
area and elsewhere without suffering reprisal at the hands of
members and associates of the Bulger Group.

50.   It was further part of the conspiracy that, at times, members and associates of the Bulger Group, in the presence of targeted individuals, committed actual acts of violence, engaged in acts and discussions in preparation for the commission of acts of violence, and used and brandished firearms and other weapons in order to induce compliance with extortionate demands.

RACKETEERING ACT NUMBER TWENTY-TWO<br>
(Extortion of Richard O'Brien)

51.   From in or before 1980 and continuing until in or about 1993, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and**
**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and intentionally obtain property, to wit, United States currency from Richard O'Brien with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce, in violation of Sections 1951 and 2 of Title 18 of the United States Code.

RACKETEERING ACT NUMBER TWENTY-THREE<br>
(Extortion of Kevin Hayes)

52.   From in or before 1994 and continuing until in or about 1996, both dates being approximate and inclusive, within the District of Massachusetts, the defendant

**JAMES J. BULGER,**

33

and others known and unknown to the grand jury, did knowingly and
intentionally obtain property, to wit, United States currency
from Kevin Hayes with his consent, which consent was induced by
the wrongful use of actual and threatened force, violence, and
fear, and thereby did obstruct, delay, and affect commerce and
the movement of any article in commerce, in violation of Sections
1951 and 2 of Title 18 of the United States Code.

### RACKETEERING ACT NUMBER TWENTY-FOUR
(Extortion Conspiracy:  "Fines")

53.   From in or before 1980 and continuing until in or about
1990, both dates being approximate and inclusive, within the
District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and
intentionally conspire to obtain property from persons known and
unknown to the grand jury, including but not limited to the
following individuals,

Michael Solimando,
Stephen Rakes,
Julie Rakes,
Richard Bucheri,
Raymond Slinger, and
Timothy Connolly,

who were engaged in a variety of commercial activities, including
but not limited to real estate transactions and development, the
operation of wholesale and retail liquor businesses, and the sale
and brokering of insurance policies, with their consent, which

34

consent was induced by the wrongful use of actual and threatened
force, violence, and fear, and to thereby obstruct, delay, and
affect commerce and the movement of any article in commerce, in
violation of Section 1951 of Title 18 of the United States Code.

54.  It was part of the conspiracy that members and
associates of the Bulger Group sought opportunities to extort
money and other things of value from persons who were engaged in
commercial activities in the South Boston area and elsewhere who
were viewed as favorable targets for extortion based upon such
factors as their access to large amounts of cash and other assets
and the likelihood that they would be unable or unwilling to
report being victims of extortion to law enforcement authorities.

55.  It was further part of the conspiracy that members and
associates of the Bulger Group arranged meetings with such
individuals targeted for extortion at discrete locations where
threats were conveyed directly and indirectly to these
individuals.  Locations where such meetings took place included,
but were not limited to, Triple-O's Lounge, the South Boston
Liquor Mart, and the Rotary Variety Store.  At times, firearms
were displayed, brandished, and otherwise used in the course of
such meetings for the purpose of inducing compliance with
extortionate demands.

RACKETEERING ACT NUMBER TWENTY-FIVE
(Extortion of Michael Solimando)

56.  From in or about September 1982 and continuing until in
or about February 1983, both dates being approximate and
inclusive, within the District of Massachusetts and elsewhere,
the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and
intentionally obtain property, to wit, United States currency
from Michael Solimando with his consent, which consent was
induced by the wrongful use of actual and threatened force,
violence, and fear, and thereby did obstruct, delay, and affect
commerce and the movement of any article in commerce, in
violation of Sections 1951 and 2 of Title 18 of the United States
Code.

RACKETEERING ACT NUMBER TWENTY-SIX
(Extortion of Stephen Rakes and Julie Rakes)

57.  From in or before December 1983 and continuing until in
or about May 1984, both dates being approximate and inclusive,
within the District of Massachusetts and elsewhere, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, did knowingly and
intentionally obtain property, to wit, a business known as
Stippo's Liquor Mart, a corporation known as Stippo's, Inc., and
the right to purchase a parcel of real property located at 295

Old Colony Avenue, South Boston, Massachusetts, from Stephen

Rakes and Julie Rakes with their consent, which consent was

induced by the wrongful use of actual and threatened force,

violence, and fear, and thereby did obstruct, delay, and affect

commerce and the movement of any article in commerce, in

violation of Sections 1951 and 2 of Title 18 of the United States

Code.

RACKETEERING ACT NUMBER TWENTY-SEVEN
(Extortion of Richard Bucheri)

58.  In or about August and September 1986, within the

District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and

intentionally obtain property, to wit, United States currency

from Richard Bucheri with his consent, which consent was induced

by the wrongful use of actual and threatened force, violence, and

fear, and thereby did obstruct, delay, and affect commerce and

the movement of any article in commerce, in violation of Sections

1951 and 2 of Title 18 of the United States Code.

RACKETEERING ACT NUMBER TWENTY-EIGHT
(Extortion of Raymond Slinger)

59.  In or about 1988, within the District of Massachusetts,

the defendants

**JAMES J. BULGER,**

37

and others known and unknown to the grand jury, did, by a verbal

communication, maliciously threaten an injury to the person of

Raymond Slinger with intent thereby to extort a pecuniary

advantage and with intent to compel Raymond Slinger to do an act

against his will, in violation of Section 25 of Chapter 265 and

Section 2 of Chapter 274 of the Massachusetts General Laws.

RACKETEERING ACT NUMBER TWENTY-NINE
(Narcotics Distribution Conspiracy)

60.   From in or before 1980 and continuing until in or about

1990, both dates being approximate and inclusive, within the

District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and

intentionally conspire to distribute and to possess with intent

to distribute five kilograms or more of cocaine, a Schedule II

narcotic drug controlled substance, and 1,000 kilograms or more

of marihuana, a Schedule I drug controlled substance, in

violation of Section 846 of Title 21 of the United States Code.

61.   It was part of the conspiracy that members and

associates of the Bulger Group engaged directly in the

distribution of wholesale quantities of cocaine and marihuana in

the South Boston area and elsewhere, the profits of which

distribution were shared with other members and associates of the

Bulger Group.

38

62.  It was further part of the conspiracy that members and associates of the Bulger Group demanded and collected regular "rent" payments, and occasionally lump-sum "fines," from various individuals engaged in the wholesale and retail distribution of cocaine and marihuana in the South Boston area and elsewhere. These individuals made such payments, which were then shared among members of the Bulger Group, from proceeds generated by the distribution of cocaine and marihuana by those individuals. Those individuals included, but were not limited to, Joseph Murray, Michael Murray, Michael Caruana, Frank Lepere, David Lindholm, William Shea, Paul Moore, John "Red" Shea, Joseph Tower, John Cherry, and Hobart Willis.

## RACKETEERING ACT NUMBER THIRTY
(Money Laundering Conspiracy)

63.  From in or before 1984 and continuing until in or about August 1999, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendants

### JAMES J. BULGER and
### STEPHEN J. FLEMMI,

and others known and unknown to the grand jury, knowing that the property involved represented the proceeds of some form of unlawful activity, did knowingly and intentionally conspire:

(1)  to conduct financial transactions, affecting interstate and foreign commerce, which in fact involved the proceeds of extortion, in violation of Title 18, United States

Code, Section 1951, and Chapter 265, Section 25 of the
Massachusetts General Laws, and distribution of narcotics and
controlled substances, in violation of Title 21, United States
Code, Section 841(a)(1), knowing that the transactions were
designed in whole and in part to conceal and disguise the nature,
the location, the source, the ownership, and the control of the
proceeds of said extortion and distribution of narcotics and
controlled substances; and

   (2) to engage in monetary transactions affecting
interstate and foreign commerce in criminally derived property
that was of a value greater than $10,000, said property having
been derived from specified unlawful activity, that is, extortion
in violation of Title 18, United States Code, Section 1951, and
Chapter 265, Section 25 of the Massachusetts General Laws, and
distribution of narcotics and controlled substances, in violation
of Title 21, United States Code, Section 841(a)(1),
in violation of Section 1956(h) of Title 18 of the United States
Code.

  64. It was part of the conspiracy that members and
associates of the Bulger Group acquired, maintained, operated,
purported to transfer, attempted to transfer, transferred, and
controlled the following assets, among others:  the real property
located at 295 Old Colony Avenue, South Boston, Massachusetts;
the corporations known as Stippo's, Inc. and the South Boston

Liquor Mart, Inc.; the business known, at various times, as Stippo's Liquor Mart, the South Boston Liquor Mart, and Columbia Wine and Spirits; the real property located at 309-325 Old Colony Avenue, South Boston, Massachusetts; the business known as the Rotary Variety Store; the corporation known as Rotary Variety Store, Inc.; and the real property located at 337 West Fourth Street, South Boston, Massachusetts.

65. It was further part of the conspiracy that members and associates of the Bulger Group used extortion and income generated from the criminal activities of the Bulger Group, including income from the collection of extortion or "rent" payments and the distribution of narcotics and controlled substances, to acquire, maintain, operate, and control all or parts of the assets described in paragraph 64 above.

66. It was further part of the conspiracy that members and associates of the Bulger Group conducted financial transactions involving the assets described in paragraph 64 above that were designed, in part, to create the appearance of legitimacy in the relationships between those assets and members and associates of the Bulger Group, to facilitate the control of, and acquisition of income from, those assets by members and associates of the Bulger Group, and to disguise their true relationships to those assets and that the assets had been obtained, maintained, and

41

operated through extortion and with the proceeds of extortion and
other racketeering activities.

67.   It was further part of the conspiracy that members and
associates of the Bulger Group used the assets described in
paragraph 64 above as bases for some of the criminal activities
of the Bulger Group and as sources of documentable and seemingly
non-criminal income, such as wages and salary, mortgage and rent
payments, and income from sales of the assets.

OVERT ACTS

68.   In furtherance of the conspiracy and to effect the
objectives thereof, the defendants **JAMES J. BULGER** and **STEPHEN J.
FLEMMI**, and others, did commit and cause to be committed the
following overt acts:

a.   In or about January 1984, the defendants **JAMES J.
BULGER** and **STEPHEN J. FLEMMI**, Kevin J. Weeks, and others,
acquired a business known as Stippo's Liquor Mart, its inventory,
and the option to purchase 295 Old Colony Avenue for cash which
included proceeds of extortion and other racketeering activities
of the Bulger Group.

b.   On or about January 26, 1984, the defendant **JAMES
J. BULGER**, Kevin J. Weeks, and others, caused to be executed a
stock purchase agreement whereby ownership of the corporation
known as Stippo's, Inc., was transferred from Stephen Rakes and

42

Julie Rakes to Kevin J. Weeks and which falsely represented the consideration paid for that transfer of ownership.

c.   From in or about 1984 and continuing until in or about 1986, the defendant **JAMES J. BULGER**, Kevin J. Weeks, and others, in various amounts and at various times, used cash proceeds of racketeering activities, including extortion and drug distribution, for the purpose of maintaining and operating the liquor business located at 295 Old Colony Avenue.

d.   On or about September 4, 1985, Kevin P. O'Neil, Kevin J. Weeks, and others, created the "Three Hundred Nine Old Colony Avenue Trust," of which O'Neil and Weeks were trustees, for the purpose of purchasing the real property located at 309-325 Old Colony Avenue, South Boston, Massachusetts.

e.   On or about September 4, 1985, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin P. O'Neil, Kevin J. Weeks, and others, purchased the real property located at 309-325 Old Colony Avenue, South Boston, Massachusetts for approximately $210,000 including a down payment of approximately $20,000, to which **BULGER, FLEMMI**, O'Neil and Weeks each contributed approximately $5,000 and which included proceeds of extortion and other racketeering activities of the Bulger Group.

f.   On or about October 16, 1985, the defendant **JAMES J. BULGER**, Kevin P. O'Neil, and others, caused the sale of the real property located at 337 West Fourth Street, South Boston,

Massachusetts, which O'Neil had purchased in approximately 1979 for approximately $13,000, to **BULGER** for approximately $30,000, approximately $25,000 of which was financed by a mortgage granted by **BULGER** directly to O'Neil and secured by the real property.

g.   On or about May 16, 1986, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin J. Weeks, and others, caused the sale of 295 Old Colony Avenue from Kevin J. Weeks to **BULGER**, Mary Flemmi, mother of **FLEMMI** and nominal owner on behalf of **FLEMMI**, and Weeks as joint one-third owners.

h.   On or about May 20, 1986, Kevin J. Weeks, and others, caused to be executed a stock transfer agreement whereby ownership of the business known as the South Boston Liquor Mart was transferred from Weeks to the Kevin P. O'Neil and Gordon F. McIntyre for $300,000, which proceeds were shared among the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, and Kevin J. Weeks.

i.   On or about October 31, 1986, the defendant **JAMES J. BULGER**, and others, caused the sale of the real property located at 337 West Fourth Street, South Boston, Massachusetts, which **BULGER** had purchased from Kevin P. O'Neil in 1985 for approximately $30,000, from **BULGER** to Barbara A. Buckley for approximately $150,000.

j.   On or about January 12, 1987, the defendant **JAMES J. BULGER** and Kevin P. O'Neil, and others, caused the discharge of the mortgage granted to O'Neil by **BULGER** on or about October 16, 1985 and secured by the real property located at 337 West Fourth Street, South Boston, Massachusetts.

k.   In or about and between 1986 and 1989, Kevin P. O'Neil, and others, made monthly rent payments for occupancy of the real property located at 295 Old Colony Avenue to the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, in the person of his mother Mary Flemmi, and Kevin J. Weeks.

l.   In or about 1989, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** and Kevin J. Weeks, and others, caused the sale of 295 Old Colony Avenue from **BULGER**, Weeks, and Mary Flemmi to **BULGER** as sole owner, in exchange for payments by **BULGER** of approximately $100,000 each, which included proceeds of extortion and other racketeering activities of the Bulger Group, to **FLEMMI** and Weeks.

m.   On or about November 10, 1989, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin J. Weeks, and others, caused the sale of the Rotary Variety Store Company, Inc. for approximately $75,000, which proceeds were shared among the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** and Kevin J. Weeks.

n.    On or about December 8, 1989, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin P. O'Neil, Kevin J. Weeks, and others, caused the sale of 295 Old Colony Avenue from **BULGER** to the Shamrock Realty Trust, of which Kevin P. O'Neil and Gordon F. McIntyre were trustees, in exchange for $400,000.

o.    On or about December 8, 1989, the defendant **JAMES J. BULGER** and Kevin P. O'Neil, and others, caused to be issued a mortgage in the amount of $400,000 and secured by the real property at 295 Old Colony Avenue, pursuant to which the Shamrock Realty Trust agreed to make monthly payments to **BULGER.**

p.    On or about and between January 1990 and March 1997, Kevin P. O'Neil, and others, through the Shamrock Realty Trust, made monthly mortgage payments to the defendant **JAMES J. BULGER** in the amount of approximately $4672.90 each.

q.    From in or before 1984 and continuing until in or about 1990, Kevin P. O'Neil, Gordon F. McIntyre, Kevin J. Weeks, and others, caused wages and salary to be paid to the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin J. Weeks, and others, by the entity doing business at 295 Old Colony Avenue.

r.    From in or before 1986 and continuing until or about 1989, Kevin J. Weeks, and others, caused wages and salary to be paid to the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** by the entity doing business at 309-325 Old Colony Avenue.

46

s.   On or about March 15, 1994, the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, Kevin P. O'Neil, Kevin J. Weeks, and others, caused the sale of the real property located at 309-325 Old Colony Avenue in exchange for approximately $375,000, the proceeds of which were shared among **BULGER, FLEMMI**, O'Neil, and Weeks.

<u>RACKETEERING ACT NUMBER THIRTY-ONE</u>
(Money Laundering)

69.   In or about 1989, within the District of Massachusetts, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI**,

and others known and unknown to the grand jury, knowing that the property involved in a financial transaction, to wit, 295 Old Colony Avenue, South Boston, Massachusetts, represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct a financial transaction, to wit, the sale of 295 Old Colony Avenue, South Boston, Massachusetts from the defendant **JAMES J. BULGER**, Mary Flemmi, and Kevin J. Weeks to **JAMES J. BULGER**, affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity, that is, extortion in violation of Title 18, United States Code, Section 1951, and Chapter 265, Section 25 of the Massachusetts General Laws, and distribution of narcotics and controlled substances, in violation of Title 21, United States Code, Section

841(a)(1), knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Sections 1956(a)(1)(B)(i) and 2 of Title 18 of the United States Code.

## RACKETEERING ACT NUMBER THIRTY-TWO
(Money Laundering)

70.   The defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI** committed the following money laundering offenses, the commission of any one of which constitutes the commission of Racketeering Act Number Thirty-Two:

### Racketeering Act 32(A)

71.   On or about December 8, 1989, within the District of Massachusetts, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, knowing that the property involved in a financial transaction, to wit, 295 Old Colony Avenue, South Boston, Massachusetts, represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct a financial transaction, to wit, the sale of 295 Old Colony Avenue, South Boston, Massachusetts for $400,000, affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity, that is, extortion in violation of Title 18, United States Code,

Section 1951 and Chapter 265, Section 25 of the Massachusetts General Laws, and distribution of narcotics and controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Sections 1956(a)(1)(B)(i) and 2 of Title 18 of the United States Code.

### Racketeering Acts 32(B) - 32(PPP)

72.   On or about the dates indicated below, within the District of Massachusetts and elsewhere, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, knowing that the properties involved in the financial transactions set forth below, to wit, certain real property and the proceeds of a liquor business, represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct financial transactions, to wit, mortgage payments, affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity, that is, extortion in violation of Title 18, United States Code, Section 1951, and Chapter 265, Section 25 of the Massachusetts General Laws, and distribution of narcotics and controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowing that the

49

transactions were designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, in violation of Sections 1956(a)(1)(B)(i) and 2 of Title 18 of the United States Code.

| RACK'G ACT NO. | CHECK NO. | DEPOSIT DATE | PAYEE | AMOUNT OF TRANSACTION |
|---|---|---|---|---|
| 32(B) | Unnumbered | 01/12/90 | JAMES J. BULGER | $4,672.96 |
| 32(C) | 101 | 02/09/90 | JAMES J. BULGER | $4,672.96 |
| 32(D) | 102 | 03/12/90 | JAMES J. BULGER | $4,672.96 |
| 32(E) | 103 | 04/19/90 | JAMES J. BULGER | $4,672.96 |
| 32(F) | 104 | 05/11/90 | JAMES J. BULGER | $4,672.96 |
| 32(G) | 109 | 08/15/90 | JAMES J. BULGER | $4,672.90 |
| 32(H) | 115 | 10/15/90 | JAMES J. BULGER | $4,672.90 |
| 32(I) | 118 | 12/13/90 | JAMES J. BULGER | $4,672.90 |
| 32(J) | 123 | 02/14/91 | JAMES J. BULGER | $4,672.90 |
| 32(K) | 128 | 05/10/91 | JAMES J. BULGER | $4,672.90 |
| 32(L) | 131 | 08/08/91 | JAMES J. BULGER | $4,672.90 |
| 32(M) | 142 | 12/11/91 | JAMES J. BULGER | $4,672.90 |
| 32(N) | 144 | 01/10/92 | JAMES J. BULGER | $4,672.90 |
| 32(O) | 146 | 02/07/92 | JAMES J. BULGER | $4,672.90 |
| 32(P) | 148 | 03/10/92 | JAMES J. BULGER | $4,672.90 |
| 32(Q) | 151 | 04/09/92 | JAMES J. BULGER | $4,672.90 |
| 32(R) | 153 | 05/14/92 | JAMES J. BULGER | $4,672.90 |
| 32(S) | 156 | 06/11/92 | JAMES J. BULGER | $4,672.90 |
| 32(T) | 160 | 07/10/92 | JAMES J. BULGER | $4,672.90 |
| 32(U) | 161 | 08/12/92 | JAMES J. BULGER | $4,672.90 |
| 32(V) | 164 | 09/11/92 | JAMES J. BULGER | $4,672.90 |

| RACK'G ACT NO. | CHECK NO. | DEPOSIT DATE | PAYEE | AMOUNT OF TRANSACTION |
|---|---|---|---|---|
| 32(W) | 168 | 10/13/92 | JAMES J. BULGER | $4,672.90 |
| 32(X) | 170 | 11/13/92 | JAMES J. BULGER | $4,672.90 |
| 32(Y) | 173 | 12/11/92 | JAMES J. BULGER | $4,672.90 |
| 32(Z) | 176 | 01/12/93 | JAMES J. BULGER | $4,672.90 |
| 32(AA) | 178 | 02/12/93 | JAMES J. BULGER | $4,672.90 |
| 32(BB) | 181 | 03/11/93 | JAMES J. BULGER | $4,672.90 |
| 32(CC) | 182 | 04/14/93 | JAMES J. BULGER | $4,672.90 |
| 32(DD) | 185 | 05/17/93 | JAMES J. BULGER | $4,672.90 |
| 32(EE) | 187 | 06/09/93 | JAMES J. BULGER | $4,672.90 |
| 32(FF) | 189 | 07/09/93 | JAMES J. BULGER | $4,672.90 |
| 32(GG) | 190 | 08/16/93 | JAMES J. BULGER | $4,672.90 |
| 32(HH) | 194 | 09/22/93 | JAMES J. BULGER | $4,672.90 |
| 32(II) | 195 | 10/13/93 | JAMES J. BULGER | $4,672.90 |
| 32(JJ) | 198 | 11/17/93 | JAMES J. BULGER | $4,672.90 |
| 32(KK) | 200 | 12/13/93 | JAMES J. BULGER | $4,672.90 |
| 32(LL) | 203 | 01/12/94 | JAMES J. BULGER | $4,672.90 |
| 32(MM) | 204 | 02/14/94 | JAMES J. BULGER | $4,672.90 |
| 32(NN) | 207 | 03/14/94 | JAMES J. BULGER | $4,672.90 |
| 32(OO) | 210 | 04/14/94 | JAMES J. BULGER | $4,672.90 |
| 32(PP) | 213 | 05/12/94 | JAMES J. BULGER | $4,672.90 |
| 32(QQ) | 216 | 06/10/94 | JAMES J. BULGER | $4,672.90 |
| 32(RR) | 221 | 07/09/94 | JAMES J. BULGER | $4,672.90 |
| 32(SS) | 223 | 08/17/94 | JAMES J. BULGER | $4,672.90 |
| 32(TT) | 226 | 09/16/94 | JAMES J. BULGER | $4,672.90 |
| 32(UU) | 228 | 10/27/94 | JAMES J. BULGER | $4,672.90 |
| 32(VV) | 231 | 11/18/94 | JAMES J. BULGER | $4,672.90 |

| RACK'G ACT NO. | CHECK NO. | DEPOSIT DATE | PAYEE | AMOUNT OF TRANSACTION |
|---|---|---|---|---|
| 32(WW) | 233 | 12/12/94 | JAMES J. BULGER | $4,672.90 |
| 32(XX) | 238 | 03/30/95 | JAMES J. BULGER | $4,672.90 |
| 32(YY) | 239 | 04/20/95 | JAMES J. BULGER | $4,672.90 |
| 32(ZZ) | 243 | 06/14/95 | JAMES J. BULGER | $4,672.90 |
| 32(AAA) | 245 | 07/21/95 | JAMES J. BULGER | $4,672.90 |
| 32(BBB) | 250 | 11/30/95 | JAMES J. BULGER | $4,672.90 |
| 32(CCC) | 252 | 01/12/96 | JAMES J. BULGER | $4,672.90 |
| 32(DDD) | 253 | 01/12/96 | JAMES J. BULGER | $4,672.90 |
| 32(EEE) | 255 | 02/16/96 | JAMES J. BULGER | $4,672.90 |
| 32(FFF) | 256 | 02/17/96 | JAMES J. BULGER | $4,672.90 |
| 32(GGG) | 260 | 05/10/96 | JAMES J. BULGER | $4,672.90 |
| 32(HHH) | 261 | 05/13/96 | JAMES J. BULGER | $4,672.90 |
| 32(III) | 264 | 06/20/96 | JAMES J. BULGER | $4,672.90 |
| 32(JJJ) | 265 | 06/20/96 | JAMES J. BULGER | $4,672.90 |
| 32(KKK) | 266 | 06/20/96 | JAMES J. BULGER | $4,672.90 |
| 32(LLL) | 268 | 07/15/96 | JAMES J. BULGER | $4,672.90 |
| 32(MMM) | 269 | 07/20/96 | JAMES J. BULGER | $4,672.90 |
| 32(NNN) | 270 | 08/15/96 | JAMES J. BULGER | $4,672.90 |
| 32(OOO) | 278 | 01/06/97 | JAMES J. BULGER | $4,672.90 |
| 32(PPP) | 281 | 03/20/97 | JAMES J. BULGER | $4,672.90 |

## RACKETEERING ACT NUMBER THIRTY-THREE
### (Money Laundering)

73.  In or about July 1996, within the District of

Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, knowing that the property involved in a financial transaction, to wit, approximately $10,000 cash, represented the proceeds of some form of unlawful activity, did knowingly and intentionally conduct a financial transaction, to wit, the transfer of approximately $10,000 cash for use by John V. Martorano, affecting interstate and foreign commerce, which in fact involved the proceeds of a specified unlawful activity, that is, extortion in violation of Title 18, United States Code, Section 1951, and Chapter 265, Section 25 of the Massachusetts General Laws, and distribution of narcotics and controlled substances, in violation of Title 21, United States Code, Section 841(a)(1), knowing that the transaction was designed in whole or in part to conceal and disguise the nature, the location, the source, the ownership, and the control of the proceeds of said specified unlawful activity, and with intent to promote the carrying on of said specified unlawful activity, in violation of Sections 1956(a)(1)(A)(i), 1956(a)(1)(B)(i) and 2 of Title 18 of the United States Code.

### RACKETEERING ACT NUMBER THIRTY-FOUR
(Extortionate Collection of Credit)

74.   From in or about 1992 and continuing until in or about 1997, within the District of Massachusetts and elsewhere, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and
intentionally participate in the use of extortionate means to
collect and attempt to collect extensions of credit made to Al
Sapochetti in the amount of approximately $33,000, in violation
of Sections 894(a) and 2 of Title 18 of the United States Code.

## RACKETEERING ACT NUMBER THIRTY-FIVE
(Obstruction of Justice)

75.   From in or about 1993 and continuing until in or about
November 1995, both dates being approximate and inclusive, within
the District of Massachusetts and elsewhere, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did corruptly
endeavor to influence, obstruct, and impede the due
administration of justice, to wit, did knowingly and
intentionally attempt to influence and influence the potential
and actual testimony of Richard O'Brien, with intent to obstruct
and impede a United States grand jury investigating members and
associates of the Bulger Group, in violation of Sections 1503 and
2 of Title 18 of the United States Code.

## RACKETEERING ACT NUMBER THIRTY-SIX
(Obstruction of Justice)

76.   On or about August 20 and 28, 1998, within the District
of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

54

and others known and unknown to the grand jury, did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that the defendant **STEPHEN J. FLEMMI** did knowingly and willfully make false and misleading declarations before the United States District Court with intent to obstruct and impede the prosecution of the case of <u>United States v. Stephen J. Flemmi</u>, Criminal Docket Number 94-10287-MLW, in violation of Sections 1503 and 2 of Title 18 of the United States Code.

77.   At the times and place stated above, the defendant **STEPHEN J. FLEMMI,** and others, corruptly endeavored to influence, obstruct, and impede the due administration of justice by the means and in the manner stated below:

a.   In or about 1997 and 1998, the United States District Court for the District of Massachusetts was conducting pretrial hearings in the case of <u>United States v. Stephen J. Flemmi</u>, Criminal Docket Number 94-10287-MLW.  These hearings concerned, among other things, **FLEMMI's** claim that the case should be dismissed because he was immune from prosecution. **FLEMMI's** immunity claim was based, among other things, on his claim that the conduct of certain agents of the Federal Bureau of Investigation in protecting him from prosecution amounted to a grant of immunity.

b.   **FLEMMI** testified in support of his motion to dismiss in or about August and September 1998.  **FLEMMI** gave false and misleading testimony that was designed, among other things, to shield his corrupt relationship with former Federal Bureau of Investigation Special Agent John J. Connolly and to falsely attribute acts that were corrupt and intended to assist **FLEMMI** to other agents of the Federal Bureau of Investigation.  For example, **FLEMMI** falsely testified, in substance, that Federal Bureau of Investigation Special Agent John Morris had warned **FLEMMI** and **BULGER** in approximately December 1994 and January 1995 that **FLEMMI** and **BULGER** were about to be indicted and arrested. In fact, former Federal Bureau of Investigation Special Agent John J. Connolly had provided that warning to **FLEMMI**.  **FLEMMI** coordinated with Connolly prior to **FLEMMI's** testimony regarding the substance of **FLEMMI's** testimony and **FLEMMI's** subsequent false and misleading testimony included, but was not limited to, the following:

(1)  On August 20, 1998:

Defense Attorney Fishman:   Did you receive some advance notice of this indictment?

**STEPHEN FLEMMI:**   That's the big question, I guess. Yes.

Defense Attorney Fishman:   And when did you receive advance notice?

**STEPHEN FLEMMI:**   That information, when?

| | |
|---|---|
| Defense Attorney Fishman: | When? |
| **STEPHEN FLEMMI:** | About a week prior to the indictment coming down. |
| Defense Attorney Fishman: | And what was -- from whom did you hear that the -- what did you hear? |
| **STEPHEN FLEMMI:** | What I heard, I got the information from Jim Bulger, who got the information from John Morris. |
| Defense Attorney Fishman: | What did he say to you? |
| **STEPHEN FLEMMI:** | He said that the indictments were coming down within a short period of time, within I believe a week or so, and that information, what he told me, was a memo from Washington that the indictments were there, and they were going to be coming down in a week. |
| Defense Attorney Fishman: | Well, how do you know it was Morris? |
| **STEPHEN FLEMMI:** | Jim Bulger told me. |
| Defense Attorney Fishman: | What did he say? |
| **STEPHEN FLEMMI:** | He told me Morris contacted him and told him the indictments were coming down; they were coming down within a week. And they came down within a week. At least I got arrested within a week - a week later. |

(2)  On August 28, 1998:

**FLEMMI** testified: "I'm saying that the indictment come down or the information, whatever it was that come down, I had information from Jim Bulger that the indictment come down - was coming down. I think it was a cross (sic) memo or a memo in

57

Washington, and he had become aware of it.  John Morris made him aware of it.  He called me and made me aware of it."

### RACKETEERING ACT NUMBER THIRTY-SEVEN
(Evidence Tampering and Obstruction of Justice)

78.   The defendant **STEPHEN J. FLEMMI** committed the following acts involving evidence tampering and obstruction of justice, the commission of any one of which constitutes the commission of Racketeering Act Number Thirty-Seven:

A.   Evidence Tampering

79.   In or about January 2000, within the District of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did corruptly persuade another person, to wit, **MICHAEL S. FLEMMI** and others, with intent to cause and induce such person to alter and conceal objects, to wit, a large quantity of firearms stored in and removed from the vicinity of 832 East Third Street, South Boston, Massachusetts, with intent to impair those objects' integrity and availability for use in an official proceeding, to wit, a federal grand jury investigation and federal criminal prosecution of members and associates of the Bulger Group, in violation of Sections 1512(b)(2)(B) and 2 of Title 18 of the United States Code.

B.   <u>Obstruction of Justice</u>

80.   In or about January 2000, within the District of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did corruptly endeavor to influence, obstruct, and impede the due administration of justice, to wit, did knowingly and intentionally cause to be removed and remove a large quantity of firearms from the vicinity of 832 East Third Street, South Boston, Massachusetts in order to prevent their recovery and seizure by law enforcement officers and with intent to obstruct and impede a United States grand jury investigating members and associates of the Bulger Group, in violation of Sections 1503 and 2 of Title 18 of the United States Code.

All in violation of Title 18, United States Code, Section 1962(d).

COUNT TWO
(Racketeering)

81.  From in or before 1972 and continuing until in or about

2000, both dates being approximate and inclusive, within the

District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, being persons

employed by and associated with the Bulger Group described above,

which was an enterprise engaged in, and the activities of which

affected, interstate and foreign commerce, did knowingly and

intentionally conduct and participate, directly and indirectly,

in the conduct of the affairs of the Bulger Group through a

pattern of racketeering activity, as that term is defined by

Title 18, United States Code, Sections 1961(1) and 1961(5).

82.  The allegations of Paragraphs 1 through 14 of this

Superseding Indictment and Racketeering Acts One through Thirty-

Seven, as set forth in Paragraphs 17 through 80 of this

Superseding Indictment, are hereby realleged and incorporated as

if fully set forth herein.  As set forth in paragraphs 17 through

80 of this Superseding Indictment, each defendant conducted and

participated, directly and indirectly, in the conduct of the

affairs of the enterprise through a pattern of racketeering

activity as follows:

60

a.   The defendant **JAMES J. BULGER** conducted and participated in the conduct of the affairs of the enterprise by committing the following acts of racketeering:

(1)   Racketeering Acts 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20 relating to murder;

(2)   Racketeering Acts 21, 22, 23, 24, 25, 26, 27, and 28 relating to extortion;

(3)   Racketeering Act 29 relating to drug distribution; and

(4)   Racketeering Acts 30, 31, 32, and 33 relating to money laundering.

b.   The defendant **STEPHEN J. FLEMMI** conducted and participated in the conduct of the affairs of the enterprise by committing the following acts of racketeering:

(1)   Racketeering Acts 7, 9, 10, 12, 13, 14, 17, 18, 19, and 20 relating to murder;

(2)   Racketeering Acts 21, 22, 24, 25, and 27 relating to extortion;

(3)   Racketeering Act 29 relating to drug distribution;

(4)   Racketeering Acts 30, 31, 32, and 33 relating to money laundering;

(5)   Racketeering Act 34 relating to extortionate collection of credit; and

(6)   Racketeering Acts 35, 36, and 37 relating to evidence tampering and obstruction of justice.

All in violation of Title 18, United States Code, Section 1962(c).

COUNT THREE
(Extortion Conspiracy:  "Rent")

83.   The allegations of paragraphs 1 through 14 of this
Superseding Indictment are hereby realleged and incorporated as
if fully set forth herein.

84.   From in or before 1979 and continuing until in or about
1996, both dates being approximate and inclusive, within the
District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and
intentionally conspire to obtain property from persons known and
unknown to the grand jury, including but not limited to the
following individuals,

Paul Moore,
William Shea,
John Cherry,
Thomas Cahill,
John "Red" Shea,
Joseph Tower,
Anthony Attardo,
David Lindholm,
Richard O'Brien,
Richard "Jay" Johnson, and
Kevin Hayes,

who were engaged in unlawful activities, including illegal
gambling, illegal money lending, and illegal trafficking in
narcotics and other controlled substances, with their consent,
which consent was induced by the wrongful use of actual and
threatened force, violence, and fear, and to thereby obstruct,

63

delay, and affect commerce and the movement of any article in commerce.

85.   It was part of the conspiracy that the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, and others known and unknown to the grand jury, did commit and cause to be committed those acts and engaged in that conduct described in paragraphs 46 through 50 of this Superseding Indictment, which are hereby realleged and incorporated as if fully set forth herein.

All in violation of Title 18, United States Code, Section 1951.

## COUNT FOUR
(Extortion of Kevin Hayes)

86.   From in or before 1994 and continuing until in or about 1996, both dates being approximate and inclusive, within the District of Massachusetts, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, did knowingly and intentionally obtain property, to wit, United States currency from Kevin Hayes with his consent, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, and thereby did obstruct, delay, and affect commerce and the movement of any article in commerce.

All in violation of Title 18, United States Code, Sections 1951 and 2.

COUNT FIVE
(Money Laundering Conspiracy)

87.   The allegations of paragraphs 1 through 14 of this
Superseding Indictment are hereby realleged and incorporated as
if fully set forth herein.

88.   From in or before 1984 and continuing until in or about
August 1999, both dates being approximate and inclusive, within
the District of Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, knowing that the
property involved represented the proceeds of some form of
unlawful activity, did knowingly and intentionally conspire:

(1)   to conduct financial transactions, affecting
interstate and foreign commerce, which in fact involved the
proceeds of extortion, in violation of Title 18, United States
Code, Section 1951, and Chapter 265, Section 25 of the
Massachusetts General Laws, and distribution of narcotics and
controlled substances, in violation of Title 21, United States
Code, Section 841(a)(1), knowing that the transactions were
designed in whole and in part to conceal and disguise the nature,
the location, the source, the ownership, and the control of the
proceeds of said extortion and distribution of narcotics and
controlled substances, and

(2)   to engage in monetary transactions affecting interstate and foreign commerce in criminally derived property that was of a value greater than $10,000, said property having been derived from specified unlawful activity, that is, extortion in violation of Title 18, United States Code, Section 1951, and Chapter 265, Section 25 of the Massachusetts General Laws, and distribution of narcotics and controlled substances, in violation of Title 21, United States Code, Section 841(a)(1),

in violation of Section 1956(h) of Title 18 of the United States Code.

89.   It was part of the conspiracy that the defendants **JAMES J. BULGER** and **STEPHEN J. FLEMMI**, and others known and unknown to the grand jury, did commit and cause to be committed those acts and engaged in that conduct described in paragraphs 64 through 68 of this Superseding Indictment, which are hereby realleged and incorporated as if fully set forth herein.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS SIX THROUGH TWENTY-SIX
(Money Laundering)

90.  On or about the dates indicated below, within the

District of Massachusetts and elsewhere, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, knowing that the

properties involved in the financial transactions set forth

below, to wit, certain real property and the proceeds of a liquor

business, represented the proceeds of some form of unlawful

activity, did knowingly and intentionally conduct financial

transactions, to wit, mortgage payments, affecting interstate and

foreign commerce, which in fact involved the proceeds of a

specified unlawful activity, that is, extortion in violation of

Title 18, United States Code, Section 1951, and Chapter 265,

Section 25 of the Massachusetts General Laws, and distribution of

narcotics and controlled substances, in violation of Title 21,

United States Code, Section 841(a)(1), knowing that the

transactions were designed in whole or in part to conceal and

disguise the nature, the location, the source, the ownership, and

the control of the proceeds of said specified unlawful activity,

in violation of Sections 1956(a)(1)(B)(i) and 2 of Title 18 of

the United States Code.

| COUNT NO. | CHECK NO. | DATE OF DEPOSIT | PAYEE | AMOUNT OF TRANSACTION |
|---|---|---|---|---|
| 6 | 231 | 11/18/94 | JAMES J. BULGER | $4,672.90 |
| 7 | 233 | 12/12/94 | JAMES J. BULGER | $4,672.90 |
| 8 | 238 | 03/30/95 | JAMES J. BULGER | $4,672.90 |
| 9 | 239 | 04/20/95 | JAMES J. BULGER | $4,672.90 |
| 10 | 243 | 06/14/95 | JAMES J. BULGER | $4,672.90 |
| 11 | 245 | 07/21/95 | JAMES J. BULGER | $4,672.90 |
| 12 | 250 | 11/30/95 | JAMES J. BULGER | $4,672.90 |
| 13 | 252 | 01/12/96 | JAMES J. BULGER | $4,672.90 |
| 14 | 253 | 01/12/96 | JAMES J. BULGER | $4,672.90 |
| 15 | 255 | 02/16/96 | JAMES J. BULGER | $4,672.90 |
| 16 | 256 | 02/17/96 | JAMES J. BULGER | $4,672.90 |
| 17 | 260 | 05/10/96 | JAMES J. BULGER | $4,672.90 |
| 18 | 261 | 05/13/96 | JAMES J. BULGER | $4,672.90 |
| 19 | 264 | 06/20/96 | JAMES J. BULGER | $4,672.90 |
| 20 | 265 | 06/20/96 | JAMES J. BULGER | $4,672.90 |
| 21 | 266 | 06/20/96 | JAMES J. BULGER | $4,672.90 |
| 22 | 268 | 07/15/96 | JAMES J. BULGER | $4,672.90 |
| 23 | 269 | 07/20/96 | JAMES J. BULGER | $4,672.90 |
| 24 | 270 | 08/15/96 | JAMES J. BULGER | $4,672.90 |
| 25 | 278 | 01/06/97 | JAMES J. BULGER | $4,672.90 |
| 26 | 281 | 03/20/97 | JAMES J. BULGER | $4,672.90 |

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

COUNT TWENTY-SEVEN
(Money Laundering)

91.   In or about July 1996, within the District of
Massachusetts and elsewhere, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, knowing that the
property involved in a financial transaction, to wit,   .
approximately $10,000 cash, represented the proceeds of some form
of unlawful activity, did knowingly and intentionally conduct a
financial transaction, to wit, the transfer of approximately
$10,000 cash for use by John V. Martorano, affecting interstate
and foreign commerce, which in fact involved the proceeds of a
specified unlawful activity, that is, extortion in violation of
Title 18, United States Code, Section 1951, and Chapter 265,
Section 25 of the Massachusetts General Laws, and distribution of
narcotics and controlled substances, in violation of Title 21,
United States Code, Section 841(a)(1), knowing that the
transaction was designed in whole or in part to conceal and
disguise the nature, the location, the source, the ownership, and
the control of the proceeds of said specified unlawful activity,
and with intent to promote the carrying on of said specified
unlawful activity, in violation of Sections 1956(a)(1)(A)(i),
1956(a)(1)(B)(i) and 2 of Title 18 of the United States Code.

70

<u>COUNT TWENTY-EIGHT</u>
(Extortionate Collection of Credit)

92.   From in or about 1992 and continuing until in or about 1997, within the District of Massachusetts and elsewhere, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and intentionally participate in the use of extortionate means to collect and attempt to collect extensions of credit made to Al Sapochetti in the amount of approximately $33,000.

All in violation of Title 18, United States Code, Sections 894(a) and 2.

COUNT TWENTY-NINE
(Obstruction of Justice)

93.   From in or about 1993 and continuing until in or about November 1995, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did corruptly endeavor to influence, obstruct, and impede the due administration of justice, to wit, did knowingly and intentionally attempt to influence and influence the potential and actual testimony of Richard O'Brien, with intent to obstruct and impede a United States grand jury investigating members and associates of the Bulger Group.

All in violation of Title 18, United States Code, Sections 1503 and 2.

## COUNT THIRTY
### (Perjury)

94.   On or about August 20 and 28, 1998, within the District of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

while testifying under oath in a proceeding before a court of the United States in the District of Massachusetts, knowingly did make a false material declaration as set forth in paragraphs 95 through 97 of this Superseding Indictment.

95.   At the times and place stated above, the United States District Court for the District of Massachusetts was conducting pretrial hearings in the case of United States v. Stephen J. Flemmi, Criminal Docket Number 94-10287-MLW.   These hearings concerned, among other things, **FLEMMI's** claim that the case should be dismissed because he was immune from prosecution. **FLEMMI's** immunity claim was based, among other things, on his claim that the conduct of certain agents of the Federal Bureau of Investigation in protecting him from prosecution amounted to a grant of immunity.

96.   **FLEMMI** testified in support of his motion to dismiss in or about August and September 1998.   **FLEMMI** gave false testimony under oath that was designed, among other things, to shield his corrupt relationship with former Federal Bureau of Investigation Special Agent John J. Connolly and to falsely attribute acts that

were corrupt and intended to assist **FLEMMI** to other agents of the

Federal Bureau of Investigation.   For example, **FLEMMI** falsely

testified, in substance, that Federal Bureau of Investigation

Special Agent John Morris had warned **FLEMMI** and **BULGER** in

approximately December 1994 and January 1995 that **FLEMMI** and

**BULGER** were about to be indicted and arrested.   In fact, former

Federal Bureau of Investigation Special Agent John J. Connolly

had provided that warning to **FLEMMI**.   **FLEMMI** coordinated with

Connolly prior to **FLEMMI's** testimony regarding the substance of

**FLEMMI's** testimony.   Specifically, the defendant **STEPHEN J.**

**FLEMMI**, while testifying under oath before the Court on August 20

and 28, 2000, knowingly made the following declarations in

response to questions with respect to matters material to the

proceedings before the Court:

        (a)     On August 20, 1998:

Defense Attorney Fishman:     Did you receive some advance notice
                                 of this indictment?

**STEPHEN FLEMMI:**          That's the big question, I guess.
                                 Yes.

Defense Attorney Fishman:     And when did you receive advance
                                 notice?

**STEPHEN FLEMMI:**          That information, when?

Defense Attorney Fishman:     When?

**STEPHEN FLEMMI:**          About a week prior to the
                                 indictment coming down.

Defense Attorney Fishman:        And what was -- from whom did you
                                 hear that the -- what did you hear?

**STEPHEN FLEMMI:**              **What I heard, I got the information
                                 from Jim Bulger, who got the
                                 information from John Morris.**

Defense Attorney Fishman:        What did he say to you?

**STEPHEN FLEMMI:**              **He said that the indictments were
                                 coming down within a short period
                                 of time, within I believe a week or
                                 so, and that information, what he
                                 told me, was a memo from Washington
                                 that the indictments were there,
                                 and they were going to be coming
                                 down in a week.**

Defense Attorney Fishman:        Well, how do you know it was
                                 Morris?

**STEPHEN FLEMMI:**              **Jim Bulger told me.**

Defense Attorney Fishman:        What did he say?

**STEPHEN FLEMMI:**              **He told me Morris contacted him and
                                 told him the indictments were
                                 coming down; they were coming down
                                 within a week.  And they came down
                                 within a week.  At least I got
                                 arrested within a week - a week
                                 later.**

    (b)  On August 28, 1998:

**FLEMMI** testified: "I'm saying that the indictment come down

or the information, whatever it was that come down, **I had**

**information from Jim Bulger that the indictment come down - was**

**coming down.  I think it was a cross (sic) memo or a memo in**

**Washington, and he had become aware of it.  John Morris made him**

**aware of it.  He called me and made me aware of it.**"

97.   The declarations of the defendant **STEPHEN J. FLEMMI** which are underscored and in bold type above, as he then and there well knew and believed, were false in that John J. Connolly, and not John Morris, had provided **BULGER** and **FLEMMI** with information concerning the imminent indictment.

All in violation of Title 18, United States Code, Section 1623.

<u>COUNT THIRTY-ONE</u>
(Obstruction of Justice)

98.   On or about August 20 and 28, 1998, within the District
of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did corruptly

endeavor to influence, obstruct, and impede the due

administration of justice in that he knowingly made false and

misleading declarations before a court of the United States in

the District of Massachusetts, with intent to obstruct and impede

the court proceedings set forth in Count Thirty above, the

contents of which are hereby realleged and incorporated as if

fully set forth herein.

All in violation of Title 18, United States Code, Sections
1503 and 2.

<u>COUNT THIRTY-TWO</u>
(Evidence Tampering)

99.   In or about January 2000, within the District of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did corruptly persuade another person, to wit, **MICHAEL S. FLEMMI** and others, with intent to cause and induce such person to alter and conceal objects, to wit, a large quantity of firearms stored in and removed from the vicinity of 832 East Third Street, South Boston, Massachusetts, with intent to impair those objects' integrity and availability for use in an official proceeding, to wit, a federal grand jury investigation and federal criminal prosecution of members and associates of the Bulger Group.

All in violation of Title 18, United States Code, Sections 1512(b)(2)(B) and 2.

<u>COUNT THIRTY-THREE</u>
(Obstruction of Justice)

100. In or about January 2000, within the District of Massachusetts, the defendants

**STEPHEN J. FLEMMI and
MICHAEL S. FLEMMI,**

and others known and unknown to the grand jury, did corruptly endeavor to influence, obstruct, and impede the due administration of justice, to wit, did knowingly and intentionally cause to be removed and remove a large quantity of firearms from the vicinity of 832 East Third Street, South Boston, Massachusetts in order to prevent their recovery and seizure by law enforcement officers and with intent to obstruct and impede a United States grand jury investigating members and associates of the Bulger Group.

All in violation of Title 18, United States Code, Sections 1503 and 2.

COUNT THIRTY-FOUR
(Perjury)

101. On or about June 7, 2000, within the District of Massachusetts, the defendant

**MICHAEL S. FLEMMI,**

while under oath and testifying in a proceeding before a grand jury of the United States in the District of Massachusetts, knowingly did make a false material declaration as set forth in paragraphs 102 through 104 of this Superseding Indictment.

102. At the time and place stated above, a United States grand jury in the District of Massachusetts was conducting an investigation of the criminal activities of the Bulger Group, including the involvement of members and associates of the Bulger Group in violent racketeering activities, such as assault and murder, involving the use of firearms and other weapons. It was material to this investigation that the grand jury determine when, where, and how members and associates of the Bulger Group acquired, stored, concealed, and moved weapons and ammunition at various locations and at various times, including in the vicinity of 832 East Third Street, South Boston, Massachusetts in or about and between the late 1980s and January 2000.

103. On or about January 13, 2000, law enforcement officers executed a search warrant at 832 East Third Street, South Boston, Massachusetts, which was the residence at times of the defendant **MICHAEL S. FLEMMI's** parents and his brother **STEPHEN J. FLEMMI.**

80

During the execution of that search warrant, law enforcement
officers discovered a hidden location which contained silencers,
a handgun, and ammunition and which appeared to have been
constructed to conceal and store a large number of firearms.  The
defendant **MICHAEL S. FLEMMI** was thereafter served with a subpoena
to testify before the grand jury described above regarding his
knowledge of this hidden location and any weapons that had been
concealed there.  Testifying under oath before the grand jury on
June 7, 2000, the defendant **MICHAEL S. FLEMMI** testified that,
prior to the January 13, 2000 execution of the search warrant, he
had never seen the hidden weapons storage location or any weapons
concealed there and was unaware of its existence.  Specifically,
the defendant **MICHAEL S. FLEMMI**, while testifying under oath
before the grand jury on June 7, 2000, knowingly made the
following declarations in response to questions with respect to
matters material to the grand jury investigation:

Q:      Were there any occasions when you visited your
        parents when you were, you would spend time in
        this structure in the rear yard with them?

A:      **No, I never, I never, the last time I was in there
        was about three years ago.**  Somebody broke a
        window in one of the sliding doors, and I, I went
        down, and I asked my mother, 'What happened to the
        door?'

        She said that she didn't know.  So, I called the
        glass company, and they came in and put a glass, a
        new glass door in there.

        Prior to that, the last time I was in there was in
        1990 when they had a, my father's 50 -- it was

either his birthday or an anniversary.  **That's the last time it was used as far as I know**.

                 * * *

Q:        Okay.  Now, as to any of the items that were found in that location during the execution of the search warrant, had you seen any of those items before that day?

A:        **Never**.

                 * * *

Q:        Prior to the execution of the search warrant that day, had you ever seen that hidden location behind the wall?

A:        **Never**.

Q:        Did you know it was there?

A:        **No, sir**.

Q:        Had you ever had any conversation with anybody about any hidden location in that detached structure?

A:        **No, sir**.

Q:        Had you ever seen any firearms at all at your mother's house --

A:        **No**.

Q:        -- prior to that day?

A:        **No, sir**.

Q:        Do you, do you have any knowledge as to whether, at anytime, there were any rifles in that rack structure?

A:        **I, that I couldn't tell you.  I wouldn't know, sir**.

                 * * *

Q:     Now, as you sit here today, Mr. Flemmi, do you
       know whose firearm stuff that was?

A:     **No, sir**.

Q:     Do you have any idea how it got into that detached
       --

A:     **No, sir**.

Q:     -- structure?

A:     **No, sir**.

Q:     And you don't know who constructed that concealed
       location?

A:     **No, I don't, sir**.

                        * * *

Q:     Now, the, this panel behind which all this
       ammunition and other paraphernalia was found, I
       mean, it wasn't like if somebody had come in to
       burglarize, they would have known that the panel
       was there; is that fair to say?

A:     If somebody came, I wouldn't know.  I don't --

Q:     Well, you've been in there.  Did you know it was
       there?

A:     **No**.

Q:     Okay.

A:     **I was very surprised**.

Q:     And you've been in there several times?

A:     Prior.

Q:     In that sun room?

A:     Well, a couple of times; yeah.  I mean, prior to,
       when my father was there; yeah.

Q:        And, you know, it wasn't obvious to you that it
          was there?

A:        **<u>No</u>**.

104. The declarations of the defendant **MICHAEL S. FLEMMI**
which are underscored and in bold type above, as he then and
there well knew and believed, were false in that the defendant
**MICHAEL S. FLEMMI** had seen the hidden weapons location prior to
the execution of the search warrant on January 13, 2000, did have
knowledge of its existence prior to the execution of the search
warrant on January 13, 2000, and had participated at the
direction of **STEPHEN J. FLEMMI** in the movement of weapons from
that hidden location prior to the execution of the search warrant
on January 13, 2000.

All in violation of Title 18, United States Code, Section
1623.

<u>COUNT THIRTY-FIVE</u>
(Obstruction of Justice)

105. On or about June 7, 2000, within the District of Massachusetts, the defendant

**MICHAEL S. FLEMMI,**

and others known and unknown to the grand jury, did corruptly endeavor to influence, obstruct, and impede the due administration of justice in that he knowingly made false and misleading declarations before a federal grand jury in the District of Massachusetts, with intent to obstruct and impede the grand jury investigation set forth in Count Thirty-Three above, the contents of which are hereby realleged and incorporated as if fully set forth herein.

All in violation of Title 18, United States Code, Sections 1503 and 2.

COUNT THIRTY-SIX
(Possession of Firearms in Furtherance of Violent Crime)

106. From in or before the late 1980s and continuing until in or about January 2000, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, in furtherance of crimes of violence for which he could be prosecuted in a court of the United States, to wit, racketeering conspiracy and racketeering, as charged in Counts One and Two of this Superseding Indictment, did knowingly and intentionally possess one or more firearms, to wit, the following firearms concealed and stored in the vicinity of 832 East Third Street, South Boston, Massachusetts:

a.   .22-caliber High Standard derringer pistol, serial no. 1988516

b.   .38 special-caliber F.I.E. derringer pistol, serial no. 006539

c.   .22-caliber Sterling Arms pistol, serial no. A65037

d.   .357 magnum-caliber Astra revolver, serial no. R168791

e.   .38 special-caliber Smith & Wesson Airweight revolver, model 12-2, serial no. C812421

f.   .44 magnum-caliber Smith & Wesson revolver, serial no. S170577

g.   .357 magnum-caliber Smith & Wesson revolver, model 19-4, serial no. 58K4233

h.   .380-caliber Walther pistol, model PP, serial no. 38030A

i.   .380-caliber Walther pistol, model PP, serial no. 24082A

j.   .22-caliber High Standard pistol, model 101, serial no. 1488287

k.   9mm-caliber Walther pistol, model P38, serial no. 833a

l.   .38 special-caliber Smith & Wesson revolver, model 36, serial no. 738299

m.   9mm-caliber Walther pistol, model P38, serial no. 5052b

n.   .38 special-caliber Smith & Wesson revolver, model 15-2, serial no. K538670

o.   9mm-caliber Uzi rifle, model A, serial no. SA02888m

p.   frame of .45-caliber Government pistol, model 1911A1, with no markings relating to serial no.

q.   .25-caliber Beretta Jetfire pistol, model 950B, serial no. B18595

r.   .45-caliber Colt pistol, model NM, serial no. 25603-NM

s.   .45-caliber Colt pistol, model NM, serial no. 11008-NM

t.   .45-caliber Ithaca pistol, model 1911A1, serial no. 1862465

u.   .25-caliber Astra pistol, model 1919, serial no. 240874

v.   .22-caliber Sturm, Ruger pistol, serial no. 442704

w.   .30 carbine-caliber Universal rifle, model M1, serial no. 9248

x.   .30 carbine-caliber National Ordinance rifle, model M1, serial no. 1695

y.   .45-caliber Volunteer Enterprises rifle, serial no. 04404

z.   30-06-caliber Remington rifle, model 742, serial no. 140619

aa.  12-gauge Winchester shotgun, serial no. 825678(E)

bb.  .30 mauser-caliber Mauser Broomhandle pistol, serial no. 368516

cc.  30-06-caliber Springfield Armory rifle, model M1 garand, serial no. 2257285

dd.  12-gauge Browning shotgun, serial no. 382736

ee.  12-gauge Mossberg shotgun, model 500A, serial no. J821327

ff.  .30-carbine caliber Universal rifle, Model M1, serial no. 29541

gg.  .44 magnum-caliber Sturm, Ruger rifle, serial no. 93887

hh.  12-gauge Winchester shotgun, model 12, serial no. 1670091

ii.  308 win-caliber Browning rifle, serial no. 69373M70

jj.  12-gauge Remington shotgun, serial no. 468099

kk.  16-gauge LC Smith shotgun, serial no. FWS7866

ll.  30-06-caliber Remington Wingmaster rifle, model 742, serial no. 7303765

mm.  .38 special-caliber Smith & Wesson revolver, Model 36, serial no. 67J140

nn.  8 silencers not attached to other firearms

All in violation of Title 18, United States Code, Sections 924(c) and 2.

COUNT THIRTY-SEVEN
(Possession of Short-Barreled Shotguns and Semiautomatic
Assault Weapons in Furtherance of Violent Crime)

107. From in or before the late 1980s and continuing until
in or about January 2000, both dates being approximate and
inclusive, within the District of Massachusetts and elsewhere,
the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, in furtherance of
crimes of violence for which he could be prosecuted in a court of
the United States, to wit, racketeering conspiracy and
racketeering, as charged in Counts One and Two of this
Superseding Indictment, did knowingly and intentionally possess
one or more short-barreled shotguns and semiautomatic assault
weapons, to wit, the following short-barreled shotguns and semi-
automatic assault weapons concealed and stored in the vicinity of
832 East Third Street, South Boston, Massachusetts:

a. .30 carbine-caliber Plainfield Machine rifle with
pistol grip, telescoping stock, and ability to accept
detachable magazine, model M1, serial no. 23771

b. 20-gauge Browning shotgun with cut-down barrel, serial
no. C7177

c. 12-gauge JC Higgins shotgun with cut-down barrel, model
120, and with no markings relating to serial no.

d. 12-gauge Ithaca shotgun with cut-down barrel, model 37,
serial no. 413280

All in violation of Title 18, United States Code, Sections
924(c) and 2.

<u>COUNT THIRTY-EIGHT</u>
(Possession of Machineguns and Firearms Equipped
with Firearm Silencers in Furtherance of Violent Crime)

108. From in or before the late 1980s and continuing until in or about January 2000, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, in furtherance of crimes of violence for which he could be prosecuted in a court of the United States, to wit, racketeering conspiracy and racketeering, as charged in Counts One and Two of this Superseding Indictment, did knowingly and intentionally possess one or more machineguns and firearms equipped with firearm silencers, to wit, the following machineguns and firearms equipped with firearm silencers concealed and stored in the vicinity of 832 East Third Street, South Boston, Massachusetts:

    a.    .380-caliber Beretta pistol with attached silencer/suppressor device, model 1934, serial no. 829376

    b.    .32-caliber Spanish-made pistol with attached silencer/suppressor device, serial no. 15641F

    c.    .32-caliber Walther pistol with attached silencer/suppressor device, model PPK, serial no. 430472K

    d.    .380-caliber Beretta pistol with attached silencer/suppressor device, serial no. C04695

    e.    .380-caliber FN Browning pistol with attached silencer/suppressor device, serial no. 65772

90

f.   .22-caliber Colt Woodsman pistol with attached
     silencer/suppressor device, serial no. 124447-S

g.   2 .45-caliber fully automatic pistols without marking
     relating to manufacturer or serial no.

h.   .45-caliber United States Military submachinegun with
     attachable 13 1/4" silencer and no visible markings
     relating to serial no.

i.   .45-caliber Auto Ordinance Thompson submachinegun,
     model M1A1, serial no. 764694

All in violation of Title 18, United States Code, Sections
924(c) and 2.

## COUNT THIRTY-NINE
(Possession of Firearms in Furtherance of Violent Crime)

109. From in or before the late 1980s and continuing until in or about 1999, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, in furtherance of crimes of violence for which he could be prosecuted in a court of the United States, to wit, racketeering conspiracy and racketeering, as charged in Counts One and Two of this Superseding Indictment, did knowingly and intentionally possess one or more firearms, to wit, the following firearms concealed and stored in the vicinity of 8 Pilsudski Way and elsewhere in South Boston, Massachusetts:

   a.   .22-caliber Smith & Wesson revolver, serial no. 5K80077

   b.   .22-caliber H&R revolver, model 622, serial no. AC70048

   c.   .22-caliber Ruger Mach-II pistol, serial no. 213-10088

   d.   .45-caliber R.P.B. Industries pistol, model M10, serial no. obliterated

   e.   9mm-caliber Walther pistol, model P-38, serial no. 3587f

   f.   .38 special-caliber Smith & Wesson revolver, model 10-6, serial no. D152092

   g.   .38 special-caliber Smith & Wesson revolver, model 15-3, serial no. 3K24947

h.    .38 special-caliber Smith & Wesson revolver, model 40, serial no. L314

All in violation of Title 18, United States Code, Sections 924(c) and 2.

COUNT FORTY
(Possession of Machineguns in Furtherance of Violent Crime)

110. From in or before the late 1980s and continuing until in or about 1999, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, in furtherance of crimes of violence for which he could be prosecuted in a court of the United States, to wit, racketeering conspiracy and racketeering, as charged in Counts One and Two of this Superseding Indictment, did knowingly and intentionally possess one or more machineguns, to wit, the following machineguns concealed and stored in the vicinity of 8 Pilsudski Way and elsewhere in South Boston, Massachusetts:

    a.    9mm-caliber German MP40 submachinegun, serial no. 1577q

    b.    9mm-caliber German MP40 submachinegun, serial no. obliterated

    c.    9mm-caliber German MP40 submachinegun, serial no. 5132e

    d.    5.56mm-caliber Colt fully automatic rifle, model M16A1, serial no. 4765939

    e.    .45-caliber M3 submachinegun, serial no. GLC753432

    f.    .30-caliber U.S. carbine fully automatic rifle, model M2, serial no. 4667381

All in violation of Title 18, United States Code, Sections 924(c) and 2.

<u>COUNT FORTY-ONE</u>
(Possession of Unregistered Machineguns,
Silencers, and Cut-Down Shotguns)

111. From in or about the late 1980s and continuing until in

or about January 2000, both dates being approximate and

inclusive, within the District of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and

intentionally possess one or more firearms, to wit, the following

machineguns, silencers, and cut-down shotguns, which were not

registered to him in the National Firearms Registration and

Transfer Record and which were concealed and stored in the

vicinity of 832 East Third Street, South Boston, Massachusetts:

    a.  silencer attached to .380-caliber Beretta pistol, model
        1934, serial no. 829376

    b.  silencer attached to .32-caliber Spanish-made pistol,
        serial no. 15641F

    c.  silencer attached to .32-caliber Walther pistol, model
        PPK, serial no. 430472K

    d.  silencer attached to .32-caliber Beretta pistol, serial
        no. C04695

    e.  silencer attached to .32-caliber FN Browning pistol,
        serial no. 65772

    f.  silencer attached to .22-caliber Colt Woodsman pistol,
        serial no. 124447-S

    g.  2 .45-caliber fully automatic pistols without markings
        relating to manufacturer or serial no.

    h.  .45-caliber United States Military submachinegun with
        attachable 13 1/4" silencer and no visible markings
        relating to serial no.

i.   .45-caliber Auto Ordinance Thompson submachinegun,
     model M1A1, serial no. 764694

j.   8 silencers not attached to other firearms

k.   20-gauge Browning shotgun with cut-down barrel, serial
     no. C7177

l.   12-gauge JC Higgins shotgun with cut-down barrel, model
     120, and with no markings relating to serial no.

m.   12-gauge Ithaca shotgun with cut-down barrel, model 37,
     serial no. 413280

All in violation of Title 26, United States Code, Sections

5841, 5845(a), 5861(d), and 5871 and Title 18, United States

Code, Section 2.

COUNT FORTY-TWO
(Possession of Unregistered Machineguns)

112. From in or about the late 1980s and continuing until in or about 1999, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, did knowingly and intentionally possess one or more firearms, to wit, the following machineguns, which were not registered to him in the National Firearms Registration and Transfer Record and which were concealed and stored in the vicinity of 8 Pilsudski Way and elsewhere in South Boston, Massachusetts:

    a.   9mm-caliber German MP40 submachinegun, serial no. 1577q

    b.   9mm-caliber German MP40 submachinegun, serial no. obliterated

    c.   9mm-caliber German MP40 submachinegun, serial no. 5132e

    d.   5.56mm-caliber Colt fully automatic rifle, model M16A1, serial no. 4765939

    e.   .45-caliber M3 submachinegun, serial no. GLC753432

    f.   .30-caliber U.S. carbine fully automatic rifle, model M2, serial no. 4667381

All in violation of Title 26, United States Code, Sections 5841, 5845(a), 5861(d), and 5871 and Title 18, United States Code, Section 2.

COUNT FORTY-THREE
(Possession of Unregistered Machineguns,
Silencers, and Cut-Down Shotguns)

113.   In or about January 2000, within the District of

Massachusetts, the defendant

**MICHAEL S. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and

intentionally possess one or more firearms, to wit, the following

machineguns, silencers, and cut-down shotguns, which were not

registered to him in the National Firearms Registration and

Transfer Record and which were concealed and stored in, and

removed from, the vicinity of 832 East Third Street, South

Boston, Massachusetts:

  a.   silencer attached to .380-caliber Beretta pistol, model
       1934, serial no. 829376

  b.   silencer attached to .32-caliber Spanish-made pistol,
       serial no. 15641F

  c.   silencer attached to .32-caliber Walther pistol, model
       PPK, serial no. 430472K

  d.   silencer attached to .32-caliber Beretta pistol, serial
       no. C04695

  e.   silencer attached to .32-caliber FN Browning pistol,
       serial no. 65772

  f.   silencer attached to .22-caliber Colt Woodsman pistol,
       serial no. 124447-S

  g.   2 .45-caliber fully automatic pistols without markings
       relating to manufacturer or serial no.

  h.   .45-caliber United States Military submachinegun with
       attachable 13 1/4" silencer and no visible markings
       relating to serial no.

98

i.    .45-caliber Auto Ordinance Thompson submachinegun, model M1A1, serial no. 764694

j.    8 silencers not attached to other firearms

k.    20-gauge Browning shotgun with cut-down barrel, serial no. C7177

l.    12-gauge JC Higgins shotgun with cut-down barrel, model 120, and with no markings relating to serial no.

m.    12-gauge Ithaca shotgun with cut-down barrel, model 37, serial no. 413280

All in violation of Title 26, United States Code, Sections 5841, 5845(a), 5861(d), and 5871 and Title 18, United States Code, Section 2.

<u>COUNT FORTY-FOUR</u>
(Transfer and Possession of Machineguns)

114. From in or about the late 1980s and continuing until in or about January 2000, both dates being approximate and inclusive, within the District of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and intentionally transfer and possess one or more machineguns, to wit, the following machineguns which were concealed and stored in, and removed from, the vicinity of 832 East Third Street, South Boston, Massachusetts:

a. .45-caliber United States Military submachinegun with attachable 13 1/4" silencer and no visible markings relating to serial no.

b. .45-caliber Auto Ordinance Thompson submachinegun, model M1A1, serial no. 764694

c. 2 .45-caliber fully automatic pistols without markings relating to manufacturer or serial no.

All in violation of Title 18, United States Code, Sections 922(o) and 2.

100

<u>COUNT FORTY-FIVE</u>
(Transfer and Possession of Machineguns)

115. From in or about the late 1980s and continuing until in or about 1999, both dates being approximate and inclusive, within the District of Massachusetts and elsewhere, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, did knowingly and intentionally transfer and possess one or more machineguns, to wit, the following machineguns which were concealed and stored in the vicinity of 8 Pilsudski Way and elsewhere in South Boston, Massachusetts:

a.   9mm-caliber German MP40 submachinegun, serial no. 1577q

b.   9mm-caliber German MP40 submachinegun, serial no. obliterated

c.   9mm-caliber German MP40 submachinegun, serial no. 5132e

d.   5.56mm-caliber Colt fully automatic rifle, model M16A1, serial no. 4765939

e.   .45-caliber M3 submachinegun, serial no. GLC753432

f.   .30-caliber U.S. carbine fully automatic rifle, model M2, serial no. 4667381

All in violation of Title 18, United States Code, Sections 922(o) and 2.

<u>COUNT FORTY-SIX</u>
(Transfer and Possession of Machineguns)

116. In or about January 2000, within the District of Massachusetts, the defendant

**MICHAEL S. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and intentionally transfer and possess one or more machineguns, to wit, the following machineguns which were concealed and stored in, and removed from, the vicinity of 832 East Third Street, South Boston, Massachusetts:

a. .45-caliber United States Military submachinegun with attachable 13 1/4" silencer and no visible markings relating to serial no.

b. .45-caliber Auto Ordinance Thompson submachinegun, model M1A1, serial no. 764694

c. 2 .45-caliber fully automatic pistols without markings relating to manufacturer or serial no.

All in violation of Title 18, United States Code, Sections 922(o) and 2.

102

COUNT FORTY-SEVEN
(Possession of Firearms with Obliterated Serial Numbers)

117. From in or about the late 1980s and continuing until in or about January 2000, within the District of Massachusetts, the defendant

**STEPHEN J. FLEMMI,**

and others known and unknown to the grand jury, did knowingly and intentionally possess a firearm which had the manufacturer's serial number removed, obliterated, and altered and which had been shipped and transported in interstate and foreign commerce, to wit, the following firearm which was concealed and stored in the vicinity of 832 East Third Street, South Boston, Massachusetts:  .45-caliber United States Military submachinegun with attachable 13 1/4″ silencer and no visible markings relating to serial no.

All in violation of Title 18, United States Code, Sections 922(k) and 2.

<u>COUNT FORTY-EIGHT</u>
(Possession of Firearms with Obliterated Serial Numbers)

118. From in or about the late 1980s and continuing until in or about 1999, within the District of Massachusetts and elsewhere, the defendant

**JAMES J. BULGER,**

and others known and unknown to the grand jury, did knowingly and intentionally possess one or more firearms which had the manufacturer's serial number removed, obliterated, and altered and which had been shipped and transported in interstate and foreign commerce, to wit, the following firearms which were concealed and stored in the vicinity of 8 Pilsudski Way and elsewhere in South Boston, Massachusetts:

a.   .45-caliber R.P.B. Industries pistol, model M10, serial no. obliterated

b.   9mm-caliber German MP40 submachinegun, serial no. obliterated

All in violation of Title 18, United States Code, Sections 922(k) and 2.

### MONEY LAUNDERING FORFEITURE ALLEGATIONS

119. The allegations of Counts Five through Twenty-Seven of this Superseding Indictment are hereby realleged and incorporated herein for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 982.

120. As a result of the offenses in violation of Title 18, United States Code, Sections 1956 and 1957, set forth in Counts Five through Twenty-Seven of this Superseding Indictment, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI**

shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in such offenses, and all property traceable to such property. The property to be forfeited by the defendants pursuant to Section 982(a)(1) includes, but is not limited to, all of the defendants' joint and several interests in the following assets:

   a.   Approximately $2,500,000 in United States currency;

   b.   South Boston Liquor Mart, Inc., a Massachusetts corporation doing business as Columbia Wine and Spirits;

   c.   Columbia Wine and Spirits, Inc., a Massachusetts corporation; and

105

d.    The real property, with all rights appertaining thereto, located at 295 Old Colony Avenue, South Boston, Massachusetts, title to which appears at Book 15995, Page 291, of the Suffolk County Registry of Deeds.

121. If any of the property described in paragraph 120 hereof as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendants --

> a.    cannot be located upon the exercise of due diligence;
>
> b.    has been transferred to, sold to, or deposited with a third party;
>
> c.    has been placed beyond the jurisdiction of this Court;
>
> d.    has been substantially diminished in value; or
>
> e.    has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b)(1), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of all other property of the defendants up to the value of the property described in subparagraphs a through e of this paragraph.

All pursuant to Title 18, United States Code, Section 982.

RACKETEERING FORFEITURE ALLEGATIONS

122. The allegations of Counts One and Two of this Superseding Indictment are hereby realleged and incorporated herein for the purpose of alleging forfeitures pursuant to the provisions of Title 18, United States Code, Section 1963.

123. As a result of the offenses in violation of Title 18, United States Code, Section 1962, set forth in Counts One and Two of this Superseding Indictment, the defendants

**JAMES J. BULGER and
STEPHEN J. FLEMMI**

shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 1963(a):

(i)  all interests the defendants have acquired and maintained in violation of Title 18, United States Code, Section 1962, wherever located, and in whatever names held;

(ii) all interests in, securities of, claims against, and properties and contractual rights of any kind affording a source of influence over, any enterprise which the defendants have established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962; and

(iii) all property constituting, and derived from, any proceeds which the defendants obtained, directly and indirectly, from racketeering activity in violation of Title 18, United States Code, Section 1962.  The property to be forfeited by the

107

defendants pursuant to Title 18, United States Code, Section 1963 and subparagraphs (i) through (iii) of this paragraph, includes, but is not limited to, all of the defendants' joint and several interests in the following assets:

      a.   Approximately $10,000,000 in United States currency;

      b.   South Boston Liquor Mart, Inc., a Massachusetts corporation doing business as Columbia Wine and Spirits;

      c.   Columbia Wine and Spirits, Inc., a Massachusetts corporation;

      d.   The real property, with all rights appertaining thereto, located at 295 Old Colony Avenue, South Boston, Massachusetts, title to which appears at Book 15995, Page 291, of the Suffolk County Registry of Deeds;

      e.   Rotary Variety Store Company, Inc., a Massachusetts corporation and any and all proceeds derived therefrom;

      f.   The real property, with all rights appertaining thereto, located at 309-325 Old Colony Avenue, South Boston, Massachusetts, title to which appears at Book 18931, Page 294, of the Suffolk County Registry of Deeds and any and all proceeds derived therefrom;

      g.   Triple "O," Inc., a Massachusetts corporation;

      h.   Triple O's Nominee Trust; and

i.   The real property, with all rights appertaining thereto, located at 28-30 West Broadway, South Boston, Massachusetts, title to which appears at Book 16748, Page 251, of the Suffolk County Registry of Deeds.

124. If any of the property described in paragraph 123 hereof as being forfeitable pursuant to Title 18, United States Code, Section 1963, as a result of any act or omission of the defendants --

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred to, sold to, or deposited with a third party;

c.   has been placed beyond the jurisdiction of this Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of all other property of the defendants up to the value of the property described in subparagraphs a through e of this paragraph.

All pursuant to Title 18, United States Code, Section 1963.

A TRUE BILL

_____
Foreperson of the Grand Jury

_____
Assistant United States Attorney

DISTRICT OF MASSACHUSETTS;    11/1/   2000   at 2:05 pm.

Returned into the District Court by the Grand Jurors and filed.

_____
Deputy Clerk

110