UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:94-cr-10287-MLW |
| | ) | |
| JAMES J. BULGER | ) | |

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 1:99-cr-10371-RGS |
| | ) | |
| JAMES J. BULGER | ) | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF
APPOINTMENT OF COUNSEL UNDER CRIMINAL JUSTICE ACT

As directed on June 24, 2011 at his initial appearance in each of the above-captioned

cases, and in compliance with Chief Judge Wolf's Memorandum and Order dated June 26, 2011

in Case No. 1:94-cr-10287 (Docket #2331) ("Order"), defendant James J. Bulger submits this

memorandum to address his right to the appointment of counsel.

On June 24, 2001, Mr. Bulger submitted a Financial Affidavit *ex parte* and under seal,

requesting appointment of counsel in both of the above-captioned cases. The government

indicated that it opposed appointment of counsel, but gave no valid reason. The government

simply surmised that Mr. Bulger's family may be willing to hire counsel for Mr. Bulger.

Because the parties have been directed to make simultaneous filings, and because the defense

still does not understand the factual or legal basis for the government's claim that Mr. Bulger

does not have a right to appointment of counsel, Mr. Bulger reserves the opportunity to reply to the government's filing.[1]

Factual Background

On June 24, 2011, Mr. Bulger submitted a Financial Affidavit *ex parte* and under seal. The Financial Affidavit demonstrates Mr. Bulger's inability to hire counsel. Although Mr. Bulger had assets at the time of his arrest, the government made clear at his initial appearances that it intends to seek forfeiture of the money and other assets found and seized at the time of his arrest, and any other assets belonging to him that may be located. If Mr. Bulger had the money to hire counsel (which he does not), the government would presumably also try to seize any retainer that Mr. Bulger paid to hire counsel. See United States Attorney's Manual, Title 9, Sec. 9.120.104 ("Forfeiture of Assets Transferred to an Attorney for Representation in a Criminal Matter").

ARGUMENT

The Court Should Appoint Counsel To Represent Mr. Bulger

The constitutional right to counsel is fundamental and is addressed in Judge Wolf's Order. It will not be belabored here. Needless to say, failure to provide counsel to a defendant who cannot afford to hire a lawyer to represent him will, in almost all cases, result in the reversal of a conviction. Gideon v. Wainwright, 372 U.S. 335, 339-42 (1963). See also Satterwhite v. Texas, 486 U.S. 249, 256 (1988); United States v. Cronic, 466 U.S. 648, 659 n. 25 (1984).

Judge Wolf's Order asks counsel to notify the Court of any changes in the law following the decision in United States v. Salemme ("Salemme"), 985 F. Supp. 197 (D. Mass. 1997).

---

[1] The need for a reply filing was discussed during Mr. Bulger's initial appearance before Magistrate Judge Bowler on June 24, 2011 in Case No. 1:99-cr-10371.

Defense counsel has found no material changes.  It is just as true today as it was in 1997 that the

the determination of eligibility for counsel to be appointed under the Criminal Justice Act is

made on the basis of income and assets available to the defendant, without consideration of

seized or restrained assets, or assets available to the defendant's family members, unless the

family indicates a willingness and ability to retain counsel promptly.  Order at 3.  See generally

Guide to Judiciary Policy, Vol. 7, Part A ("Guide") §§ 210.40.30, 210.40.50.  Mr. Bulger has

completed a Financial Affidavit, in the form prescribed by section 210.40.20(d) of the Guide.

His answers thereon demonstrate his inability to hire counsel.  In addition, the government made

clear during Mr. Bulger's initial appearance on each of these cases that it intends to seize or

freeze, and then forfeit, any assets belonging to Mr. Bulger that it is able to locate.

Representation of Mr. Bulger in these cases will be a substantial undertaking.  For

example, Mr. Bulger's counsel would have to master a voluminous record of litigation that has

gone before.  In the racketeering case before Chief Judge Wolf, the docket contains more than

2,300 docket entries, more than 17,000 pages of hearing transcripts, numerous and hefty

opinions, and complex legal issues.  See, e.g., United States v. Salemme, 91 F. Supp. 2d 141, 163

(D. Mass. 1999), rev'd in other part, 225 F.3d 78 (1st Cir. 2000), cert. denied, 531 U.S. 1170

(2001).  Counsel will also have to master the facts, including the trial record, in the lengthy case

against John J. Connolly, Jr.  See United States v. Connolly, 1:99-cr-10428-JLT.  The indictment

pending before Judge Stearns involves allegations of racketeering similar to those in the case

before Chief Judge Wolf, but also includes 21 murders as alleged racketeering acts spanning

back almost 40 years.  See Third Superseding Indictment, Case No. 1:99-cr-10371 at 8-12.  Each

of these murder allegations is a case in itself, which will have to be separately investigated and

defended, and will include investigation of informants and cooperating witnesses who have

3

every incentive to lie and to finger Mr. Bulger as the wrongdoer.  The constellation of cases against Mr. Bulger will undoubtedly require the full time work of a number of attorneys, paralegals and investigators over several years.

The extraordinary costs of defense in this case can be easily projected and are well known to Chief Judge Wolf, who watched defendants Francis P. Salemme and Stephen J. Flemmi first retain counsel and, after being left penniless, seek appointment of counsel under the Criminal Justice Act.  See United States v. Salemme, Case No. 1:94-cr-10287, Order (Nov. 14, 1997), attached to Judge Wolf's Order dated June 26, 2011 in the above-referenced case.  The extraordinary complexity of the case -- indeed, the sheer volume of work that will have to be done just to get up to speed -- is important in deciding whether Mr. Bulger is financially able to hire counsel.  In re Boston Herald, Inc., 321 F.3d 174, 193 (1st Cir. 2003) (Lipez, J., dissenting) (court must "assess the applicant's financial position against the backdrop of past, present and anticipated expenditures in the underlying case").

Given that frozen assets are not available to Mr. Bulger, cannot be paid to counsel, and therefore are not considered in determining financial eligibility for appointed counsel, see Salemme, 985 F. Supp. at 203, the only articulated basis for the government's objection to Mr. Bulger receiving appointment of counsel appears to be an unsupported statement by *the prosecutor* that Mr. Bulger's family may be willing to hire counsel for him.  Mr. Bulger has not and will not request any members of his extended family to pay anything for his defense, nor can he control any family member's assets to pay anything for his defense.  His family has not come forward to hire counsel, and there is no evidence to support the government's surmise that extended family members might be willing and able to hire counsel or make some contribution toward the cost of hiring counsel.  Cf. United States v. Bennett, 2008 WL 356529 at **2-4 (E.D.

4

Tenn. 2008) (family demonstrated willingness and ability to hire counsel by hiring counsel;

retained counsel had filed an appearance); United States v. Lexin, 434 F. Supp. 2d 836, 840-43

(S.D. Cal. 2006) (where spouse unwilling to contribute to hiring counsel, court could not

consider spouse's assets in determining eligibility for appointed counsel).  Even if Mr. Bulger's

family were willing to contribute something to his defense, it would not likely be sufficient and

would not necessarily render the appointment of counsel inappropriate.  See, e.g., United States

v. Zelenka, 112 F. Supp. 2d 708 (M.D. Tenn. 1999) (court denied government's motion to

remove court-appointed counsel, although "a third party with assets to which a defendant does

not have access, claim, or control" hired another lawyer to represent defendant).

The Guide makes clear that "[t]he initial determination of eligibility should be made

without regard to the financial ability of the person's family unless the family indicates

willingness and financial ability to retain counsel promptly."  Guide § 210.40.50.  Here, there is

no credible showing from the government that any members of Mr. Bulger's extended family

indicated a willingness or financial ability to retain counsel promptly.  Given that doubts

concerning a defendant's eligibility for court-appointed representation are to be resolved in the

defendant's favor, Guide § 210.40.30(b), the burden should be on the government to demonstrate

that a defendant's family has both a willingness and the financial ability to retain counsel

promptly.  Mr. Bulger is unable to demonstrate either.

To the extent the government argues that Mr. Bulger *may* have other assets in other

places, such an argument is also unavailing.  Not only is Mr. Bulger unable to access such assets,

if any, but the existence of such assets is contradicted by Mr. Bulger's Financial Affidavit and

unsupportable by any showing by the government after decades of investigation.  Any such

assets, if they existed, would likely be quickly seized by the government.  Moreover, the Court is

not equipped to resolve such issues at this time.  See, e.g., United States v. Cameron, 697 F.

Supp. 2d 126, 127-30 (D. Me. 2010) (Woodcock, J.) (appointing counsel over government

objections to alleged inaccuracies in financial affidavit); United States v. Anderson, 400 F. Supp.

2d 32, 35 (D.D.C. 2005) (appointing counsel despite "unanswered questions" about whether

defendant has "financial resources located abroad"; "it is simply beyond the resources of the

Court and the proper scope of inquiry at this point in the proceedings to unravel the twisted

skeins of Mr. Anderson's corporate and financial dealings to rule out the possibility of such

hidden assets").

        For these reasons, Mr. Bulger requests the Court to appoint counsel for him under the

Criminal Justice Act.

                                        JAMES J. BULGER
                                        By his attorney,

                                        / S /  Peter B. Krupp

Dated:  June 27, 2011                   Peter B. Krupp
                                          B.B.O. #548112
                                        Lurie & Krupp, LLP
                                        One McKinley Square
                                        Boston, MA  02109
                                        Tel:  617-367-1970


                        CERTIFICATE OF CONFERENCE

        Pursuant to Local Rule 7.1(A)(2), I, Peter B. Krupp, certify that on June 27, 2011, I
conferred with AUSA Brian Kelly pursuant to the direction in Chief Judge Wolf's Order dated
June 26, 2011, but we were not able to resolve or narrow the issues presented herein.

                                        / S /  Peter B. Krupp

                                        Peter B. Krupp


                                        6

<u>CERTIFICATE OF SERVICE</u>

I, Peter B. Krupp, hereby certify that this document filed through the ECF system in both of the above-referenced dockets will be sent electronically to the registered participants as identified on the Notice of Electronic Filing on June 27, 2011.

/ S /  Peter B. Krupp

Peter B. Krupp