UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
V. ) Crim. No. 99-10371-RGS
)
JAMES J. BULGER )

**DEFENDANT'S MOTION TO RESCHEDULE TRIAL DATE**

The defendant, James J. Bulger, moves that this court reschedule the trial date from November 5, 2012 to November 4, 2013. Defense counsel cannot possibly be prepared for trial on the current trial date. Indeed, to maintain that date will eviscerate the defendant's rights to due process of law and to the effective assistance of counsel under the Fifth and Sixth Amendments to the Federal Constitution.

The defendant avers the following facts, which illustrate why the current trial date is completely unrealistic if the intent is to give James Bulger a fair trial.

**I. The Time Required to Review the Discovery**

The discovery provided to date by the prosecution has included documents totaling 321,665 pages. In addition, there are 31 videos and 1,038 cassette tapes of audio recordings. The document review alone is a Herculean task. The material must be read, annotated, and cross-referenced with other discovery. The

defendant himself is entitled to view the discovery as well. Despite diligent efforts by defense counsel and his associates, it simply has been impossible to review this much discovery in the time allotted. Counsel has calculated the amount of time to complete an initial review, annotation and analysis of this discovery, and estimates as an officer of this court that it will take until May, 2013.

One factor that has restricted counsel since the outset has been the chaotic organization of the discovery as it was presented by the prosecution. The cover letter purporting to identify the discovery was unhelpful and misleading. It was impossible by that document to locate particular items, and counsel still doesn't have a complete account of what is present, and what is absent. Even the assistance of a computer program to try to bring order to the discovery does not eliminate the problem. Using search terms invariably produces tens of thousands of documents, often covering five decades, and requires further review to winnow it down to what is relevant to a particular matter, whether it is a witness, a murder, or an investigation.

The documents did not have a uniform numbering or identification system. There were multiple numbering systems

reflected on the documents, including two or three different numbers on a single page. Local Rule 116.10 was not yet adopted by the court, so the prosecution was able to provide the material as one would a shuffled deck of cards, rather than organized in a coherent order. The defense team met with the prosecution on March 6, 2012, to seek agreement on a single Bates numbering system for the discovery, and the government refused, stating that if the defense wanted one, the defense could do it. It wasn't until a motion was filed before the magistrate judge that the government even agreed to a single numbering system produced by the defense and binding on both parties.

There are thousands of pages of additional discovery which has been requested and not yet provided. For example, very few of the deposition transcripts from related civil cases have been produced. This is material in the possession of the Department of Justice, which litigated sixteen civil cases in which the lead witnesses in the instant case often were deposed prior to trial and also testified at the trial on issues material to the Bulger prosecution. Moreover, defense counsel has accepted the prosecution offer, made before the magistrate judge, to provide

assistance: Jencks material was requested months ago, but it has not been produced to date.

This case is unique in that dozens of books have been written that directly relate to this prosecution. It includes books co-written by essential witnesses in this case, including individuals who have received extraordinary cooperation agreements as well as law enforcement officials directly involved in the investigation of the specific allegations underlying the superseding indictment. These materials must be reviewed, annotated, and cross-referenced as well.

The defense counsel brought a motion in February, 2012, asking the court to authorize his hiring of six contract attorneys who would be paid at the normal C.J.A. rate. The primary reason was to assist in discovery review. The motion averred to the court,

> Defense counsel currently does not have the resources to undertake this review. Defense counsel will need these six contract attorneys to even the playing field with the government, who in comparison has near-limitless resources and has had the benefit of familiarizing themselves with the discovery and preparing their case for well over a decade.

The Court denied the motion, stating,

> The court has already authorized compensation for the services of associate and of counsel attorneys [in the defense counsel's law firm] and sees no reason why the services of six additional attorneys is required. This is

> particularly so given the court's prior authorization of a $40,000 expenditure for document organization and retrieval services.
>
> The court realizes that the November trial date requires accelerated preparation for trial by all counsel involved, but is confident that given counsels' extensive experience, all deadlines will be met and, to that end, will authorize payment for paralegal services that are shown on a task by task basis to be required.

Despite the best efforts of defense counsel and the two associates working full-time and the three associates working part-time on the case, the task of discovery review is very far from completed. The work needs to be done by attorneys, not paralegals. As noted earlier, the good-faith estimate is that discovery review alone will take another eleven months.

## II. Impediments to Regular Communication with the Client

It is critical in every criminal case that the defendant and his counsel have an ample opportunity to speak in order to discuss the discovery, prepare a defense, and provide effective assistance in every respect. This has been complicated by several factors.

The defendant is incarcerated in the Plymouth County Correctional Facility. It takes on average an hour and a half one way from the time counsel leaves his office in Boston until he is sitting in the jail with his client, a total of three hours for each visit. In addition, the setting for the visit

often is a room with chairs but no table, making it awkward to review documents or take notes. The events in the discovery go back more than thirty years, a monumental period to review with anyone.

This process is complicated because the defendant will no longer communicate with counsel by mail or telephone. James Bulger has a view, based on his personal experience, that all levels of law enforcement are corrupt and will disregard the law if it suits them. Counsel persuaded him that the attorney-client privilege is sacrosanct, and would never be violated. Instead, defense counsel learned that the defendant’s mail was intercepted without authority, and that even a letter clearly identified on the envelope as “Attorney-Client Privileged” and addressed to his lawyer was not treated that way. It was opened, and provided to the U.S. Attorney’s office. The defendant no longer has any faith that the attorney-client privilege will be honored in telephone or mail communications, and the discussions with counsel now take place only at the jail.

The assertion by the prosecution that the defendant is trying to delay a trial is false. James Bulger is looking forward to his trial. He is physically in good health. Mentally, he is sharp, focused, candid, and effusive, with an excellent

memory of events. His assistance to prepare for trial is essential, especially to dispel the lies advanced by the cooperating witnesses when they thought they would never encounter him again. Once more, there is absolutely no way that effective assistance can be provided to the defendant with the present trial date.

## III. The Limitations of a C.J.A. Appointment

Respectfully, defense counsel submits that the District Judge has not taken into account certain factors that are relevant to every case of an indigent defendant who is appointed an attorney from the Criminal Justice Act panel. First, the attorney will continue to represent other clients simultaneously, including private cases, State and Federal court-appointed cases, and pro bono cases. Second, the attorney is never expected to devote his time exclusively to a single C.J.A. case, not the least of which is because of the financial burden of the C.J.A. hourly rate. Third, counsel has an ethical responsibility not to shortchange his or her other clients, and counsel at bar has not done so, and will not do so.

For example, undersigned counsel was appointed to represent James Bulger on June 30, 2011. Three and a half months later, counsel began the trial of *United States v. Tarek Mehanna*, 09-

10017. This also was a C.J.A. appointment. Thousands of pages of discovery were received in the weeks before the start of that trial, including seven hard drives worth of information. Undersigned counsel had to devote his near-full attention to the *Mehanna* trial from September 6 until October 24, and work on nothing else from that date until December 20, when a verdict was returned.

Counsel focused in January and February of 2012 on resolving his other cases. He also notified the C.J.A. Board and the State counterpart that he would not accept court appointments until the conclusion of the Bulger trial. Counsel also has turned away private cases, and declined all invitations to serve as a faculty member at continuing legal education programs. This will be the first time in the past decade that he will not be chairing the annual program by M.C.L.E. on recent developments in evidence law for criminal cases, as well as the annual M.C.L.E. criminal law conference, among the various programs at which counsel has taught regularly.

Counsel is not seeking sympathy or offering excuses. Rather, he is explaining why the normal time commitments of C.J.A. counsel contribute to making it impossible to be prepared for trial of this case in the allotted time frame.

## IV. Preparation for Trial

The prosecution has been ready to try this case since *at least* 1999, when the instant indictment was returned. It also had been preparing for a trial in another case against the defendant, *United States v. James Bulger*, 94-10287. Moreover, it has prosecuted the other co-defendants in the case at bar, and conducted two related trials against former F.B.I. Agent John Connolly in this court and in Florida. Defense counsel, in stark contrast, has been devoting the majority of his time to this case only since March, 2012.

The prosecution has prepared a joint motion to exclude time under the Speedy Trial Act after every court appearance. The language that the assistant United States attorney used in the most recent iteration on June 4, 2012 is insightful.

> In support of this motion, the parties note that the Court has previously designated this to be a complex case. The parties further advise that defendant Bulger is charged with numerous crimes including a RICO substantive charge that alleges he was involved in nineteen separate murders as well as other predicate crimes such as a drug distribution charge from 1980 through 1990. In addition to the RICO charges, defendant Bulger is also facing extortion, money laundering and firearms charges.
>
> Pursuant to its discovery obligations, the government has produced thousands of documents, photos and videos which pertain to the pending charges. The government has also produced substantial early Jencks material as well as impeachment information pertaining to its witnesses.

> As discussed at the hearing held on May 29, 2012, defense counsel must continue reviewing and analyzing these voluminous materials prior to filing substantive motions in this case.
>
> Accordingly, the parties again respectfully submit that this case is "unusual and complex" due to the nature of the prosecution and that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limit established by the Speedy Trial Act, *see* 18 U.S.C. §3161(h)(7)(B)(ii) and Section 5(b)(7)(C)(ii) of the *Plan for Prompt Disposition of Criminal Cases*, and that therefore the ends of justice are served (and outweigh the best interest of the public and the defendant in a speedy trial, *see* 18 U.S.C. §3161(h)(7)(A)) by excluding the time period from May 29, 2012 to and including June 21, 2012 from the speedy trial clock.

Once the discovery review is completed, additional months will be required for substantive motions, trial motions, further investigation, and the actual trial preparation.

It is troubling that trial counsel was never consulted by the District Judge before the trial date was selected. This has never been encountered by the defense counsel in thirty-four years of criminal practice as a public defender, prosecutor, and private attorney, including in every case on which he has appeared in this court.

It is instructive to review two sets of cases. The first reflects ones involving co-defendants of James Bulger or other defendants in cases related to James Bulger.

| **Case** | **Basic Charges** | **Initial Appearance or Arraignment (A)**<br><br>**Trial/Plea Date (T/P)**<br><br>**Time in between** |
|---|---|---|
| **Sampling of cases/defendants related to the instant case** | | |
| United States v. Stephen Flemmi, 94-10287 | -RICO<br>-Extortion<br>-Racketeering | A: 9-15-95<br><br>P: 5-16-01<br><br>**5 yrs, 8 mths** |
| United States v. Francis Salemme, 94-10287 | -RICO<br>-Extortion, Racketeering and Threats<br>-Hobbs Act<br>& others | A: 1-24-95<br><br>P: 12-9-99<br><br>**4 yrs, 10 mths** |
| United States v. James Martorano, 94-10287 | -RICO<br>-Extortion<br>-Racketeering | A: 1-24-95<br><br>P: 12-3-97<br><br>**2 yrs, 10 mths** |
| United States v. John Martorano, 97-10009 | -RICO<br>-Money Laundering<br>-Extortion | A: 1-9-97<br><br>P: 9-30-99<br><br>**2 yrs, 8 mths** |

| | | |
|---|---|---|
| United States v. John Connolly, 99-10428 | -RICO<br>-Obstruct Justice<br>-False Statements | A: 12-22-99<br><br>T: 5-7-02<br><br>**2 yrs, 4 mths** |

The second chart is a sampling of cases from this session presided over by Judge Richard Stearns. The time between the first appearance and the trial or plea can’t account for any specific reasons for the length they took, but the time alone speaks for itself.

| **Case** | **Basic Charges** | **Initial Appearance or Arraignment (A)**<br><br>**Trial/Plea Date (T/P)**<br><br>**Time in between** |
|---|---|---|
| **Cases before this Court (Judge Richard Stearns)** | | |
| United States v. Weeks, 99-10371-RGS<br><br>Weeks is a co-defendant in the instant case of James Bulger | -Racketeering<br>-Extortion<br>-Conspiracy | A: 11-18-99<br><br>S*: 3-22-04<br><br>**4 yrs, 4 mths**<br><br>*Sentencing date |
| United States v. Salemme, 04-10323-RGS | -Obstruction of Justice<br>-False Statements | A: 11-10-04<br><br>P: 4-14-08<br><br>**3 yrs, 5 mths** |

| | | |
|---|---|---|
| United States v. Goodwin, 03-10197-RGS | -Securities Fraud<br>-False SEC Filing<br>-Wire Fraud | A: 6-12-03<br><br>T: 5-30-06<br><br>**2 yrs, 11 mths** |
| United States v. Eng, 07-10069-RGS | -Conspiracy to distribute marijuana<br>-Possession of marijuana w/ intent to distribute | A: 1-23-07<br><br>P: 5-15-09<br><br>**2 yrs, 3 mths** |
| United States v. Wurie, 08-10071-RGS | -Felon in possession of firearm<br>-Distribution of cocaine | A: 4-3-08<br><br>T: 2-22-10<br><br>**1 yr, 10 mths** |
| United States v. Sandoval-Vasquez, 07-10083-RGS | -Illegal re-entry of a deported alien | A: 3-22-07<br><br>P: 7-22-08<br><br>**1 yr, 4 mths** |

Here is the comparison to the trial date set for James Bulger.

| | | |
|---|---|---|
| United States v. Bulger, 99-10371-RGS | -19 murders<br>-RICO<br>-Drug distribution<br>-Extortion<br>-Money laundering<br>-firearms | A: 6-24-11<br><br>T: 11-5-12<br><br>**1 yr, 4 mths** |

What is striking in both sets of cases in comparison to James Bulger is the amount of time that elapsed from the initial

appearance to the date a trial started or a guilty plea was accepted. In the *Mehanna* case, which undersigned counsel tried last Fall and referenced earlier, it was two years and eleven and a half months from the first appearance to the start of the trial. These cases give one an idea of how much time counsel required to prepare the case sufficiently to begin a trial or to offer a guilty plea. The periods for the individual defendants referenced in the two charts above were:

| | |
|---|---|
| Stephen Flemmi | 5 yrs, 8 mths |
| Francis Salemme | 4 yrs, 10 mths |
| James Martorano | 2 yrs, 10 mths |
| John Martorano | 2 yrs, 8 mths |
| John Connolly | 2 yrs, 4 mths |
| Kevin Weeks | 4 yrs, 4 mths |
| Francis Salemme | 3 yrs, 5 mths |
| Arthur Goodwin | 2 yrs, 11 mths |
| Yoeun Eng | 2 yrs, 3 mths |
| Brima Wurie | 1 yr, 10 mths |
| Julio Sandoval-Vasquez | 1 yr, 4 mths |

All cases present unique issues, but one involving a charge of illegal reentry after deportation, which was the charge

against Julio Sandoval-Vasquez, *supra*, has to be among the most straight-forward prosecutions in this court.

To have that case given one year and four months until trial or plea, which is the *identical* period between James Bulger's appointment of counsel and a trial for nineteen murders, a RICO charge, drug distribution, extortion, money laundering, and firearms possession, is frankly, shocking to the conscience.

## V. Conclusion

The Federal Constitution does not adjust due process of law based on the notoriety of the case or the defendant. To the contrary, the true test of the fairness of our criminal justice system occurs when it is precisely that situation which is involved. Similarly, the right to the effective assistance of counsel is not diminished because of the number or types of crimes charged. The trial of James Bulger will be fair only if he has an adequately prepared counsel to zealously represent him.

WHEREFORE, the defendant moves that the trial of this case be continued from November 5, 2012 to November 4, 2013.

JAMES J. BULGER
By His Attorneys,

CARNEY & BASSIL

/s/ J. W. Carney, Jr.

J. W. Carney, Jr.
B.B.O. # 074760

/s/ Henry B. Brennan

Henry B. Brennan
B.B.O. # 634036

Carney & Bassil
20 Park Plaza, Suite 1405
Boston, MA 02116
617-338-5566

Dated: June 20, 2012

Certificate of Service

I hereby certify that this document filed under seal, will be sent to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on or before the above date.

/s/ J. W. Carney, Jr.
J. W. Carney, Jr.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| V. ) | Crim. No. 99-10371-RGS |
| JAMES J. BULGER ) | |

**AFFIDAVIT SUPPORTING**
**DEFENDANT'S MOTION TO RESCHEDULE TRIAL DATE**

I, J. W. Carney, Jr., state that the facts contained in the attached motion are true to the best of my information and belief.

Signed under the penalties of perjury.

/s/ J. W. Carney, Jr.
J. W. Carney, Jr.

Dated: June 20, 2012