1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2


3


4      UNITED STATES OF AMERICA,         )
                            Plaintiff,   )
5                                        )
                                         )
6      vs.                               )  No. 99-10371-RGS
                                         )
7                                        )
       JAMES J. BULGER,                  )
8                            Defendant.  )


9


10     BEFORE:  MAGISTRATE JUDGE MARIANNE B. BOWLER


11


12                        STATUS CONFERENCE


13


14


15              John Joseph Moakley United States Courthouse
                            Courtroom No. 2
16                          One Courthouse Way
                            Boston, MA 02210
17


18                          JUNE 25, 2012


19                            3:10 p.m.


20


21


22


23                          Valerie A. O'Hara
                          Official Court Reporter
24         John Joseph Moakley United States Courthouse
                       One Courthouse Way, Room 3204
25                          Boston, MA 02210
                        E-mail: vaohara@gmail.com

APPEARANCES:

For The United States:

    United States Attorney's Office, by BRIAN T. KELLY,
ASSISTANT UNITED STATES ATTORNEY, FRED M. WYSHAK, JR., ESQ.,
and ZACHARY R. HAFER, ASSISTANT UNITED STATES ATTORNEY,
1 Courthouse Way, Boston, Massachusetts  02210;


For the Defendant:

    Carney & Bassil, by J. W. CARNEY, JR., ESQ. and
HENRY B. BRENNAN, ESQ., 20 Park Plaza, Suite 1405, Boston,
Massachusetts  02116.

                              PROCEEDINGS

 1

 2          THE CLERK:  All rise.

 3          THE COURT:  Good afternoon, please be seated.

 4          THE CLERK:  United States District Court for the

 5   District of Massachusetts is now in session.  The Honorable

 6   Marianne B. Bowler presiding.  Today is Monday, June 25th,

 7   2012.  The case of U.S. v. Bulger, Criminal Action No. 99-10371

 8   will now be heard.  Will counsel please identify themselves for

 9   the record.

02:57PM 10          MR. KELLY:  Good afternoon, Brian Kelly, Fred Wyshak

11   and Zach Hafer for the United States.

12          THE COURT:  Thank you very much.

13          MR. CARNEY:  Good afternoon, your Honor, J. W. Carney,

14   Jr. for the defendant.  With me is my co-counsel, Hank Brennan.

15          THE COURT:  Thank you very much.  Well, it's on for a

16   status conference, although there have been a plethora of

17   motions filed in the last 10 days, I did not get a status

18   report from the government.

19          MR. KELLY:  No, your Honor, there has indeed been a

02:57PM 20   flurry of motions filed just within today alone, so I'm not

21   sure which issue the Court wants to address.  We did file a

22   response on the protective order, both with respect to the

23   Globe's motion and our own suggested amended protective order,

24   which we submitted at the time we thought jointly, however, I

25   see today there's been a recent filing which the defense wants

1      to lift the protective order completely.

2              THE COURT:  Do you oppose the intervention The Globe?

3              MR. KELLY:  Yes, yes, we do.  As we set forth in our

4      motion, we think the law is clear both based upon a ruling by

5      Judge Stearns in the Finneran case, as well as Chief Judge Wolf

6      in the DiMasi case.  Their rulings were in fact based upon

7      First Circuit law.  We don't think The Globe has standing to

8      intervene in a federal criminal case.  We also have put forth

9      in our papers a whole host of reasons which, if the Court wants

02:58PM 10  to address the merits, the Court should consider.

11             THE COURT:  Well, counsel, The Globe I believe is not

12     present.  I will set this down for a hearing.  So, Mr. Garvin,

13     can we have a date for that?

14             THE CLERK:  When would you like, Judge?

15             THE COURT:  Well, convenience of counsel within the

16     next ten days or so.

17             THE CLERK:  Ten days, how about the 6th, Friday,

18     July 6th at 2:00?

19             THE COURT:  Are counsel available?

02:59PM 20      MR. KELLY:  Friday, July 6th.  Yes, your Honor, both

21     sides have submitted their briefs.

22             THE COURT:  And Mr. Albano will be notified.  All

23     right.

24             MR. CARNEY:  That's convenient, your Honor, thank you.

25     Was that 2:00, Mr. Garvin?

1          THE COURT:  At 2 p.m.

2          THE CLERK:  Yes.

3          MR. KELLY:  So with respect to The Globe's motion,

4     that's our opposition, and we think the proposed amendment

5     which the parties had worked on after last hearing is

6     sufficient to satisfy any concerns.  Basically what it says is

7     the defendant through counsel can file anything he wants, and

8     all his exhibits can be filed under seal, and we have seven

9     business days to object, and if we do object, the Court

03:00PM 10    resolves the issue.

11          Now, I know in his most recent filing, it's not clear

12    to me whether he still stands by that jointly proposed

13    amendment.

14          THE COURT:  What's your position?  Are you on board

15    with this?

16          MR. CARNEY:  No, your Honor, I filed a revised motion

17    upon further reflection, and I've asked that the protective

18    order be lifted in its entirety with the exception of --

19          THE COURT:  Did you confer with Mr. Kelly about that?

03:00PM 20          MR. CARNEY:  I knew from my discussion about amending

21    the protective order what the government's position is.  In

22    other words, if he wouldn't go a little bit, he was not going

23    to go a lot.

24          THE COURT:  All right.

25          MR. KELLY:  Yes, we do oppose the full lifting of it.

1       We think there's been a lot of cases litigated in this district

2       and elsewhere where protective orders have been issued by the

3       presiding judge if the parties fail to litigate the case.  We

4       think that the originally proposed joint amendment satisfies

5       any and all concerns.

6            In fact, he complains about the recent flood of media

7       attention on the Greig matter.  Well, in the Greig case, the

8       government submitted a lot of things under seal, and it was the

9       Court who decided to unseal it, not the government, so that's

03:01PM 10  what we're proposing here.

11           THE COURT:  What about the allegation that the

12      government released a thousand documents after the Greig

13      matter?

14           MR. KELLY:  That's what I'm referring to.  The

15      government initially filed those materials under seal, but the

16      Court ordered it unsealed.

17           THE COURT:  Exactly.

18           MR. KELLY:  I think that's what will apply here as

19      well.  If we object, which I don't know if we will object to

03:01PM 20  any of their filings, the Court rules on it.  If the Court

21      thinks our objections are not meritorious, the Court unseals

22      whatever materials he thinks he needs to argue the case.

23           THE COURT:  So, in fact, Mr. Carney, the government

24      didn't release those documents, as you phrased it?

25           MR. CARNEY:  My understanding was that the government

1    submitted the document under seal.  Judge Woodlock ordered them

2    no longer under seal, and at that point the government released

3    the documents to the media.

4         THE COURT:  Well, let's get this on the record.  Did

5    the government actually turn them over?

6         MR. KELLY:  Yes, the defendant in the Greig case had

7    them, the materials were sealed, Judge Woodlock ruled them

8    unsealed, hence they become public record.

9         MR. CARNEY:  My point, your Honor, is that after

03:02PM 10  Judge Woodlock took that action, the government took no steps

11   to keep that material protected under the protective order that

12   existed in this Court.  If a Judge of this Court orders that

13   the material be under a protective order, then the government

14   should not be free to just distribute it on its own decision.

15   It may be lifted from the protective order, from the sealing

16   order entered by Judge Woodlock, but that's different than the

17   government acting as a publicist and distributing all the

18   material to make sure that the media has full access.

19        THE COURT:  Well, once it's public record, I don't

03:03PM 20  think the source becomes an issue.

21        MR. CARNEY:  I understand, your Honor, but if they had

22   a concern about keeping the material away from the public under

23   a protective order, as it is in this case, then they would have

24   taken a very different approach.  What I'm pointing out is the

25   fact that when the government wants to release material, it

1    holds a press conference, or when it wants to say --

2         THE COURT:  You haven't been exactly shy with the

3    press, Mr. Carney.

4         MR. CARNEY:  I understand, your Honor, but I'm not

5    distributing information to them, I'm responding to their

6    questions, but it's a fair point your Honor makes.  When the

7    government, for example, wants to release the fact that they

8    purportedly found two memoirs allegedly written by my client in

9    his apartment in Santa Monica, they just do so and announce it.

03:04PM 10    There's no suggestion that the protective order should block

11    that.  I'll address it further when it's my turn.

12         THE COURT:  We'll renew the issue for the protective

13    order, we'll have counsel for The Globe available, and so I will

14    take on the 6th first the issue of intervention.  I will hear

15    the argument on intervention and then on the merits.

16         MR. CARNEY:  Yes, your Honor, thank you.

17         THE COURT:  All right.  Now, the next matter is docket

18    entry No. 677, which is the motion to continue the trial date.

19    Now, I've carefully read all of the papers and looked back at

03:04PM 20    the docket and reviewed the status of everything I have before

21    the Court.  I've conferred with Judge Stearns.  I have also in

22    mind the content of docket entry 682, which is the motion for

23    discovery which was recently filed and is not ripe for a

24    response.

25         Clearly the discovery remains a problem in this case

1    in terms of its volume.  Clearly you have a right to review it.

2    After careful consideration, the Court is willing to give you a

3    continuance and set a new trial date.  This will be the final

4    continuance, and I'm going to put the burden on the government

5    to come up with a system to assist you in getting through this

6    discovery in the most efficient manner so that you will be able

7    to do it by the noon trial date of March 5th, 2013.

8         This is a compromise.  You want a year; the government

9    is ready for trial.  I believe that if the government works

03:06PM 10   with you to organize the vast amount of information in the most

11   orderly fashion that you should be able to be prepared for

12   trial before Judge Stearns on March 25th -- March 5th rather.

13   Now, I understand and have seen the motion for recusal.  That

14   will be dealt with by Judge Stearns, but at the moment the

15   trial is set for the 5th of March.

16        Now, let's talk about the discovery, although I

17   realize 682 is not ripe, but I want to begin to frame some

18   mechanism to get the remaining discovery to you in the most

19   orderly and organized fashion so that you can begin to use it

03:07PM 20   as expeditiously as possible.

21        Do you have any suggestions?

22        MR. CARNEY:  Yes, your Honor.  First of all, I'll

23   start with what's not useful.  I'm not a rookie in handling

24   criminal cases, and I don't need a prosecutor to tell me he'll

25   sit down with me and explain what the indictment means.  I also

1    don't need the prosecutor to say I'll tell you how we're going

2    to prove our case since it's obvious how they intend to prove

3    their case.  What I need is for the discovery to be provided to

4    me in an orderly fashion.  When the discovery came into us,

5    there would be --

6            THE COURT:  Well, we now have a universal Bates stamp

7    system; am I not correct?

8            MR. CARNEY:  Yes, your Honor, and even under that

9    system, you'll see documents related to real estate closing of

03:08PM 10   a package store, then the next document will be some

11   surveillance, police reports that simply say nothing was seen,

12   then the next set of documents will be a transcript of a

13   witness from some proceeding.

14           THE COURT:  All right.

15           MR. CARNEY:  That's the organization that we have now.

16           THE COURT:  How would you propose that it would be

17   organized in the way that would be most expeditious when you

18   receive it?

19           MR. CARNEY:  All right.  First, it can be organized by

03:09PM 20   the proceeding.  For example, the United States was a party to

21   15 civil lawsuits.  All of those lawsuits focused on alleged

22   crimes committed by Mr. Bulger and an alleged misconduct by the

23   government in terms of shielding Mr. Bulger from prosecution,

24   two issues that are very relevant to this case.

25           We would like the government to provide us with 15

1  packets of material that contain -- and this material can be

2  provided electronically, of course.

3          THE COURT:  Do you have it in electronic format?

4          MR. KELLY:  Your Honor, here's what the problem is.

5          MR. CARNEY:  See, I can't even finish.

6          THE COURT:  Just a minute.

7          MR. KELLY:  He is complaining about some of the things

8  he already has, for instance, he's been --

9          THE COURT:  All right.  What I'm asking you is do you

03:10PM 10  have what he's talking about in the civil cases in electronic

11  format?

12          MR. KELLY:  We have a lot of it, and we can get the

13  others if it exists, but as the Court well knows, these are

14  public trials he could have got a year ago.

15          THE COURT:  Not necessarily the depositions.

16          MR. KELLY:  Yes, your Honor, we agree with it.

17          THE COURT:  Depositions are not part of the public

18  records.

19          MR. KELLY:  But what the problem is, for instance,

03:10PM 20  he's asking for the Limone trial, thousands of pages of a civil

21  trial that has nothing to do with the charges of the case, and

22  we're concerned he just wants that because then he's going to

23  come back and say I've got 5,000 pages from the Limone trial, I

24  need another delay.

25          THE COURT:  Well, he's not getting another delay.

1    We've set a trial date.

2            MR. KELLY:  But what I would propose, your Honor,

3    respectfully, is that the government produce discovery in this

4    fashion, that is, since he has no interest in sitting down with

5    us and going through the charges or our witnesses, what we

6    should probably do is produce early Jencks/Giglio, the 21-day

7    material that we're required in the local rules to give 21 days

8    in advance, we already have packages, we're in the process of

9    making them up, of about 15 witnesses that we could probably

03:11PM 10    get to him by next Monday including of Flemmi, of Martorano, of

11   Weeks, the key witnesses, then he will have the pertinent

12   Jencks and Giglio for the witnesses that the government intends

13   to call.  Some of these witnesses in some of these civil trials

14   are totally irrelevant.

15           THE COURT:  So you'll start with those witnesses that

16   the government intends to call, and you believe you can do that

17   within 10 days?

18           MR. KELLY:  Well, all of them, I'm not sure within 10

19   days.  Certainly those first 15 ones, which are important ones,

03:11PM 20   we can get them out in 10 days, then we'll have to go through

21   the indictment further and see what other witnesses, we'll just

22   give it to him.

23           THE COURT:  Now what about the civil cases?  I know

24   I'm getting into Docket Entry 682, but since we're here, I'd

25   rather discuss it.

1          MR. KELLY:  Well, I know he's asking, just recently

2     asked the court reporter for the McIntyre trial transcript.

3     He's had that from us since last November, so, you know, if he

4     wants us to produce --

5          THE COURT:  So let's not be duplicative here.

6          MR. CARNEY:  Here's the problem, your Honor, if you're

7     given a stack of materials that works out to be taller than I

8     am and you begin looking through it and every day, every week

9     you continue to go down that stack looking at the material,

03:12PM 10     then there is going to be a lot of material at the bottom of

11     the pile that you haven't had a chance to look at yet.  That's

12     our situation.

13          We've been going through, and it's why I represented

14     as an officer of this Court that based on our best efforts to

15     review that stack of discovery, it would take us until May of

16     2013 to get to it.

17          THE COURT:  I have considered that, and in the

18     interests of all parties after conferring with the Trial Judge,

19     I have set a new trial date.  Now you need to be able to work

03:13PM 20     backwards and determine how you're going to get through it.

21     What I am willing to consider is ordering the government to

22     deliver to you in some fashion that will make it easier, but

23     rather than just have illustrations, I need you to explain

24     exactly what it is.  Now, if you tell me for these 15 civil

25     cases that all of the depositions could be presented, you have

1    them all.

2           MR. KELLY:  I'll get whatever the civil unit has and

3    we'll produce them in electronic fashion under the new Bates

4    number, which, again, is easily searchable, and I would point

5    out that this is not a complicated white collar case.  I mean,

6    this is murder and mahem committed by the defendant and his

7    colleagues.

8           THE COURT:  Okay.

9           MR. KELLY:  That's relevant because that's why the

03:13PM 10   discovery in this fashion should be sufficient.  If we give

11   them the Jencks/Giglio packages by our witnesses, that's what

12   this case is about.  It's a cross-examination case.  I think

13   that would be the best way to go about pushing this case

14   forward.

15          THE COURT:  All right.  That's the first step.  Then

16   the second step is the civil depositions?

17          MR. KELLY:  Yes.

18          THE COURT:  What else from the civil cases?

19          MR. CARNEY:  All right.  I have the floor.

03:14PM 20   THE COURT:  The dockets are open to you.

21          MR. CARNEY:  Yes, they are.  May I have the floor for

22   a moment?

23          THE COURT:  You may so that Mr. Kelly can sit down.

24          MR. CARNEY:  From the civil cases I would want

25   organized civil case by civil case the depositions and the

1    trial transcripts from those trials if there was a trial.  If

2    the government --

3              THE COURT:  If there were a trial.

4              MR. CARNEY:  If there were a trial, thank you.  If the

5    government asserts that it has previously provided me with

6    something, they need only to identify it by the Bates number,

7    so we would want that.

8              THE COURT:  Depositions and trial transcripts, civil

9    cases?

03:15PM 10        MR. CARNEY:  That's correct.

11             THE COURT:  That takes care of the civil cases.

12             MR. CARNEY:  We've listed the 15 civil cases in a

13    pleading that we've filed.

14             THE COURT:  All right.  That's doable.

15             MR. CARNEY:  In terms of witnesses, we would want to

16    have all of the witnesses that the government anticipates

17    calling be provided by a list and accompanied by a packet that

18    contains all of the documents related to that witness.  If

19    those documents have previously been provided, it's

03:15PM 20    satisfactory if they identify them by the Bates number system

21    without asking them to give us material that we've already

22    received.  We just need to have a way to be able to find it.

23             MR. KELLY:  That's what I am proposing, that is the

24    witness packages are both the Jencks material and the Giglio

25    material pertaining to each witness, and that's what I've

1    suggested we could do, that at least with respect to the 15

2    significant ones, we could get on that and deliver it right

3    away, then we would go to the next 10, the next 12 and try to

4    produce them as groups.  That's doable.

5         THE COURT:  What are you looking at?  Usually we talk

6    about this at arraignment, but in terms of the number of

7    witnesses and the length of trial?

8         MR. KELLY:  Well, we think there will be at least 30

9    witnesses, could go as high as 50 depending upon stipulations.

03:16PM 10   Mr. Carney has indicated no willingness to stipulate to

11   anything that could complicate the length of the trial, and,

12   again, depending on Judge Stearns' schedule, it could go up to

13   three months depending upon stipulations and that sort of

14   thing.

15        MR. CARNEY:  Third, your Honor, I would like the

16   government to identify by count the witnesses that it states

17   will be related to that count and also provide electronically

18   exhibits that they intend to introduce regarding that account.

19   For example, we have 19 murders alleged in the indictment.

03:17PM 20   Each murder will have individual documents that are unique to

21   that particular killing.

22        There may be some that overlap, for example, if there

23   were two people allegedly killed at the same time and at the

24   same location, then the documents can be identified as relating

25   to those two people, but in most murder cases, there are

1  documents that are unique to that particular case, so I would

2  ask that the government identify for each count who are the

3  witnesses that will be called in support of it and what are the

4  documents that they intend to introduce on that count.

5       THE COURT:  Are you willing to break it down by count?

6       MR. KELLY:  Your Honor, this is what we offered to do

7  a month ago, sit down, tell them these are our counts, these

8  are our witnesses, and to the extent we can tell them now what

9  our exhibits are, we're willing to do that.

03:18PM 10       THE COURT:  Since he doesn't want to sit down with

11  you, can you put that in a chart?

12       MR. KELLY:  We can, your Honor.

13       THE COURT:  All right.  Done.

14       MR. CARNEY:  May I have one moment, please, your

15  Honor?

16       THE COURT:  Yes.

17       MR. CARNEY:  Your Honor, the government participated

18  in one additional case.  I know that Attorney Wyshak directly

19  participated in the proceedings in Florida against

03:19PM 20  John Connolly.  In Florida, you're permitted to do depositions

21  in a criminal case, and certainly there is a transcript in that

22  case.  Given the close working relationship between the State

23  of Florida and this office, I would like to have the

24  depositions and trial transcripts from that trial if we don't

25  already have them all.  Some we have uncovered, and, once

again, we'd be satisfied to just accept the Bates numbers

pointing out to us where they are.

THE COURT:  Can you answer, Mr. Wyshak, whether you

know if they've been produced or not?

MR. WYSHAK:  We've produced an entire CD, a separate

CD, of the Connolly trial in Florida.

THE COURT:  Trial transcripts?

MR. WYSHAK:  Trial transcripts from jury selection to

closings.  The depositions will be included in the prospective

Jencks packages for those witnesses.

MR. CARNEY:  Your Honor, I would like all of the

depositions in that case, not simply the ones of the

government's witnesses.

THE COURT:  Were there other depositions taken in that

case?

MR. WYSHAK:  Yes, there were numerous depositions.  We

do not intend to call all of the witnesses who were deposed in

Florida.  I don't have possession of the depositions of every

single witness.  In Florida, the defendant chooses to depose

the government's witnesses.  They depose many, many people who

the government did not call as witnesses at the trial.  I don't

know if the state attorney's office has ordered all of those

depositions.  They are, as I understand it, in the State of

Florida, they are public record material and should be

available to the defendant.

1          THE COURT:  All right.  So maybe you can provide

2     Mr. Carney with a contact in Florida that you can speak with?

3          MR. WYSHAK:  I can do that.

4          MR. CARNEY:  What they'll tell me is how much we're

5     going to have to pay for it.  When a deposition is done, as I

6     know your Honor knows, even at the request of the defendant,

7     the government will get a copy of the deposition, and so the

8     prosecutors have copies of all the depositions in Florida.

9     What I'm asking is that this prosecutor contact them and

03:21PM 10     indicate that he would like a copy of all of the depositions in

11     the case.

12          THE COURT:  Okay.  Let's, step one, contact the

13     prosecutor in Florida and get a list of the deponents, provide

14     Mr. Carney the list and then you take a look at the list.

15     Mr. Carney --

16          MR. CARNEY:  Yes, your Honor.

17          THE COURT:  -- it may be that there are some minor

18     recordkeepers and people like that that are not necessary to

19     obtain.

03:21PM 20          MR. CARNEY:  I would agree with your Honor.

21          THE COURT:  And we'll go from there in attempting to

22     get them for you through the government's circuit so that

23     there's no cost.

24          MR. CARNEY:  I'd like to address one comment by the

25     prosecutor that keeps coming up at these status hearings.  It's

1    the government's view that the only information they have to

2    provide me is related to witnesses that they are going to call

3    or documents that they are going to offer even if they have

4    this material in their possession.  Obviously the government

5    only intends to present inculpatory evidence.  I want to be

6    able to look at the rest of the evidence that they're not using

7    because I often find it's in that evidence where the

8    exculpatory evidence resides, and so I'm asking the government

9    if there were depositions done of witnesses to have those

03:22PM 10    depositions even if those are not witnesses the government

11    would call, perhaps because they rebut the government case.

12            THE COURT:  Are we talking just about the Connolly

13    case in Florida?

14            MR. CARNEY:  Yes, your Honor.

15            THE COURT:  So I've asked them to get a list of the

16    deponents, and then we'll go from there.

17            MR. CARNEY:  But I'm also applying it to the 15 other

18    civil cases.  I don't want the government to be cherry picking

19    the depositions, for example.  I want to have all of the

03:23PM 20    depositions.

21            THE COURT:  Here is my order that in each of the 15

22    civil cases, the government is to provide a list of those

23    individuals who were deposed, and to the extent that they have

24    the transcripts, they will be produced.  In the event that

25    there are some for whom the transcripts are missing, then we'll

1      proceed to hunt for them from there.

2            MR. CARNEY:  That's a good plan, your Honor.

3            THE COURT:  Doable?

4            MR. WYSHAK:  Your Honor, just so the record is clear,

5      of those civil cases, and there are actually 19, if we want the

6      record to be accurate.

7            THE COURT:  All right.  So corrected, 19.

8            MR. CARNEY:  Yes, your Honor.

9            MR. WYSHAK:  Many of those cases were not litigated,

03:24PM 10     dismissed as a result of summary judgment type motions.  There

11     were four trials which consolidated a number of the civil

12     cases.  That is where there were most of the deposition

13     activity.  The one case and, you know, I think Mr. Kelly

14     mentioned this, the Limone case has absolutely nothing to do

15     with this case.  The facts and circumstances surrounding the

16     murder in that case, it was a 1968 murder.  The facts and

17     circumstances surrounding that case have nothing to do with

18     Mr. Bulger, nothing to do with any of the charges in this case.

19           Again, we don't mind producing materials, but we're at

03:24PM 20     the point where, you know, the defendant on the one hand

21     complains that he's overwhelmed by the discovery.  On the other

22     hand, he complains he wants a universe of materials that much

23     of which is so irrelevant to the charges in this case that I

24     think that there has to be some accommodation drawn between

25     those two extremes.

1          MR. CARNEY:  May I make a suggestion?

2          THE COURT:  Just a moment.  Here's my suggestion on

3    the civil cases, a chart again, the 19 cases, caption of the

4    case, name of the parties, number of the case, how the case was

5    resolved, whether or not there are any depositions.

6          MR. WYSHAK:  I think we can do that.

7          THE COURT:  That way you have a place to look and you

8    can say there are four depositions here, where are they?  To

9    the extent that they can find them, you'll get them.  If not,

03:25PM 10   you'll be able to hunt for the remainder.

11         MR. CARNEY:  Thank you, your Honor.  I'm assuming that

12   when I get the material, it will be grouped in an organized

13   fashion, as your Honor seems to anticipate.

14         THE COURT:  It will be grouped by case.

15         MR. CARNEY:  By civil case or it will be grouped by

16   individual witness or it will be grouped by --

17         THE COURT:  Why shouldn't it just be grouped by civil

18   case, you get a redwell folder, that's the case, everything

19   pertinent to that case is in the folder.  You should be able to

03:26PM 20   sort it out from there.

21         MR. CARNEY:  Yes, your Honor.  I expect we'll be

22   getting electronic redwell folders.  What I'm referring to is

23   so that will be the process for the civil cases, then there

24   will be a separate process regarding individual witnesses who

25   will be called by the government in this case.

1          THE COURT:  Exactly.  Then the Florida case is

2    separate.

3          MR. CARNEY:  Then finally the organization by count,

4    which of the witnesses will apply to which count and which

5    exhibits will apply to which count.

6          MR. WYSHAK:  Your Honor, I understand --

7          THE COURT:  I would see that as slightly further down

8    the road.

9          MR. WYSHAK:  Also, your Honor, just --

03:26PM 10          MR. CARNEY:  The government has offered many times to

11    say let us, you know, invite us in and they'll show us what

12    they're going to offer.

13          THE COURT:  Well, I would take them up on their offer

14    if you don't want to miss anything.

15          MR. CARNEY:  I think that I can be more productive if

16    they provide that material to me to look at rather than sit

17    there and tell me about the material through the eyes of the

18    government, and I think what your Honor has done is come up

19    with a very well-crafted plan to move this discovery review

03:27PM 20    along.

21          All I'm focusing on right now is that for each count

22    the government would identify who are the witnesses that it

23    would call in support of that count and what are the documents

24    that they intend to offer as exhibits in support of that count.

25          THE COURT:  How long will it take you to do that?

1          MR. WYSHAK:  As the Court knows, that is a very

2     complicated process.  I mean, that is a process that continues

3     up and through the time of trial, which is why we have offered

4     in an informal setting to sit down with defense attorney and

5     try to walk through the case and talk about the witnesses and

6     talk about the evidence, but my concern --

7          THE COURT:  Obviously that's not working.

8          MR. WYSHAK:  That's correct, and to the extent that

9     Mr. Carney wants that in writing, I don't have a problem in

03:28PM 10     setting forth that kind of information in a written fashion,

11     but I certainly do not want to be bound by our trial prep., our

12     trial planning, what exhibits are going to come in through each

13     witness, what witnesses, testimony is going to be relevant to

14     which counts.  That's a very fluid thing, and that process

15     generally is never finished, and it's only finished on the day

16     that the government says the government rests.

17          THE COURT:  Well, of course, and you have a duty,

18     continuing duty to add all along, but it seems to me if you can

19     provide a preliminary witness list as soon as possible.

03:29PM 20          MR. WYSHAK:  We can take a shot.

21          THE COURT:  And a preliminary list of the documents or

22     proposed exhibits that at least at this time appear to be

23     associated with those individual witnesses, it's a start.

24          MR. WYSHAK:  We can certainly do that, your Honor.

25          THE COURT:  Anything else in 682?

1          MR. CARNEY:  No, your Honor, I think it's been very

2     comprehensively covered.

3          THE COURT:  So I will allow 682 to the extent set

4     forth on the record in open court today.  All right.

5          MR. CARNEY:  Your Honor, I don't want to appear to be

6     ungrateful, but I do need to enter my objection to the setting

7     of the trial date.

8          THE COURT:  So noted.  So noted.

9          MR. CARNEY:  I have a motion before the Court

03:30PM 10     entitled, "Defendant's Motion For Leave to File Letter."

11          THE COURT:  I have it.

12          MR. CARNEY:  And I would ask that the Court entertain

13     allowing that motion so that the Court can have the benefit and

14     the record can have the benefit.

15          THE COURT:  You have no objection to the actual filing

16     of the letter by Mr. Krupp, do you?

17          MR. KELLY:  No, your Honor.

18          THE COURT:  All right.  So that is allowed, and please

19     note that the Court read the letter carefully and took into

03:30PM 20     consideration the material in the letter.

21          MR. CARNEY:  Thank you, your Honor.

22          THE COURT:  I'm not sure that I agree with all of it

23     having been perhaps more intimately involved in the selection

24     of counsel than Mr. Krupp was, although he certainly had a role

25     in the CJA panel, so we will proceed with the motion to

1    intervene on the 6th at 2 p.m., and at the same time I will set

2    a further status conference because we will continue to have

3    these conferences to review the discovery, and I'm hoping that

4    at the next conference, I will at least have seen some of the

5    preliminary charts and things that have been created.  I'm a

6    great believer in organization.

7         When I was a trial lawyer, it was the key to my

8    success, so if things can be presented in an organized fashion,

9    I believe that you will be able to get through them in an

03:31PM 10    effective and comprehensive way so that you will be able to go

11    to trial on the 5th of March, and I will continually

12    re-evaluate this process over the next weeks and months to be

13    sure that it is on track, and if there are further refinements

14    to the process that you believe I can make to make it more

15    expeditious, please tell me.

16         MR. CARNEY:  I pledge to your Honor personally that I

17    will do everything I can to meet that date.

18         THE COURT:  And the government as well?

19         MR. KELLY:  Yes, your Honor, and I think the Court may

03:32PM 20    have alluded to this at the beginning, but today apparently

21    they filed a motion to recuse Judge Stearns, which we, of

22    course, oppose.  We think, you know, given the timing, the

23    defendant is not happy with his trial date, and now he's moving

24    to recuse the District Court Judge, so we're going to oppose

25    that, and we're going to oppose it vigorously, and we'd like

1      the standard two weeks to file a response.

2              THE COURT:  Certainly.  That will be set down for a

3      hearing.

4              MR. CARNEY:  I want to make the record clear, your

5      Honor.  This motion has absolutely nothing to do with the

6      setting of the trial date.  That may be the government's view,

7      but what we did is we --

8              THE COURT:  We can argue that when the motion is

9      heard.

03:32PM 10              MR. CARNEY:  I understand.  Thank you.

11              THE COURT:  All right.  Now, Mr. Garvin, I would like

12      a date in about five weeks or so, a further status conference.

13              THE CLERK:  How about August 1st, 2:30?

14              THE COURT:  Does that work for counsel, August 1st at

15      2:30?

16              MR. KELLY:  Yes, for the government, your Honor.

17      2:30?

18              THE CLERK:  Yes.

19              MR. CARNEY:  I wonder, your Honor, if it would be

03:33PM 20      possible to do it sooner than that.

21              THE COURT:  Certainly.  Propose a date.

22              MR. CARNEY:  July 17, your Honor.  It's a Tuesday.

23              THE COURT:  Do you think you'll be able to get at

24      least a first wave of this material to him by the 17th?

25              MR. WYSHAK:  I'm not sure, your Honor, but we'll

1    certainly try.

2          THE COURT:  All right.  So July 17th at 2:30.

3          MR. CARNEY:  Your Honor, I would hope the government

4    would give it to me in waves.

5          THE COURT:  Absolutely, and I will make that clear,

6    the sooner you can give even in dribs and drabs small bits.

7          MR. KELLY:  That's fine, your Honor.

8          THE COURT:  And with the greatest detail in what you

9    are turning over.  The more you can direct defense counsel to

03:34PM 10   what is in what he's receiving, it will be more useful.

11   Mr. Carney, on behalf of the defendant, do you agree to exclude

12   the time from today until the 17th of July?

13         MR. CARNEY:  Yes, I do, your Honor.

14         THE COURT:  Will the government file an assented to

15   motion to that effect?

16         MR. KELLY:  Yes, your Honor, to the extent I didn't

17   already do that with respect to the three-day continuance, I'll

18   do that as well.

19         MR. CARNEY:  I assent to that.

03:34PM 20   THE COURT:  Are there any other matters you want to

21   bring to my attention at this time?

22         MR. CARNEY:  I assent to the addition of those days,

23   your Honor.  I didn't know if that was on the record.

24         THE COURT:  Thank you.  Anything else, counsel?

25         MR. KELLY:  No, your Honor.

1              MR. CARNEY:  No, your Honor.  Thank you very much.

2              THE COURT:  All right.  Then we stand in recess.

3    Counsel, just to clarify one thing, looking at the calendar,

4    March 4th is the Monday of that week, so it's the 4th and not

5    the 5th.  I was off by a day.

6              THE COURT:  All right.  We stand in recess.

7              (Whereupon, the hearing was adjourned at 3:35 p.m.)

8

9                             - - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          C E R T I F I C A T E

2

3

4            I certify that the foregoing is a correct transcript

5     of the record of proceedings in the above-entitled matter to

6     the best of my skill and ability.

7

8

9

10

11

12     /s/ Valerie A. O'Hara

13     Valerie A. O'Hara, RPR            Dated June 28, 2012

14     Official Court Reporter

15

16

17

18

19

20

21

22

23

24

25