```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS


***************************

UNITED STATES OF AMERICA,
          Plaintiff

vs.                                  Case No. 1:99-cr-10371-RGS-3

JAMES J. BULGER,
          Defendant

***************************


                  TRANSCRIPT OF STATUS CONFERENCE
                BEFORE THE HONORABLE MARIANNE B. BOWLER
                     AT BOSTON, MASSACHUSETTS
                        ON MAY 29, 2012


APPEARANCES:

For the Plaintiff:
Brian T. Kelly, Assistant United States Attorney, and
Fred M. Wyshak, Jr., Esquire
United States Attorney's Office
1 Courthouse Way
Boston, Massachusetts 02210
617-748-3197

For the Defendant:
J.W. Carney, Jr., Esquire and Henry B. Brennan, Esquire
Carney & Bassil
20 Park Plaza, Suite 1405
Boston, Massachusetts 02116
617-338-5566


Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

     ----------------------------------------------------
```

**TRANSCRIPTION PLUS**
**1334 ELM STREET**
**LEOMINSTER, MASSACHUSETTS 01453**
**(978) 466-9383**
**www.transcriptionplus.com**

1                       P R O C E E D I N G S

2

3              THE CLERK:  Today is Tuesday, May 29th, 2012.  The

4      case of U.S. v. Bulger, Criminal Action No. 99-10371, will now

5      be heard.

6              Will counsel please identify themselves for the

7      record.

8              MR. KELLY:  Yes.  Good afternoon.  Brian Kelly and

9      Fred Wyshak for the United States.

10              THE COURT:  Thank you very much.

11              MR. CARNEY:  Good afternoon, your Honor.  J.W. Carney,

12      Jr. for the defendant.  With me is my co-counsel, Hank Brennan.

13              THE COURT:  Thank you very much.

14              MR. BRENNAN:  Good afternoon, your Honor.

15              THE COURT:  Good afternoon.

16              Well, Mr. Carney, you're on your feet, so I'll hear

17      from you.

18              MR. CARNEY:  I filed a status report that gave the

19      status of the defense preparation and I tried to be as candid

20      as I could be in that motion, in that report.  We continue to

21      be overwhelmed by the amount of discovery that we have to go

22      through, and that is me and my team.  It's impossible to be

23      able to go through that much discovery during the timetable

24      that has been set by Judge Stearns.

25              If one were to imagine a 500-page book that a lawyer

1    had to read prior to a trial and applied that to this case, you

2    would have more than 600 of those books lined up, meaning you

3    couldn't even be ready if you were reading two of them a day,

4    never mind understanding them and applying them to the case.

5         The Government has had 20 years to look over this

6    discovery and prepare for the trial.  The co-defendant, Stephen

7    Flemmi, took four years before it was resolved.  I have now had

8    the case for nine months.

9         The Assistant U.S. Attorney, on occasion, has said

10   that James Bulger is trying to delay the trial.  That is a

11   falsehood.  I know of absolutely no evidence, statement,

12   witness, document, anything that suggests that Mr. Bulger is

13   trying to delay the trial.

14        The reason I'm putting forth these points is because I

15   need to be prepared for the trial.  As your Honor knows, I'm a

16   lawyer who has to follow the ethical rules of the Supreme

17   Judicial Court, and to go forward at a trial where I am grossly

18   unprepared would probably subject me to discipline, unless I

19   did everything I could to avoid that.

20        Just recently I was reading a state court case where a

21   defense counsel was given 300 pages of documents very late in

22   the discovery process, indeed after the trial had begun.  The

23   judge ordered a mistrial over the defendant's objection, and

24   the SJC affirmed that and said it's not appropriate to expect a

25   defense counsel who receives 300 new pages of discovery at the

1   outset of trial to be able to try that case ethically and

2   effectively.

3          THE COURT:  Well, that's skipping ahead.  We're not at

4   trial right now.

5          MR. CARNEY:  I understand, your Honor.  But it just

6   puts into perspective, if I'm starting trial with thousands of

7   more pages than that that I will not have been able to see.

8          Your Honor also knows that this is a CJA appointment

9   pursuant to the Criminal Justice Act.  I've been honored to be

10   on this Criminal Justice Act board appointed by this court now

11   for more than 10 years and I know the policies quite well, and

12   the intention of the CJA panel is to be available to take cases

13   and diligently prepare them for trial, but they are not

14   expected to do only a CJA case or cases as part of the

15   practice.  Indeed one couldn't because at the rate the court

16   pays, and I'm not being at all critical, you can't sustain a

17   law practice.  You've got to have other cases or you'll go

18   bankrupt.

19          Finally, your Honor, I owe an obligation to you,

20   having accepted this case, to make every effort I possibly can

21   with my team working with me to meet the deadlines that the

22   Court has set, in particular the trial date that was set by

23   Judge Stearns, and I am diligently working at the least six,

24   and some weeks seven days a week, to prepare this case for

25   trial.  To be honest, the stress on me personally has been

1   enormous by this schedule.  Even my doctor last week said that

2   the impact of this stress is noticeable on me physically.  I do

3   not want to be a lawyer who was born in 1952 and on my

4   gravestone it says he died in 2012 from the stress of trying to

5   get a case ready by an impossible deadline.

6        THE COURT:  Well, are you telling me, Mr. Carney, you

7   have some doubt whether or not you can proceed?

8        MR. CARNEY:  What I would ask your Honor is for you to

9   permit me next month to present this in writing to the Court,

10  so that I can put forth all of the facts that exist and the

11  Court can have an opportunity to consider it, and between now

12  and that date I will continue to work as hard as I possibly can

13  preparing this case for trial.

14       THE COURT:  Well, if you're considering withdrawing

15  for whatever reason, I don't want to wait a month.  Two weeks.

16  File any supporting documentation two weeks from today.

17       MR. CARNEY:  I'm not considering withdrawing at this

18  time, your Honor.

19       THE COURT:  Well, it certainly sounded that you had

20  some concern over whether or not you were physically able to do

21  this at this time.

22       MR. CARNEY:  What I'm suggesting is that I'll be

23  appearing before the Court with a motion to reschedule the

24  trial date to a reasonable date.  I think that's the first

25  step.

1           THE COURT:  Well, that's a matter for Judge Stearns,

2     but in the meantime we will proceed as if we have a firm trial

3     date.

4           MR. CARNEY:  I understand, your Honor.

5           THE COURT:  But I do think that one of the ways that

6     we might be able to streamline it is for the Government and the

7     defense to sit down and talk about what the trial is going to

8     be about, because there may be vast amounts of material that

9     don't have to have the review with such great particularity if

10    they are totally irrelevant to the matter.

11          Is the Government open to that?

12          MR. KELLY:  We're very open to that and we'd like to

13    do that.  We've offered to do that.

14          I mean, I think some of this has to be put in context

15    here.  You know, first of all, the defendant, Mr. Bulger, is of

16    course trying to avoid trial.

17          MR. CARNEY:  I object.

18          MR. KELLY:  Wait a minute.  He said his peace.

19          THE COURT:  All right.  One person at a time.

20          MR. KELLY:  And, you know, he fled the district 16

21    years ago trying to avoid trial.  So it's no secret he's not

22    eager to bring himself in front of a jury and have his guilt or

23    innocence determined.

24          So the second thing is that, you know, some of this

25    discovery is of such marginal relevance.  The only reason we

1     are producing it is because this case is, in fact, receiving

2     such intense scrutiny.  For instance, as attached to the

3     Government's status report.  You know, the 1700 pages that

4     Mr. Carney laments in his status report as being missing

5     discovery finally produced, it's 1700 pages of other informants

6     saying Mr. Bulger has committed a bunch of crimes, Mr. Bulger

7     committed this crime.  It's not exculpatory.  But to the extent

8     it also references the fact that Mr. Bulger is committing

9     crimes with Stephen Flemmi, and since Flemmi is a witness, you

10    know, it's arguably further impeachment for Flemmi, as if

11    there's not enough impeachment already of Flemmi.

12          But we gave this to Mr. Carney at the last hearing

13    because I asked him do you want it.  He wrote us a letter

14    saying there's some civil discovery, the FBI's civil discovery

15    that was produced, where is it located.  You know, it's 1700

16    pages of very marginal relevance.  He doesn't have to read that

17    (inaudible), but he has it.  He can search it now with the

18    search tools that are available.

19          THE COURT:  Electronically?

20          MR. KELLY:  Right.  So if there's a term that he wants

21    to search in these 1700 pages, he can do that.

22          You know, there are other cases in this district that

23    have proceeded.  It's not an impossible task.  The Government

24    remains willing to try to expedite this matter, facilitate this

25    in any way possible, in terms of meeting with them, telling

1    them what our, you know, witnesses are, who we think they're

2    going to be, and this is where we think most of the evidence

3    is.  We're not going to try to trick them.  You know, it's in

4    our best interest to move this case along too.

5        THE COURT:  Well, I think what I'd like to do is I'll

6    give you the two weeks to file any particulars.  I also want to

7    set the motion for protective order down for hearing.

8        Mr. Kelly, you indicated you would like another week

9    to respond to that?

10       MR. KELLY:  I would, your Honor.  You know, I wanted

11   to file something before this hearing -- I apologize for its

12   lateness -- but I do think it's worth discussing further with

13   counsel about that because there may be a simple solution.  But

14   one of the big issues that he raises is that he doesn't know

15   what he can attach and what he can't attach to any pleadings.

16   But what we have done in other cases and other matters is he

17   can temporarily file anything he wants, attach anything he

18   wants under seal.  If it's unobjectionable after the fact, then

19   we just won't oppose unsealing the whole thing.  So I think

20   that will simplify a lot of this.

21       THE COURT:  And as you pointed out, there are certain

22   things, such as personal medical records and that sort of

23   thing, which do raise some concerns.

24       MR. CARNEY:  I told Mr. Kelly last week that all

25   medical records, all psychiatric records, I agree should remain

1    confidential, and that those are not part of this.

2         THE COURT:  All right.  So I'm going to order you to

3    sit down once more to see if you can narrow this down to an

4    area that is quite specific and exclude, if there are things

5    like the medical records, psychiatric records that can be

6    excluded, reduce that to writing.

7         MR. CARNEY:  Perhaps the Government could give me a

8    document that indicates what documents it wants to keep sealed

9    from public view.  My view is that at this point in this saga

10   where there is no other defendant who is ever going to be

11   prosecuted for these crimes, that the time has come to open

12   this material up for people to see it.

13        The Government should not be trying to hide stuff

14   still at this point.  There are so many books being --

15        THE COURT:  Well, "hide" is a strong word, Mr. Carney.

16        MR. CARNEY:  I'm --

17        THE COURT:  "Hide" has a certain inference to it.

18        MR. CARNEY:  Well, "hide" is a very specific word,

19   your Honor is correct, and it does have meaning, and I intend

20   it to have its full meaning.

21        MR. KELLY:  Well, then let me point out the extra

22   protective order that's in place.  Nothing precludes him from

23   discussing the materials with witnesses that he identifies.

24   Nothing precludes him from discussing this with his defense

25   team.  So to suggest that it's barring him from actually doing

1   his job, it doesn't make a lot of sense.

2           And to the extent he's going to have difficulty filing

3   something that might include sealed materials, file whatever he

4   wants.  But file it temporarily under seal, and chances are the

5   Government is simply not going to object to its unsealing.  But

6   he shouldn't feel restrained from, you know, filing whatever he

7   wants.

8           THE COURT:  Well, I think he's not talking so much

9   about filing.

10          Is that correct, Mr. Carney?

11          MR. CARNEY:  It's not the primary reason, but filing

12   is important in terms of preparing things.

13          THE COURT:  Well, but filing, you can follow the

14   procedure outlined by Mr. Kelly.  You move to seal it, and if

15   the Government doesn't oppose, you know, has no concern, then

16   it can be unsealed.  But I thought your concern was more for

17   individuals with whom you were conferring.

18          MR. CARNEY:  That's correct, your Honor.

19          THE COURT:  Well, I urge you then to have one more

20   meeting; sit down and see if you can narrow this.  You file

21   your response.  I'll give you a prompt hearing on the motion

22   for the protective order.  As you know, Chief Judge Wolf has

23   major concerns about the documents in his case and those may

24   have to be dealt with separately.  But I will have a further

25   hearing.

1        Can we have a date, Mr. Garvin?

2        THE CLERK:  Sure.

3        How much time, Judge?

4        THE COURT:  Well, I'd say three weeks.

5        THE CLERK:  How about June 19th at 2:45?

6        THE COURT:  Does that work for counsel?

7        MR. CARNEY:  If I may have just one moment, please.

8        (Pause.)

9        MR. CARNEY:  Is either the 21st or 22nd available?

10       THE COURT:  What can you do, Mr. Garvin?

11       THE CLERK:  The 21st at 2:30.

12       MR. CARNEY:  Thank you, your Honor.

13       THE COURT:  The other thing I want you to keep in mind

14   at this time is dispositive motions.  I know it may seem a bit

15   premature, but I want to be considering a scheduling for

16   dispositive motions, so at least to have some guideline,

17   keeping in mind at the present that we still have the trial

18   date as firm and working back from that, in terms of adequate

19   time to deal with dispositive motions.

20       MR. CARNEY:  I'll have a better sense by that date,

21   your Honor.

22       THE COURT:  All right.  Anything else you want to

23   bring to my attention?

24       MR. KELLY:  No, your Honor.

25       MR. CARNEY:  No, your Honor.  Thank you very much.

1          THE COURT:  All right.  Then we stand in recess.

2          (There was a break in the audio.)

3          THE CLERK:  Resuming on the record?

4          MR. CARNEY:  Yes.

5          THE COURT:  Please be seated in the courtroom.

6          MR. CARNEY:  The defense would assent to the exclusion

7   of the time between today's date and June 21st in the interests

8   of justice.

9          THE COURT:  All right.  And Mr. Kelly, will you file

10  an assented-to motion to that effect?

11         MR. KELLY:  Yes, I will.  Thank you, your Honor.

12         THE COURT:  All right.  Thank you.

13

14         (The hearing was concluded.)

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

        I, Karen M. Aveyard, Approved Federal Court
Transcriber, do hereby certify that the foregoing transcript,
consisting of 12 pages, is a correct transcript prepared to the
best of my skill, knowledge and ability from the official
digital sound recording of the proceedings in the
above-entitled matter.

/s/ Karen M. Aveyard

Karen M. Aveyard

November 15, 2012

Date