```
 1                  UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
 2

 3       * * * * * * * * * * * * * *
         *UNITED STATES OF AMERICA    *
 4                                     *   CRIMINAL ACTION
                     v.                *   No. 99-10371-RGS-3
 5       *                             *
         JAMES J. BULGER,              *
 6       a/k/a Jimmy,                  *
         a/k/a Whitey,                 *
 7       a/k/a Jim                     *
         * * * * * * * * * * * * * *
 8

 9            BEFORE THE HONORABLE RICHARD G. STEARNS
                 UNITED STATES DISTRICT JUDGE
10        HEARING RE: IMMUNITY ISSUE and PROTECTIVE ORDER
                        February 13, 2013
11

12       APPEARANCES:

13            UNITED STATES ATTORNEY'S OFFICE, (By AUSA Brian T.
         Kelly, AUSA Fred M. Wyshak, Jr., and AUSA Zachary R.
14       Hafer), 1 Courthouse Way, Suite 9000,  Boston,
         Massachusetts 02210, on behalf of the United States of
15       America

16            CARNEY & BASSIL, (By J.W. Carney, Jr., Esq., and
         Henry B. Brennan, Esq.), 20 Park Plaza, Suite 1405,
17       Boston, Massachusetts 02116, on behalf of the Defendant

18

19
                              Courtroom No. 21
20                            1 Courthouse Way
                              Boston, Massachusetts 02210
21

22

23                    James P. Gibbons, RPR, RMR
                         Official Court Reporter
24                    1 Courthouse Way, Suite 7205
                      Boston, Massachusetts  02210
25                      jmsgibbons@yahoo.com
```

```
1                    P R O C E E D I N G S
2           THE CLERK:  All rise for this Honorable Court.
3       Court is open.  You may be seated.
4       The case before this Court carries Case
5   No. 99-cr-10371.  United States of America versus James J.
6   Bulger.
7           Counsel, please identify yourselves for the record.
8           MR. KELLY:  Good afternoon.  Brian Kelly, Fred
9   Wyshak, and Zak Hafer for the United States.
10          MR.  CARNEY:  Good afternoon, your Honor.  J.W.
11  Carney, Jr., with me is Hank Brennan, representing the
12  defendant, your Honor.
13          THE COURT:  All right.  Thank you.
14      Welcome back, counsel.
15      The subject before us today is the immunity claim, and
16  then there are some mechanical or logistical discussions
17  that I think are warranted with respect to the protective
18  order.
19      I would like to take up the immunity claim first,
20  because I think it is the most difficult issue, and then we
21  will turn briefly to the protective order at the conclusion
22  of the hearing.
23      I thought by way of framing the discussion it would be
24  useful if I sketched out for counsel the questions that
25  occurred to me while I was reading the briefs, and also
```

1    indicate the order in which I think these questions have to

2    be answered.

3        The first question is:  Does Rule 12(b)(2) of the

4    Federal Rules of Criminal Procedure require a defendant to

5    raise a claim of immunity prior to trial, and is the claim

6    forfeited if he fails to do so?

7        This question I think I can answer.

8        Rule 12 establishes two categories of pretrial motions,

9    those that must be made prior to trial, or else they are

10   forfeited -- a motion to suppress physical evidence would

11   come to mind as an example of what Rule 12 contemplates in

12   this regard -- but there also is a second class of motions,

13   those that need not be raised, and it would seem to me that

14   immunity falls within the permissive class, as the Barletta

15   decision, among others, indicates.

16       So if the answer to Question 1 is "No," as the case

17   appears to be, may the government as a "party" -- which is

18   the term used in Rule 12 -- to the proceeding bring a motion

19   to compel the Court to rule on a potential immunity claim

20   prior to trial by invoking Rule 12(d)?

21       If the answer to Question 2 is "No," as defendant

22   argues, may the Court, relying on its inherent authority to

23   regulate the conduct of criminal trials, or by invoking the

24   motion in limine practice, nonetheless decide the issue

25   prior to trial on the Court's own initiative?

1        If the answer to Question 3 is "Yes" -- and let me

2    stress that at the moment I am agnostic on the subject -- is

3    the Court limited strictly to decisions of law with regard

4    to the viability of an immunity claim or may the Court hear

5    evidence and make preliminary findings of fact that are

6    necessary to a decision on the questions of law implicated

7    by the claim?

8        This would be, for example, the case, again, in

9    deciding a motion to suppress physical evidence or a

10   confession.

11       In this context, would such fact finding invade the

12   province of the ultimate fact finder, the jury, as the

13   defendant contends?  Or, as a corollary to that question, is

14   any fact finding at all required, or would it be appropriate

15   for the Court to proceed as it would on a motion to dismiss

16   by accepting all of defendant's well-pleaded facts as true

17   and then drawing its conclusions of law from those facts?

18       Here, and this is an aside, it is worth noting that

19   although defendant characterizes his immunity claim as a

20   "defense," immunity is not, in fact, an affirmative defense.

21   It is not a claim that:  I have a defense to an action.  The

22   claim is, I shouldn't be prosecuted at all.  If it were,

23   indeed, an affirmative defense, there is ample precedent for

24   placing the burden of production and, in many cases, the

25   burden of persuasion on the defendant, as would be the case

PDF created with pdfFactory trial version www.pdffactory.com

1    with true, affirmative defenses like duress, necessity, and

2    entrapment by estoppel.

3         Now, regardless of the answer to Question 4, if the

4    Court were to determine as a matter of law that a claim of

5    immunity is ultimately not viable, would this ruling operate

6    to restrict the defendant's Sixth Amendment right to testify

7    in his own defense, a fundamental right that cases like

8    Harris v. New York and Rock v. Arkansas state is limited

9    only by the rules of perjury and materiality?

10        Again, I am not suggesting that counsel need rigidly

11   adhere to this outline in their presentations, but it might

12   be useful for you to know what I am thinking at the moment

13   in attempting to reach a decision on the issues raised by

14   the government's motion.

15        As it is, indeed, the government's motion, it is

16   appropriate for government counsel to proceed first.

17        MR. HAFER:  Yes, your Honor.

18        Your Honor, I am going to try to take the questions in

19   the order you posed them, as I was jotting notes down.

20        With respect to your first question, whether the rule

21   requires the defendant to raise it before trial, the answer

22   to that seems pretty clearly to be "No."  However, your

23   follow-up question, which was, "Is it forfeited if it's not

24   raised," that seems to be the intent of that part of the

25   provision.

1    That Seventh Circuit opinion that we cited, I think, in

2    Brimberry, which seems to suggest that the fact that the

3    defendant is not required is simply a question of whether,

4    if he doesn't raise it before trial, it constitutes a

5    forfeiture or a waiver at trial.

6    Your second question, I believe, which was:  "May the

7    government as a party to this proceeding under 12(b)(2)

8    bring this motion?"  We believe the answer unequivocally is

9    "Yes."

10    The plain text of the rule, 12(b)(2), is very clear, "a

11    party."  There are in federal criminal proceedings two

12    parties, one of which is the government.  The government has

13    brought this motion under 12(b)(2) because in its view

14    immunity is an issue capable of determination without trial

15    of the general issue.

16    That view of the government is, in fact, confirmed by

17    the 1994 Adoption Notes to the rule which state

18    unequivocally that immunity is capable of determination

19    without a trial of the general issue.  And just so it's

20    clear, obviously, trial of the general issue has been

21    interpreted to mean trial of, you know: "Did he do what he's

22    charged with," trial of the core issue of guilt or innocence

23    in the case.

24    And the answer here is, it's the government's position,

25    that the Court could clearly hold an evidentiary hearing,

PDF created with pdfFactory trial version www.pdffactory.com

1    determine whether, for example, Mr. Bulger purportedly met

2    with Mr. O'Sullivan, where the meeting occurred, what was

3    discussed, whether any other witnesses were present,

4    whether, for example, Mr. O'Sullivan specifically told

5    Mr. Bulger he was authorized to commit murder, whether

6    Mr. Bulger followed-up with Mr. O'Sullivan to confirm that

7    understanding.  All of those inquiries, your Honor, are

8    clearly capable of determination without trial of the

9    general issue.

10        Your Honor's third question then, I believe, was, Is

11   the Court limited strictly to making determinations of law,

12   or, in resolving this issue, may it make factual findings?

13        And the answer to that is the Court certainly can make

14   factual findings.

15        Rule 12(d), your Honor, and this was also discussed in

16   the Barletta opinion we cited -- I am just going to read it.

17   It's not very long.  "The court must decide every pretrial

18   motion before trial unless it finds good cause to defer a

19   ruling.  The court must not defer ruling on a pretrial

20   motion if the deferral will adversely affect a party's right

21   to appeal."

22        As an aside, before I get to the end of the rule,

23   another reason that the government believes this issue must

24   be decided pretrial is it could lose, under 18, U.S.C.,

25   3731, its appellate rights if this issue were not decided

PDF created with pdfFactory trial version www.pdffactory.com

1   until trial and jeopardy had attached.  Hypothetically, if

2   the jury were sworn and trial began, and the government put

3   on two to three months' worth of witness and evidence, and

4   at that point it was determined through a combination of

5   jury fact finding and legal conclusions by the Court that

6   the defendant did, in fact, have immunity, as Judge Wolf

7   noted in Salemme, the government very well may have no

8   appellate recourse at that point once jeopardy has attached;

9   which, in our view, is another very strong reason that this

10  not only should, but must, be decided prior to trial and

11  preserve the government's appellate rights.

12      Getting back to the inquiry that your Honor asked, the

13  final line of Federal Rule of Criminal Procedure 12(d),

14  "When factual issues are involved in deciding a motion, the

15  court must state its essential findings on the record."

16      And the Barletta opinion, which the government cited in

17  its submission, clearly establishes that, "In resolving a

18  pretrial motion, so long as its fact findings do not invade

19  on the province of the jurors with respect to the ultimate

20  issues, the court can and, indeed, should make fact findings

21  to the extent necessary."

22      The rule, of course, requires that those be put on the

23  record, but absolutely, under the rule and Barletta, the

24  Court can make preliminary fact findings necessary to

25  resolve a pretrial motion; subject, of course, to not

1    infringing on the ultimate fact finder's determination with

2    respect to the charges in the indictment.

3             THE COURT:  Before you leave that answer, the

4    corollary was:  Does it necessarily have to be evidentiary

5    fact finding, or can you proceed, as you would on a motion

6    to dismiss, on well-pleaded facts, or is that up to the

7    Court to determine?

8             MR. HAFER:  I think there is some measure of

9    discretion there, your Honor.

10       In the first instance it's obviously the defendant's

11   burden to prove that he has an enforceable immunity

12   agreement.  And to the extent that the defendant chose to

13   put on no evidence at some evidentiary hearing or some

14   further proceeding on this issue, there would be, in our

15   view, no factual basis to find that he had an enforceable

16   immunity agreement.

17       If the Court were more inclined to cabin the

18   evidentiary portion of a hearing on this issue, could the

19   Court, in fact, find hypothetically that to the extent all

20   of the defendant's -- not even really facts, because there

21   are no facts from the defendant, which I think -- well,

22   defendant's counsel's unsworn allegations in various

23   pleadings and before various courts, if those were all

24   assumed as true, I do think that your Honor could say

25   hypothetically this contract, to the extent there was a

PDF created with pdfFactory trial version www.pdffactory.com

1   contract, between Mr. Bulger and Mr. O'Sullivan, and to the

2   extent it contemplated prospective authorization to commit

3   murder, that Mr. O'Sullivan does not have that authority.

4   As a matter of law, an Assistant United States Attorney does

5   not have actual authority to authorize the killing of

6   American citizens as a matter of law.

7        Similarly, even assuming that there was a meeting

8   between Mr. Bulger and Mr. O'Sullivan, and even assuming

9   that Mr. O'Sullivan had authority, both of which we do not,

10  obviously, concede occurred, any contract -- and, as we note

11  in our pleading, certainly these immunity issues are

12  strongly informed by principles of contract law -- any

13  contract between Mr. O'Sullivan and Mr. Bulger, to the

14  extent it contemplated murder, would be void as a matter of

15  law as against public policy.

16       So the government's position is there is a way for the

17  Court to resolve this purely legally.  However, the case the

18  defendant cited in his brief, an Eleventh Circuit case,

19  United States v. Thompson, the mechanism by which the

20  district court resolved that was to initially schedule a

21  hearing.  Of course, that defendant moved to dismiss the

22  indictment claiming he had immunity.

23       As an aside, your Honor, a defendant who thinks he has

24  immunity should not want to go to trial.  We cited a number

25  of analogous cases in Section 1983, again, albeit a slightly

1    different context, but strong language from the Supreme

2    Court that immunity is a protection from suit, not from

3    conviction.  And, as your Honor just noted, immunity is not

4    a defense.

5         So defendants who believe they are immune from

6    prosecution move to dismiss the indictment, because why in

7    the world would they want to go through a two- to

8    three-month trial if, in fact, there is a legal impediment

9    to the prosecution, which a valid, enforceable immunity

10   agreement would be?  That's where immunity is in Federal

11   Rule of Criminal Procedure 12(b)(2).  It is listed with the

12   other defenses of former jeopardy, former conviction,

13   statute of limitations, failure to state an offense.

14   Immunity is a legal impediment to the prosecution.

15        So the government's position is:  A defendant who

16   believes he's immune moves to dismiss.  Why else would that

17   defendant want to go through trial?

18        In Thompson, getting back to Thompson, of course that

19   defendant did move to dismiss the case.  The court scheduled

20   an evidentiary hearing.  The defendant refused to put on any

21   evidence, and the court concluded from that that there was

22   no factual basis for the claim of immunity.

23        The defendant then moved in limine to prevent any

24   reference to immunity at trial, and then at that point that

25   defendant shifted and so, No, no, I am going with the

PDF created with pdfFactory trial version www.pdffactory.com

1    affirmative defense of entrapment by estoppel.

2        I think your Honor's fifth question was if your Honor

3    were to determine that the claim of immunity were not

4    viable, what effect would that have on the defendant's right

5    to testify?

6        Obviously, the government concedes the wide latitude to

7    defendants in criminal matters to testify in their own

8    defense, but, like the Eleventh Circuit found in Thompson,

9    absent any evidence of an enforceable immunity agreement,

10   the Court should significantly limit the amount of evidence

11   it takes on immunity.  Because at that point immunity is not

12   relevant.  The Court has, in the government's view, made a

13   correct legal determination that there is no enforceable

14   immunity agreement.  And once that determination is made,

15   any testimony with regard to immunity is not relevant.  It

16   will distract the jury.  It will confuse the jury.  And it

17   is not, as your Honor noted quite correctly, we believe, a

18   defense that negates intent.

19       And this is why, in the government's view, the

20   distinction between immunity and entrapment by estoppel is

21   not a semantic distinction.  One is a legal impediment to

22   prosecution; another is an affirmative defense that negates

23   a defendant's *mens rea* or criminal intent.

24        THE COURT:  You are correct, and that is where the

25   1983 cases point in the qualified immunity context; that

PDF created with pdfFactory trial version www.pdffactory.com

1    immunity is a relief from the burdens of prosecution or

2    defending a civil case, as is usually the instance in a 1983

3    action.

4         Going back to the Sixth Amendment issue, could it not

5    be argued that the issue is not simply testimony that goes

6    to a defense in the case, but could not a defendant take the

7    position that:  Why I may have been mistaken either

8    factually or as a matter of law as to whether I had been

9    given immunity in a circumstance -- like the one that is

10   portrayed here, or at least sometimes portrayed -- does

11   that, nonetheless, perhaps in the eye of the judge or jury,

12   become to some degree mitigating?

13        I mean, generally a defendant is entitled not simply to

14   testify to deny guilt, but also is permitted to testify in

15   mitigation of the seriousness of his guilt in a given

16   matter.

17             MR. HAFER:  In our view, your Honor, he can

18   testify.  There are two defenses, as we set forth in our

19   motion, that would encompass that question:  The first being

20   entrapment by estoppel, which essentially is, I was told --

21   in this case, entrapment by estoppel would be Mr. Bulger

22   getting on the witness stand, saying he met with

23   Mr. O'Sullivan, Mr. O'Sullivan told him that murder was

24   legal, and he believed him, and relied on that advice.

25             Now, it is certainly his right to assert that defense.

```
1    It requires notice, and it still requires, as the Court In
2    Thompson indicated, some type of factual basis and threshold
3    relevancy determination under 401 to the Court in camera.
4        Similarly, on public authority it's that:  I was given
5    authority in the course of conducting this covert activity
6    to do what I did.  And that's act by act.  It's also an
7    affirmative defense.  The notice requirements are set forth
8    in 12.3, and it, like entrapment by estoppel, requires a
9    factual proffer to satisfy the Court of relevance.
10       The government's view as to the scope -- as to what
11   Mr. Bulger would be entitled to testify to at trial, would
12   hinge on the type of factual proffer he provided in camera,
13   outside the presence of the jury, to satisfy the Court that
14   it met the threshold relevance requirements.
15       We agree as a general matter, and due process and the
16   Fifth Amendment and the Sixth Amendment permit a defendant
17   to testify in his owe defense, and there are typically very
18   few restrictions on that.  But one restriction is relevancy.
19   They certainty can't get up and start testifying about stuff
20   that has absolutely nothing to do with the case.  And that's
21   why the Federal Rules of Criminal Procedure set forth the
22   notice requirements, and that's why the Court is entitled
23   and, in fact, instructed to make an initial determination
24   under 401 as to relevance.
25       That's our view on the scope of what the defendant
```

1    would be able to testify to.

2          I'll just say in summation here, if I've addressed all

3    your Honor's questions --

4              THE COURT:  I'm impressed that you remembered them

5    all.

6          (Laughter.)

7              MR. HAFER:  I do just want to note -- I've talked

8    for a minute here about this entrapment by estoppel and

9    public authority, but I want to make very clear that that is

10   not what he is claiming.  The claim is immunity.  The claim

11   is he has an immunity agreement.  That's why we've moved

12   under 12(b)(2).  We are "a party."  We've cited a number of

13   cases to the Court in which courts have entertained pretrial

14   motions under 12(b)(2) and 12(d) by the government.

15         Once the government has moved like we have, your Honor,

16   and immunity is clearly an issue capable of determination

17   without trial of the general issue, we believe that 12(b)

18   and Barletta require your Honor, require your Honor, to

19   resolve this issue prior to trial.

20         However, even if your Honor views this as somewhere in

21   the gray area between entirely segregable from the core

22   issue and entirely bound up with the core issue, your Honor

23   should resolve this prior to trial.  You should resolve it

24   prior to trial so as not to waste the public's times, so as

25   not to waste the jury's time, to prevent confusion and

1    distraction at trial, and to preserve the government's

2    appellate rights under 18 U.S.C., Section 3731.

3        And the last point I will make, your Honor, is

4    defendant's claim that, once he meets the threshold

5    requirement for immunity, the Court instruct the jury as to

6    the defense.

7        That sort of encapsulates the problem with his position

8    legally.  There are no elements to an immunity defense.

9        So, for those reasons, and the reasons set forth in our

10   pleading, your Honor, we believe the Court is required, now

11   that the government has moved to resolve this prior to

12   trial, and we believe that the Court should resolve this

13   prior to trial.

14            THE COURT:  Thank you, Mr. Hafer.

15       Mr. Brennan, are you going to argue, or Mr. Carney?

16            MR.  CARNEY:  Thank you, your Honor.

17       I agree with the Court regarding your initial

18   statement, that Rule 12(b) does not require a defendant to

19   raise the issue.  It's an issue that can be raised at trial.

20       As to the question of whether the government can bring

21   a motion under 12(b)(2) to raise this issue, I submit the

22   answer clearly is "No."

23       12(b)(2) allows a party to raise a limited number of

24   the issues before the Court, and the decisions have been

25   quite clear as to what types of issues those are, and all of

PDF created with pdfFactory trial version www.pdffactory.com

1    the cases have warned that it should not be a mechanism to

2    decide a critical trial issue.  12(b)(2), in fact, has been

3    noted by one Court of Appeals, when it is the government

4    using it, to really be only available to the government in

5    pursuit of reciprocal discovery.

6        The language of the 12(b)(2) informs this.  It says

7    that:  A party may raise by a motion under 12(b)(2) a

8    defense, objection, or request.

9        The government is not raising a defense by this motion.

10       The government is not making an objection.

11       It may be objecting to the whole manner of the defense

12   that is going to be presented, but that is not the way that

13   "objection" is used under that rule.

14       And the third thing the government can do is make a

15   request under 12(b)(2).

16       And the case law makes it clear that when the

17   government employs 12(b)(2), it might be requesting the

18   Court to indicate what elements are necessary to be proven

19   regarding a particular charge, or to clarify a matter of

20   law, but 12(b)(2) is not designed to take up an issue as to

21   whether the defendant can even present a particular defense.

22       What the government is actually doing is using Rule (d)

23   instead, because what they are trying to do, and what they

24   could do permissibly, is focus on a witness, a percipient

25   witness, perhaps, or an expert witness, and ask the Court to

PDF created with pdfFactory trial version www.pdffactory.com

1    make a ruling regarding whether that witness could testify.

2    Perhaps the expert is not qualified.  Perhaps the witness

3    doesn't have relevant testimony to present.

4         But in that context the Court can make a ruling without

5    making any determinations of issues that are critical to

6    what the jury will be deciding.  It doesn't make sense for

7    the rules to say that a defendant may raise a defense of

8    immunity either by pretrial motion or at trial if it didn't

9    mean that it's the defendant's choice to raise it at trial.

10        If he foregoes the motion to dismiss, then he's asking

11   the jury to be the finder of fact.

12        Rule 12(b)(2) and Rule 12(d) do not allow the

13   government -- do not authorize the government to seek the

14   kind of ruling that they're seeking in this case.

15        I submit, your Honor, that the Court *sua sponte* cannot

16   do it either.

17        Virtually all of the cases cited by the government

18   involve an instance where a defendant had brought a motion

19   to dismiss and asserted that his defense is that he had

20   immunity.  Whether it's straight-up immunity, entrapment by

21   estoppel, whether it's authorization, whatever branch of the

22   immunity tree one is relying upon, it's not something that

23   the judge can decide prior to the trial under any mechanism

24   if the defendant himself does not raise it.

25        If the defendant filed a motion to dismiss based on

1    immunity, he would be, in effect, requesting the Court to

2    make findings of fact to be followed by a ruling of law.

3         In every instance cited where the defendant filed a

4    motion to dismiss or a motion to suppress, he presented

5    testimony, or made a proffer, and the court made findings of

6    fact.

7         In the Thompson case, relied on heavily by the

8    government, the defendant did bring a motion and the court

9    made findings of facts; and the court found that the

10   defendant's assertion was not credible, and so he denied the

11   motion.

12        That's entirely within the Court's power if the

13   defendant here had brought a motion to dismiss.

14        But even if the Court heard a motion to dismiss and

15   denied the motion to dismiss, finding either the defendant's

16   testimony incredible or for whatever reason, the defendant

17   still has the right to present the evidence to the jury.

18        Perhaps seeming like Paul Harvey, I would like to tell

19   the Court the "rest of the story" in the Thompson case so

20   relied upon by the government.

21        As we know from the Court of Appeals' decision, it

22   reversed the conviction and stated that the defendant was

23   entitled to present this defense of immunity to the jury.

24        On remand he did so, and the docket in Thompson

25   reflects that after the jury considered the identical

1    evidence that the judge had considered, they found

2    Mr. Thompson not guilty of all charges.

3         It just illustrates that it's possible that a jury will

4    view the evidence differently than the judge.

5              THE COURT:   In Thompson the defendant was more

6    precisely presenting an entrapment by estoppel affirmative

7    defense.  I do not believe he was claiming immunity, as I

8    remember the facts, but, rather, entrapment.

9              MR.  CARNEY:  If your Honor looks at the decision,

10   the Court of Appeals uses the term "immunity" and the phrase

11   "entrapment by estoppel" interchangeably.  They might say in

12   one sentence it's the defendant's "immunity defense," and

13   the next sentence they'll talk about "entrapment by

14   estoppel."  But clearly they're talking about the way that a

15   defendant can present immunity.

16        I disagree with the government that there are no

17   recognized elements to an immunity defense.

18        I even disagree, respectfully, with your Honor that

19   it's not an affirmative defense.  I believe it is, which is

20   why it would be presented at a jury trial.

21        Of course, you don't ask the jurors to make a ruling of

22   law.  The court always makes the rulings of law, as it

23   should.  But the jurors have to first make findings of fact

24   and then apply those findings of fact to the law as your

25   Honor would give them.

1          I submit that the elements for an immunity defense are

2     as follows:  An individual of the Department of Justice had

3     the authority to grant immunity to an individual such as

4     Mr. Bulger;

5          No. 2, he or she did so; and,

6          No. 3, the scope of the immunity, as found as a fact by

7     the jury, encompasses the charges against the defendant.

8          Now, looking at these three elements, they're issues

9     that classically would be decided by the jury, except,

10    perhaps, the first one.

11         THE COURT:  I was going to say, the first one

12    strikes me as an issue of law.

13         MR.  CARNEY:  I concur with the first one, which is

14    whether a particular individual who was employed at a

15    certain level, a certain position, in the Department of

16    Justice, whether he or she had the authority to grant

17    immunity to someone.  I do agree that that would be a

18    question of law, because I suspect that the underlying facts

19    would be stipulated to regarding where the individual worked

20    and what his position was.

21         But the other two are classic jury questions.

22         A witness will testify -- let's assume the defendant

23    testifies.  The jury assesses his credibility after he's

24    been rigorously cross-examined.  The jury considers

25    corroborating evidence, and the jury ultimately determines,

PDF created with pdfFactory trial version www.pdffactory.com

as a finding of fact:  Did the government official give the
defendant immunity?

If they find that he or she did not, then they need go
no further, because the immunity defense does not prevail.

If they do find as a fact that the defendant did
receive immunity from this individual, they next have to
consider:  What is the scope of the immunity that was given
by the individual?

In so many of the immunity cases that are before the
Court, either in our brief or the government's brief, the
courts of appeal or the district judges have focused on what
is the scope of the immunity that was granted.  For example:
Was the immunity limited to crimes up to a certain date, or,
Was the immunity limited to certain crimes?

The jury will have to make that factual finding of what
actually did the immunity convey.

Once they've made these factual findings, then they
apply it to the template that your Honor will provide them
in your jury instructions.

I submit that the defendant has an initial burden of
production, that a defendant raising an immunity defense
must produce sufficient evidence to constitute all of the
elements I've just listed.

The Court's role after this is to look at that evidence
in the light most favorable to the defendant.  In other

PDF created with pdfFactory trial version www.pdffactory.com

1   words, if the evidence is completely true that has been

2   presented by the defense, would that meet the elements, and,

3   if it does, then it's an instruction.

4       It's similar to what's done in a self-defense case.  A

5   defendant will testify, "The reason I killed the person was

6   because I thought my life was in danger."

7       If there is an element of a self-defense claim that

8   needs to be shown, such as the defendant availed himself of

9   every possible avenue of retreat and there is zero evidence

10  by the defense of that, then the defendant has not made out

11  the elements, and the court need not instruct the jury on

12  the defense of self-defense.

13      But if the defendant has made out all the elements and,

14  as incredible as they may seem to some people, if it's true,

15  then the matter goes to the jury.

16      And that's what's involved here.

17      I mentioned that all of the cases, or virtually every

18  one of the cases cited by the government, relate to a

19  situation where the issue was addressed with the defendant's

20  consent pretrial.

21      The problem with your Honor's interesting ruminations

22  about how to handle this is it always requires the defendant

23  to sacrifice his Fifth Amendment right not to incriminate

24  himself.  A defendant can wait until the government rests to

25  even make a decision whether he will testify at trial.  But

1    until the government rests its case, he cannot be compelled,

2    forced, by the Court to tell the Court what his defense is,

3    what the particular of the facts are.

4        One looks at comparable cases where the defendant is

5    raising a particular defense.

6        I have never heard of a judge requiring a defendant in

7    a self-defense case to testify before trial, or present an

8    affidavit, or submit to a deposition in order for him to lay

9    out his self-defense testimony so that the judge can make a

10   ruling prior to the beginning of the trial whether the

11   defendant will be permitted to do so?

12           THE COURT:  That is certainly true in the

13   self-defense context, but there are contexts in which the

14   court can require notice of the defendant.  Alibi is one

15   that comes to mind, or lack of criminal responsibility.  The

16   rules clearly contemplate that in those instances the

17   defendant is required not only to give notice but to bear

18   the burden of production and, again, depending on the

19   context, at times the burden of proof, that is, persuasion

20   as well as production, although not to as high a standard as

21   the government is held.

22           MR.  CARNEY:  I think in the alibi context it's in

23   order to give the government notice of where the defendant

24   says he's going to be and who is going to support that, and

25   that's a pleading filed by counsel.

PDF created with pdfFactory trial version www.pdffactory.com

1              And in an insanity defense, the rules are very

2     different because the defendant in those cases has usually

3     submitted to an evaluation by a physician that he is calling

4     in support of the defense, and the government traditionally

5     would have an opportunity to have its own physician examine

6     the defendant.  And the unique parameters of that indicate

7     that the government wouldn't be able to do what it needs to

8     do in securing an evaluation and obtaining a physician if

9     they first learned of it after the defendant opened his

10    case.

11         So I think those two cases are different from what we

12    have here.

13         What we have here is a defense that the defendant had

14    immunity, and for that reason, if the jury finds the facts

15    are supported and they meet the criteria I've suggested

16    under the law, then their verdict is, He is not guilty.

17         Your Honor asked about, Can the defendant be forced to

18    put forward his testimony and the Court will assume it's

19    true?  This is improper and, respectfully, would violate the

20    Fifth Amendment.

21              THE COURT:  I do not think I said "testimony."  I

22    said "well-pleaded facts," which are something different

23    than testimony.

24              MR.  CARNEY:  Well, "well-pleaded facts" are, What

25    would the defendant say, and he would have to waive his

1    Fifth Amendment rights to tell you those type of

2    well-pleaded facts.  I mean, "well-pleaded facts" is just a

3    different way of saying "What's the defendant going to

4    testify to," because that's the basis for the well-pleaded

5    facts.

6        And I respectfully submit the Fifth Amendment prevents

7    the Court from forcing a defendant to provide this

8    information prior to trial.  He can wait until the

9    government rests and then take the stand, and everybody at

10   that point would find out what he's going to say are the

11   facts related to the defense of entrapment.

12       Your Honor, the burden of proof, I submit, and that may

13   not be a -- that may not be an issue for today, but I submit

14   that once the burden of production has been met by the

15   defense, the burden will shift to the prosecutor to prove

16   beyond a reasonable doubt that the defendant did not receive

17   immunity from the government.

18           THE COURT:  That would certainly be the case under

19   state law.  I am not sure that that is always the case under

20   federal law.  I have not thought about it in this context

21   specifically.

22           MR.  CARNEY:  It's not under every similar defense

23   in federal law, I would concede.  But certainly under the

24   Massachusetts view of the law, once the burden of production

25   is satisfied, the burden shifts to the government.

PDF created with pdfFactory trial version www.pdffactory.com

1      Insanity defense is a good example where the burden

2   does not shift to the prosecutor, but the defendant bears

3   the burden of convincing the jury that he is not criminally

4   responsible.

5      I also respectfully disagree with your Honor and the

6   government's reference to qualified immunity.  It's really,

7   I submit, so different than immunity in a criminal case.

8   And it really doesn't lend itself to any guidance for what

9   the Court does here.

10      Qualified immunity means that under a certain set of

11   facts alleged by the plaintiff in a civil case -- he is

12   trying to hold a government official, let's say a police

13   officer, responsible for a tort committed upon the

14   plaintiff.  Qualified immunity simply means that the court

15   looks at whether that particular constitutional violation

16   was so well-recognized that the police should have known

17   about it.

18      We see cases in this Circuit, it seems almost every two

19   or three months, where the court rules that the police were

20   entitled to qualified immunity because it wasn't clear that

21   you can't strip search someone for arresting them for not

22   paying a parking ticket.

23      But even if qualified immunity were applicable, which I

24   submit it's not, the First Circuit has said, for example in

25   Swain v. Spinney, 117 F.3d 1, that normally qualified

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   immunity should be resolved before the trial, but this is
 2   not possible where material facts are significantly an
 3   issue.  When there are these types of factual issues turning
 4   on credibility, that be must be resolved before you decide
 5   if qualified immunity applies.
 6          THE COURT:  Well, that clearly is the Swain case
 7   and other First Circuit cases.  And that is why, perhaps,
 8   you do not want to walk away from the analogy too quickly,
 9   because the First Circuit is clear that a claim of qualified
10   immunity can be raised at any time.
11      Actually, another type of immunity would be sovereign
12   immunity, which the government can raise even at the
13   determination of the case on appeal, which I have seen
14   happen.
15          MR.  CARNEY:  The point I am trying to make, your
16   Honor, is that when the factual issues are very much in
17   dispute regarding the basis for a qualified immunity, it is
18   left up to the jury to decide those findings of fact.
19          THE COURT:  The findings of fact.
20          MR.  CARNEY:  Yes.
21          THE COURT:  But the Court has to make the ultimate
22   decision as to the law --
23          MR.  CARNEY:  That's correct.
24          THE COURT:  -- given the subsidiary facts as found
25   by the jury.
```

1           MR.  CARNEY:  Right.

2       And because that process is different from the criminal

3   case, where the court first, after a presentation by the

4   defense, determines whether, if believed, the defense

5   justifies the instruction, the court then instructs the

6   jury, and the jury after that finds the facts and applies

7   them to the law.

8       In qualified immunity, they may find the facts, but

9   then the Court determines what the law is based on those

10  facts in qualified immunity.

11      It's just too different, I submit, from what we have

12  here.

13      Finally, regarding the defendant's testimony.

14      I submit that one of the hallmarks of our judicial

15  system since the founding of the country is the ability of

16  the defendant to testify in his own defense.  James Bulger

17  will testify that he was given immunity from prosecution by

18  Jeremiah O'Sullivan.

19      I suspect the government will have quite a few

20  questions for Mr. Bulger.  It certainly will be a central,

21  if not central -- if not the central finding of fact to be

22  made by the jury.  Do they conclude that Mr. Bulger did get

23  immunity?  And if they do and are instructed by your Honor,

24  then Mr. Bulger will have had a fair trial.

25      To remove his defense of immunity from being presented

PDF created with pdfFactory trial version www.pdffactory.com

1   to the jury based on any type of factual finding by your

2   Honor would, in effect, deny him his right to a fair trial.

3        Rule 12 makes it crystal clear that if the defendant

4   wants to invoke the jurisdiction of the Court by motion to

5   resolve this issue, he may do so; but, if he does not, the

6   matter is to be decided by the jury, and, respectfully, I

7   don't see any way for the Court to get around that.

8            THE COURT:  Thank you.

9            MR.  CARNEY:  Thank you, your Honor.

10           MR. HAFER:  Your Honor, may I respond just briefly

11  to a few points?

12           THE COURT:  Yes.  And then if Mr. Carney wants to

13  respond to you, I will allow that as well.

14           MR. HAFER:  Rule 12(b)(2), the text of the Rule: "A

15  party may raise by pretrial motion any defense, objection,

16  or request that the court can determine without a trial of

17  the general issue."

18        That's what this is.  Immunity, quite clearly, can be

19  determined without a trial of the general issue.

20        With respect to the purported elements of the immunity

21  defense -- and with all due respect, your Honor -- those are

22  completely made up.  Those come from thin air.  There is no

23  pattern jury instruction in any federal circuit on immunity.

24  Mr. Bulger has not pointed to one.  Mr. Bulger has not

25  pointed to one case ever, in the history of American

1    jurisprudence, a criminal case in which a jury decided the

2    issue of immunity.  There's not one case in his brief, and I

3    think your Honor's questions with respect to Thompson made

4    that point clear.

5        What happened in Thompson, and the notion that we

6    mischaracterized --

7            MR.  CARNEY:  I didn't mean to suggest that, and if

8    he took it that way, I apologize.

9            THE COURT:  Okay.

10           MR.  CARNEY:  I was trying to figure out a way to

11   use a funny Paul Harvey reference.  I meant to cast no

12   aspersions.

13           MR. HAFER:  In Thompson the defendant moved to

14   dismiss the case.

15       And the facts are important here, your Honor.  This is

16   a case in which an undercover drug informant was going into

17   dangerous terrain and thought he was authorized, in the

18   course of making drug buys in rough areas, authorized to

19   carry a firearm, even though he was a felon.  And he was

20   then charged with being a felon in possession.

21       He moved to dismiss the case and said he had immunity

22   based on an informal oral agreement with the prosecutor, and

23   that was denied.

24       He then shifted, as your Honor quite clearly noted, to

25   the defense of entrapment by estoppel.  That what's the

PDF created with pdfFactory trial version www.pdffactory.com

1    district court prevented him from raising at trial,

2    concluding that felon in possession was a strict liability

3    crime, and, therefore, there is no entrapment by estoppel

4    defense.  And that's what the Eleventh Circuit said was

5    incorrect.  And, on remand, he did proceed with the

6    affirmative defense of entrapment by estoppel.

7         And that really is a key point here, and it seems that

8    there is a shift, a little bit of a shirt, from this pure

9    claim of immunity to the brach of the immunity tree that is

10   entrapment by estoppel.

11        They're very different.  Entrapment by estoppel is an

12   affirmative defense.

13        If Mr. Bulger's defense is that Mr. O'Sullivan told him

14   murder was legal, and he relied on that, and he, himself,

15   believed that murder was legal -- and not just murder, drug

16   trafficking, extortion, crimes of violence -- he is, of

17   course, entitled to put on that defense if he provides

18   notice.

19        And, finally, your Honor, not to belabor the point

20   about the absence of any case where a jury has decided this

21   issue, the absence any pattern instruction, the notion

22   there's three elements to immunity, you find one, the jury

23   gets the other two, I think, is as indicative as anything

24   else as to the lack of legal support for this framework.

25        In McLaughlin, a First Circuit case in 1992, the

1    defendant's position was he had an informal oral immunity

2    agreement with prosecutors.  The First Circuit, in finding

3    that he did not, or upholding the district court's

4    determination that he did not, said quite clearly, A

5    defendant's rights in the context of immunity are determined

6    by the terms and conditions of the bargain as found by the

7    court.

8        And it's our view, therefore, your Honor, that this is

9    an issue for you to decide.

10       And Mr. Kelly reminds me of one final point with

11   respect to a pretrial proceeding.

12       To the extent Mr. Bulger was going to testify at an

13   immunity hearing, of course he is under no obligation to do

14   so, but I believe that the U.S. Supreme Court case is

15   Simmons, which is, that any testimony he provides in a

16   pretrial proceeding, of course, couldn't be used against him

17   at trial.

18       It's the --

19           THE COURT:  I am familiar with the case.

20       One question, just an aside.

21       When you begin to speculate as to why there is no case

22   that says something, there could well be a case, but we

23   would not know about it because the jury would have

24   acquitted the defendant and there would have been no appeal

25   by the government, so nothing would exist in the record.

1    I am not suggesting there are such cases, but it is a

2  hard direction to go, because sometimes we just would not

3  know because of the way case law develops.

4    But the more interesting question is the point that you

5  raise.  When you say that if the defendant's position really

6  is the affirmative defense of entrapment by estoppel, that

7  branch of the immunity tree, as Mr. Carney phrased it, of

8  notice, what type of notice do you think is required, if

9  that is the defense?

10    MR. HAFER:  The notice as set forth in Rule 12.3,

11  your Honor, which is -- 12.3 is captioned "Notice of a

12  Public-Authority Defense," which essentially entrapment by

13  estoppel is.

14    I think, without prejudicing my right to refine my

15  thinking on this, is that the distinction between entrapment

16  by estoppel and public authority, in public authority the

17  actor must have actual authority; and entrapment by

18  estoppel, which is more of an equitable defense, the

19  defendant must -- he doesn't have to show actual authority.

20  He just has to show reliance on the representation.

21    And rule itself, I think, captures that distinction

22  when it says, "If a defendant intends to assert a defense of

23  actual or believed exercise of public authority" -- and it

24  sets forth what the contents of the notice must be, "the law

25  enforcement agency or a federal intelligence agency

1    involved;

2         "the agency member on whose behalf the defendant claims

3    to have acted; and,

4         "the time during which the defendant claims to have

5    acted with public authority."

6         That, of course, is an important one in this case,

7    because we don't know.  We arguably know A and B.  The time

8    period we don't know --

9              THE COURT:  I assume the issue in that context is

10   whether reliance is reasonable, but that, of course, would

11   be a quintessential jury issue.

12             MR. HAFER:  Correct.

13             THE COURT:  Mr. Carney, any last comments on this

14   subject?

15             MR.  CARNEY:  Yes, your Honor.

16        Once again the government is citing from a case where

17   the issue was that a defendant had brought a motion to

18   dismiss before the judge, asserting that he had received

19   immunity from the prosecutor.

20        The judge conducted a hearing, heard evidence, made

21   findings of fact, and then concluded that, although the

22   defendant had received assurances regarding one crime, he

23   had not received assurances regarding a different crime,

24   and, therefore, he did not have immunity for that different

25   crime.  And the court concludes, in the context of a motion

PDF created with pdfFactory trial version www.pdffactory.com

```
 1          to dismiss, that the judge, the court, makes that decision.
 2               The last point I would like to make is where I got the
 3          elements for the defense.  I admit that I didn't copy it
 4          from anyone else, but here's how I came up with it.
 5               I looked at the decisions, particularly in this
 6          Circuit, where the Court examined whether immunity was
 7          well-founded by the defendant.  And when one reads those
 8          cases, the Court indicates flaws in the defendant's
 9          presentation.
10               In Flemmi the Court said the flaw was an FBI agent
11          cannot give a defendant immunity.  There was no question
12          that a person from the Department of Justice had the
13          authority to give immunity.  The only question was whether
14          an FBI agent could, and the Court said, No, it can't be an
15          FBI agent.
16               So I drew the first element:  It must be someone with
17          authority in the Department of Justice who gives the
18          immunity.
19               In other cases the Court looked and said the issue was
20          raised by a motion to dismiss.  The judge made a factual
21          finding in the motion that the prosecutor did not offer that
22          immunity, and that's supported by the finding of facts made
23          by the judge.  And in those cases the defendant did not
24          thereafter, apparently, raise the question of immunity for
25          the jury.
```

1          So that's where I got Element No. 2.

2          Did the prosecutor actually give the defendant

3     immunity?

4          Then I looked at other cases where the Court held that

5     immunity did not lie.  They would point out in those cases

6     that the defendant clearly got immunity for any crime

7     committed up to 1987.  And the crime for which he was

8     prosecuted occurred in 1991, so the immunity did not apply.

9          Other cases would say he was given immunity only

10    regarding drug dealing, not regarding killing someone; so,

11    therefore, immunity did not apply.

12         And so the way the Court analyzed those cases was to

13    determine factually what was the scope of the immunity

14    granted.

15         I found no other fatal flaws to the immunity defense,

16    so I concluded that those would be the three appropriate

17    elements that the defendant would have to produce evidence

18    on in order to meet his burden of production.

19         That's where I got it.

20         Thank you, your Honor.

21          THE COURT:  You have both given me a lot to think

22    about.

23         Do you feel that you would like an opportunity to

24    supplement the pleadings based on what I said at the

25    beginning and what each of you have said?

```
1              MR. HAFER:  Sure, your Honor.  If you're offering,
2    we'll take the opportunity.
3              THE COURT:  Well, I think as a matter of right you
4    have the right to supplement if you choose.
5              MR.  CARNEY:  I would be prepared within a week to
6    supplement.
7              MR. HAFER:  That's reasonable.
8              THE COURT:  Why don't we say 14 days.
9              MR.  CARNEY:  I'm going to try to really focus on
10   the questions that you asked.
11             THE COURT:  Good.  That would be very helpful.
12   That was my thought process as I was reading the briefs.
13             MR.  CARNEY:  And I wouldn't repeat or belabor
14   matters that are in my previous submissions.
15             THE COURT:  I would not expect that.
16        I think with respect to the sealed documents, we do not
17   need argument.  I, rather, have something for you to think
18   about.
19        I tried to go back over the evolution to the extent
20   there has been a dispute over the issue.  I do not think the
21   dispute is over, in a broad sense, the proprietary of
22   sealing documents.  I think Kravetz, to some degree, but,
23   more importantly, Seattle Times v. Rhinehart by analogy make
24   it clear that in the course of a civil or criminal
25   proceeding, that there are good public policy reasons that
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   support sealing.

 2       The issue here is not, again, one of production.  As I

 3   understand it, almost everything has been produced.  The

 4   last set of unproduced documents are those that are on

 5   various judges' dockets that have been exhibits usually at a

 6   trial or an evidentiary proceeding.

 7       I know all of my mine have been addressed.

 8       I believe Judge Tauro has addressed all of his, and

 9   Judge Wolf, as I understand it, has a procedure in place to

10   deal with those that are on his docket.

11       The only remaining issue, as I understand it, is the

12   question that Mr. Carney raises of some individuals who

13   apparently are not willing to sign the affidavit that

14   Judge Wolf has required as part of his protective order in

15   his case.

16           MR.  CARNEY:  May I politely interrupt?

17           THE COURT:  Yes.

18           MR.  CARNEY:  We had a discussion about this with

19   Judge Wolf, this subject of whether the new witnesses, we'll

20   say in the context of the Bulger case, would have to sign

21   the affidavit.  I indicated to him what our problem was with

22   that, and I don't believe his ruling that he issued includes

23   a requirement that that affidavit be signed.

24           THE COURT:  I have not seen that ruling, so that --

25           MR.  CARNEY:  Mr. Kelly was with me, and --
```

PDF created with pdfFactory trial version www.pdffactory.com

1              THE COURT:  I'll simply ask Judge Wolf for a copy

2     of the ruling, but that might ease then some of the

3     difficulty.  So it may not be an issue at all.

4              MR.  CARNEY:  I just wanted to alert you that that

5     appears to have changed.

6              THE COURT:  All right then.  Fourteen days for the

7     supplemental pleadings.

8          I will take the matter under advisement.

9              THE CLERK:  All rise.

10         (Proceedings adjourned.)

# C E R T I F I C A T E

 

    I, James P. Gibbons, Official Court Reporter for the
United States District Court for the District of
Massachusetts, do hereby certify that the foregoing pages
are a true and accurate transcription of my shorthand notes
taken in the aforementioned matter to the best of my skill
and ability.


/s/James P. Gibbons                 February 13, 2013

_____
James P. Gibbons



                JAMES P. GIBBONS, CSR, RPR, RMR
                  Official Court Reporter
             1 Courthouse Way, Suite 7205
            Boston, Massachusetts 02210
               jmsgibbons@yahoo.com

PDF created with pdfFactory trial version www.pdffactory.com