UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 99-10371-RGS

UNITED STATES OF AMERICA

v.

JAMES J. BULGER

MEMORANDUM AND ORDER ON GOVERNMENT'S MOTION
PURSUANT TO FED. R. CRIM. P. 12(b)(2) AND 12(d)
TO RESOLVE DEFENDANT'S IMMUNITY CLAIM PRIOR TO TRIAL

March 4, 2013

STEARNS, D.J.

On December 6, 2012, the court ordered defendant James Bulger to respond to the government's contention, set out initially in its November 16, 2012 response to defendant's November 2, 2012 motion for discovery, that his claim of immunity from prosecution is a matter of law to be decided by the court. On January 14, 2013, defendant submitted his response, in which he insists that it is his right to try the issue of immunity to a jury. On February 6, 2013, the government filed a formal motion pursuant to Fed. R. Crim. P. 12(b)(2) and 12(d), asking the court to resolve the issue prior to trial. A hearing on the motion was held on February 13, 2013. For the reasons set out below, the government's motion will be granted. Further, defendant's

claim of prospective immunity will be denied, while additional briefing on the issue of historical immunity will be ordered.

DISCUSSION

Rule 12 of the Federal Rules of Criminal Procedure, which governs pretrial motions, establishes in subdivision (b) two classes of such motions: those that "may" be made before trial, and those that "must" be made. *See* Fed. R. Crim. P. 12(b)(2)-(3).[1] Because immunity falls within the class of objections and defenses "which the defendant at his option may raise by motion before trial," Notes of Advisory Committee to the 1944 Adoption (Advisory Notes), defendant asserts that the Rule "empowers the defense, and not the government or the court, with the choice of pursuing the issue of immunity as a defense at trial." Def.'s Mem. at 2. Defendant

---

[1] Rule 12(b) provides, in pertinent part:

> (2) Motions That May Be Made Before Trial. A party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial of the general issue.
> (3) Motions That Must Be Made Before Trial. The following must be raised before trial:
> (A) a motion alleging a defect in instituting the prosecution;
> (B) a motion alleging a defect in the indictment or information-but at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense;
> (C) a motion to suppress evidence;
> (D) a Rule 14 motion to sever charges or defendants; and
> (E) a Rule 16 motion for discovery.

maintains that when he makes that choice, the court's function is limited to simply determining whether the evidence presented at trial plausibly supports a theory of immunity, and, if it does, to instructing the jury as to the law it must apply in making its findings of fact.[2]

Defendant's argument is premised on a faulty reading of Rule 12. As the Advisory Committee comment from which defendant selectively quotes makes plain, Rule 12 creates a dichotomy between objections and defenses that must, on pain of forfeiture, be raised prior to trial, and those that may, but need not necessarily, be raised. *See* 1944 Advisory Notes ("These two paragraphs classify into two groups all objections and defenses to be interposed by [pretrial] motion . . . . In one group are defenses and objections which must be raised by motion, failure to do so constituting a waiver. In the other group are defenses and objections which at the defendant's option may be raised by motion, failure to do so, however, not constituting a waiver."). Viewed in this context, the permissive language of Rule 12(b)(2) does no more than provide that certain objections and defenses are not forfeited if they are not raised in a pretrial motion. *See United States v. Jarvis*, 7 F.3d 404, 414 (4th Cir.

---

[2] Defendant also argues that "[a]ny further involvement [by the court] would violate the doctrine of separation of powers." Def.'s Mem. at 5. The court interprets this argument as a challenge to the authority of the court to review the legality of a grant of immunity extended by the Executive Branch, even one of the scope alleged here. This argument will be addressed.

1993) ("Failure to raise a contemporaneous objection of immunity *before* trial does not constitute a forfeiture of the objection . . . ."). What the Rule does not confer is a right to a jury determination where one does not otherwise exist.

Properly viewed, Rule 12 is intended to encourage the resolution of disputes of law prior to trial. *See generally* 1974 and 1975 Advisory Notes. To this end, the rule permits the filing of pretrial motions relative to "any defense, objection, or request that the court can determine without a trial of the general issue," Fed. R. Crim. P. 12(b), and requires the court to decide any such motion if deferring a ruling on a motion would "adversely affect a party's right to appeal," or where no good cause for deferral exists. Fed. R. Crim. P. 12(d). A claim of immunity is not the "general issue" to which the Rule refers. "The general issue in a criminal trial is, of course, whether the defendant is guilty of the offense charged." *United States v. Doe*, 63 F.3d 121, 125 (2d Cir. 1995), citing *United States v. Yater*, 756 F.2d 1058, 1062 (5th Cir. 1985); *accord United States v. Barletta*, 644 F.2d 50, 58 (1st Cir. 1981).

Rule 12 "clearly envision[s] that a district court may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motion so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Jones*, 542 F.2d 661, 664-665 (6th Cir. 1976), citing 8 James Wm. Moore, Moore's Federal Practice § 12.04 at 12-24, 25 (2d ed. 1976); *see*

*also* Fed. R. Crim. P. 12(d) (which expressly contemplates judicial fact finding in deciding pretrial motions). Indeed, the Rule in its original incarnation defined issues susceptible to pretrial determination as those in which a jury trial was not required "under the Constitution or an Act of Congress." Fed. R. Crim. P. 12(4) (1944), reprinted in 1A Charles Alan Wright et al., Federal Practice & Procedure § 190, at n.2 (4th ed. 2011). Although the reference to issues that must be tried by the jury was deleted as surplusage, the deletion was not intended to effect any change in existing law or practice. *See* Wright et al. § 190, n.21. Rather, the Rule embodies the longstanding presumption in favor of pretrial resolution of matters to which no jury right attaches.

That no jury right attaches to defendant's claim of immunity is firmly established by binding precedent. The First Circuit has expressly held that a defendant's rights under an alleged immunity agreement "are determined by the terms and conditions of the bargain *as found by the court*." *United States v. McLaughlin*, 957 F.2d 12, 16 (1st Cir. 1992) (emphasis added); *see also United States v. Flemmi*, 225 F.3d 78, 82-91 (1st Cir. 2000) (assuming no procedural error in district court's pretrial evaluation of an alleged oral immunity agreement); *cf. United States v. Rodman*, 519 F.2d 1058, 1059-1060 (1st Cir. 1975) (affirming the pretrial dismissal

of an indictment based on a breach of a promise to recommend no prosecution).[3] Other Courts of Appeals are in accord that a claim of immunity is to be decided by the judge, and not a jury. *See, e.g.*, *United States v. Plummer*, 941 F.2d 799, 802-803 (9th Cir. 1991) ("The district court's interpretation of the agreement between [defendant] and the government, and whether that agreement was violated, determined whether the motion to dismiss the indictment would be granted or denied."); *United States v. Butler*, 297 F.3d 505, 512-513 (6th Cir. 2002) (same); *United States v. Cahill*, 920 F.2d 421, 424-426 (7th Cir. 1990) (same).

Defendant has not (and cannot) point to any federal decision holding otherwise.[4] Instead, he argues that the defendants in the above-cited cases

---

[3] These federal court rulings render inapposite defendant's reliance on the Massachusetts rule that the "'existence of a contract ordinarily is a question of fact, for the jury.'" Def.'s Mem. at 4-5, quoting *American Private Line Servs. v. E. Microwave, Inc.*, 980 F.2d 33, 35 (1st Cir. 1992) (construing Massachusetts law). While in some state civil law contexts the jury makes the determination of whether a contract exists, *McLaughlin* and the related cases make clear that the existence, scope, and validity of an alleged agreement of immunity from federal prosecution do not depend on state law.

[4] Contrary to defendant's characterization, *United States v. Thompson*, 25 F.3d 1558 (11th Cir. 1994), does not recognize a right to "bring an immunity defense at trial." Def.'s Mem. at 3. In *Thompson*, the Eleventh Circuit found that the district court had erred in precluding the defendant from presenting at trial a defense of entrapment by estoppel. *See id.* at 1564-1565. Entrapment by estoppel, unlike a claim of immunity, is an affirmative defense that by custom and practice is tried to the jury. *See, e.g.*, *id.*; *Doe*, 63 F.3d at 125. While the Court of Appeals in *Thompson* faulted the district court for precluding jury consideration of defendant's entrapment defense, it specifically upheld the lower court's pretrial denial of a motion to dismiss based on a claim of immunity. *See Thompson*, 25 F.3d at 1562-1563.

"specifically sought the court's evaluation of the 'terms and conditions' of their immunity claims by opting under Rule 12(b)(2) to present these issues in the context of a motion to dismiss or suppress before trial." Def.'s Mem. at 2-3. Here, Bulger trumpets the fact that he has chosen not to do so, heralding that "the presentation of evidence concerning immunity will be initially presented by defendant in his testimony at trial." *In re Bulger*, No. 12-2488: Hearing before the First Circuit Court of Appeals (Jan. 8, 2013).

Although often colloquially referred to as a "defense," a claim of immunity is not an affirmative defense negating criminal intent, but instead a defense of avoidance that seeks to bar a prosecution *en toto*. The Ninth Circuit Court of Appeals explains the distinction nicely in discussing the analogous claim of outrageous government conduct. *See United States v. Sotelo-Murillo*, 887 F.2d 176, 182 (9th Cir. 1989) ("Although outrageous government conduct is sometimes referred to as a 'defense,' it is not an affirmative defense such as entrapment. This 'defense' is really an argument that the government's conduct was so outrageous that due process principles bar the government from using the courts to obtain a conviction." (internal citations omitted)).[5] Avoidance defenses are ordinarily – and voluntarily – raised

---

[5] As the government accurately notes,

> [T]he "objections and defenses" referred to in [Rule] 12(b)(2) are all legal bars to prosecution: (1) former jeopardy, *see, e.g.*, *Witte v. United*

7

during pretrial proceedings to escape the burdens and risks of trial. *Cf. Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting in the context of § 1983 qualified immunity that "[t]he entitlement is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial"). This court has been unable to identify a single instance in which any other defendant has sought to "reserve" the details of a ripe immunity claim until trial.

That something has not been done before is, of course, not conclusive of the issue of whether it can be done at all. Here, however, defendant's distinction is one without a difference. That a claim of immunity may be raised at trial does not mean that deferring the decision to do so operates to convert the claim from one of law into a matter of jury-decisional fact. *See United States v. Dudden*, 65 F.3d 1461, 1469 (9th Cir. 1995) (concluding that the district court did not err in refusing to submit a determination of the terms of an immunity agreement and the existence of a

---

> *States*, 515 U.S. 389, 396 (1995); former conviction and former acquittal, *see, e.g.*, *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); and statute of limitations, *see, e.g.*, *Stogner v. California*, 539 U.S. 607, 616 (2003) . . . . "Lack of jurisdiction" and "failure of indictment or information to state an offense" similarly preclude prosecution entirely when raised by substantiated motion. Immunity is no different. It is a legal bar to prosecution, not a defense at trial.

Gov't's Mot. at 14 n.8.

government breach to the jury because the issue was one of law); *United States v. Gerant*, 995 F.2d 505, 509-510 (4th Cir. 1993) (same, defendant's breach of an immunity agreement); *cf. United States v. Gonzalez-Sanchez*, 825 F.2d 575, 578 (1st Cir. 1987) (same, claim of breach of a plea agreement); *United States v. Luisi*, 482 F.3d 43, 58 (1st Cir. 2007) (same, claim of outrageous government misconduct). In other words, a defendant's tactical choices do not dictate what constitutes a matter of law for the court to decide.

This conclusion may fatally undermine defendant's presumed intent in delaying until trial the raising of his claim of immunity. Nonetheless, whether the government's motion is one which the court must rule on pretrial is a separate issue. The government argues that the ability to precipitate a pretrial ruling pursuant to Rule 12(b)(2) does not reside uniquely with a criminal defendant. Under the circumstances of this case, the court agrees.

The court's decision on this issue is informed by the longstanding federal judicial treatment of motions in limine. The federal courts have long sanctioned – indeed encouraged – the government and criminal defendants to seek pretrial rulings on the admissibility of evidence in the interests of an orderly presentation of evidence at a trial, even though no provision of the federal criminal rules expressly authorizes

the practice.[6] *See, e.g.*, *United States v. Valencia*, 826 F.2d 169, 171-172 (2d Cir. 1987); *United States v. Layton*, 720 F.2d 548, 553 (9th Cir. 1983), *overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499, 506 (9th Cir. 2008). "[T]he practice of allowing such motions has developed over time 'pursuant to the district court's inherent authority to manage the course of trials.'" *Graves v. Dist. of Columbia*, 850 F. Supp. 2d 6, 10 (D.D.C. 2011), quoting *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). "Consistent with the historical origins of the practice, motions in limine are 'designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions.'" *Id.*, quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990).

The function of the government's motion here is fairly analogized to a motion in limine, and it seeks to accomplish similar ends. Pretrial denial of defendant's

---

[6] The government argues that the reference in Rule 12 to a "party" to a criminal proceeding, entitles it to seek relief under the Rule. Gov't's Mot. at 10, citing Fed. R. Crim. P. 12(b)(2) ("*A party* may raise by pretrial motion any defense, objection, *or request* that the court can determine without a trial of the general issue." (emphasis added)). This argument takes the government only so far, as courts have differed in their views of what under the Rule qualifies as a "defense, objection, or request." The Second Circuit, for example, has observed with regard to a government motion for a pretrial ruling in favor of the admissibility of evidence that such a motion "is not a 'defense' or an 'objection,' and, though it is generically a 'request' for a ruling, that term, as used in Rule 12 when applied to the [g]overnment, would seem to mean requests for reciprocal discovery under Rule 16(b)." *United States v. Valencia*, 826 F.2d 169, 171 (2d Cir. 1987). *But see United States v. Cobb*, 588 F.2d 607, 610 n.2 (8th Cir. 1978) (finding defendant's pretrial motion to exclude evidence authorized by Rule 12(b)).

immunity claim would narrow the focus of the inquiry at trial, thereby limiting the scope of evidence to be presented and the potential for jury confusion and distraction.[7] Conversely, a finding that defendant's prosecution is barred by a valid grant of immunity would prevent an unnecessary trial and the expenditure of considerable public resources.  Under these circumstances, it would present a disservice to judicial economy and the orderly administration of justice to sit idly by awaiting the raising of an objection that is now ripe and which defendant has unequivocally indicated his intent to invoke.  *See United States v. Brimberry*, 744 F.2d 586-587 (7th Cir. 1984) ("[T]he trial judge should be alerted to the possible superfluity of the impending trial so that if the claim proves to have merit the time and effort of a trial might be saved." (internal alterations and citation omitted)); *United States v. Pheaster*, 544 F.2d 353, 361 (9th Cir. 1976) (cautioning that "the very limited resources of our judicial system require that [known] challenges be made at the earliest moment in order to avoid needless waste").

This is particularly true in light of the court's further conclusion that defendant's objection to prosecution is "entirely segregable from the evidence to be presented at trial." *Barletta*, 644 F.2d at 58.  As previously noted, Rule 12 provides

---

[7] Bulger, of course, has the right to testify at trial on his own behalf, regardless of the court's ruling on his immunity claim.  The right to testify in one's own defense is a fundamental guarantee of the Sixth Amendment limited only by the rules relating to materiality and perjury. *See generally Harris v. New York*, 401 U.S. 222, 225 (1971).

in part that "[t]he court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d).[8] While a motion requiring the presentation of a nontrivial quantity of evidence relevant to the question of guilt or innocence constitutes good cause to defer a ruling, the objection raised here is neither "substantially founded upon [nor] intertwined with evidence concerning the alleged offense[s]." *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994) (internal quotation marks and citation omitted); *accord Barletta*, 644 F.2d at 58. Resolution of defendant's immunity claim requires an inquiry only into the existence, scope, and validity of the alleged agreement he made with New England Organized Crime Strike Force Chief Jeremiah O'Sullivan. It does not require the presentation of evidence regarding the commission of any of the nineteen murders or other crimes with which defendant is charged. The government's motion is thus not only appropriately raised, but calls for pretrial resolution.[9]

---

[8] The court disagrees with the government's assertion that a pretrial ruling is also required by Rule 12(d)'s mandate that "[t]he court must not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal." Gov't's Mot. at 12. Were the defendant to succeed in obtaining the termination of the proceedings against him on the basis of immunity, the result would not implicate factual guilt or innocence, and thus a government appeal would not offend double jeopardy principles. *See United States v. Scott*, 437 U.S. 82, 98-99 (1978).

[9] Defendant's argument that compelling the pretrial resolution of his immunity claim would somehow run afoul of his Fifth Amendment privilege against self-incrimination is without merit. The testimony of a defendant in a pretrial evidentiary hearing may not be used against him for any substantive purpose at trial. *Cf. Simmons v. United States*, 390 U.S. 377, 394 (1968). *See also United States v.*

In undertaking this task, the court begins by noting the paucity of information provided by defendant regarding his purported claim of immunity. In his written and oral representations to this court and the Court of Appeals, defendant's counsel has alleged only that O'Sullivan orally promised Bulger immunity from prosecution at some time prior to December of 1984, and that the grant of immunity included protection from prosecution for any and all crimes, past and future, up to and including murder. Ordinarily, the details of that claim and their veracity would be ferreted out in the course of an evidentiary hearing convened for that purpose. *See generally United States v. Salemme*, 1997 WL 810057, at *2 (D. Mass. Dec. 29, 1997). Here, however, an evidentiary hearing is premature in its scope because the agreement, even if made, is at least partially, if not entirely, unenforceable as a matter of law.

Informal promises of immunity made incident to cooperation agreements are governed by traditional principles of contract law. *See, e.g.*, *United States v. McHan*, 101 F.3d 1027, 1034 (4th Cir. 1996); *McLaughlin*, 957 F.2d at 16; *United States v. Carrillo*, 709 F.2d 35, 36 (9th Cir. 1983). Pursuant to these principles, "a defendant who seeks specifically to enforce a promise . . . contained in . . . a freestanding cooperation agreement[] must show both that the promisor had actual authority to

---

*Salvucci*, 448 U.S. 83, 93-94 (1980).

make the particular promise and that he (the defendant) detrimentally relied on it." *Flemmi*, 225 F.3d at 84, citing *San Pedro v. United States*, 79 F.3d 1065, 1068 (11th Cir. 1996); *Thomas v. I.N.S.*, 35 F.3d 1332, 1337 (9th Cir. 1994); *United States v. Streebing*, 987 F.2d 368, 372 (6th Cir. 1993).[10] "If either part of this showing fails, the promise is unenforceable." *Id.* Insofar as defendant avers he was granted prospective immunity to commit murder, his claim fails on the first ground.

It is well settled that a United States Attorney has the authority to promise immunity in exchange for cooperation. *See Flemmi*, 225 F.3d at 86 (reasoning that implicit in the United States Attorney's authority to prosecute and to extend formal use immunity is the authority to offer assurances of immunity); *id.* at 87 ("[T]he power to prosecute plainly includes the power not to prosecute (and, thus, the power to grant use immunity) . . . ."). Equally true is the proposition that "a United States Attorney's decision to prosecute (or, conversely, to forbear) is largely unreviewable by the courts." *Flemmi*, 225 F.3d at 86; *see also Wayte v. United States*, 470 U.S. 598, 607 (1985) ("Such factors as the strength of the case, the prosecution's general

---

[10] The First Circuit has recognized a "narrow exception" to this rule where failure to enforce an unauthorized promise would render a prosecution "fundamentally unfair." *Flemmi*, 225 F.3d at 88 n.4; *accord Johnson v. Lumpkin*, 769 F.2d 630, 634 n.8 (9th Cir. 1985) ("[W]here constitutional or statutory safeguards are surrendered in exchange for an unauthorized promise of immunity, the promise – however unauthorized – may still provide a defense to prosecution."). "This case," like Flemmi's, "lies well outside the compass of that seldom-seen exception." *Flemmi*, 225 F.3d at 88 n.4.

deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake."). But while defendant would have the court begin and end its analysis with this truism, the government argues, correctly, that the authority to grant immunity from prosecution – and therefore the court's deference to the decision to issue such grants[11] – does not extend to crimes committed *in futuro*.

While the issue has never been presented as starkly as it is in this case, various courts have intimated as much.[12] In *United States v. Black*, 776 F.2d 1321 (6th Cir. 1985), the Sixth Circuit construed an ambiguously drafted immunity agreement to exclude protection for future crimes, reasoning that "[i]t is too firmly established that grants of immunity do not license future criminal conduct to permit any other construction of the language in the agreement." *Id.* at 1328. Citing *Black*, the Fifth

---

[11] Defendant protests that "the court has no role in determining if this grant of immunity was appropriate or not, as this would be judicial encroachment on the power of the executive branch." Def.'s Mem. at 7. However, judicial deference to prosecutorial prerogative presupposes the existence of proper authority to issue the grant of immunity. As many of the very cases on which Bulger relies make clear, courts can and do routinely inquire into the scope of the promising agent's authority.

[12] As the Seventh Circuit Court of Appeals observed in facing a similar paucity of controlling precedent: "There has never been a case accusing welfare officials of selling foster children into slavery; it does not follow that if such a case arose, the officials would be immune . . . because no previous case had found liability." *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990).

Circuit in *United States v. Ramos*, 537 F.3d 439 (5th Cir. 2008), similarly rejected a proposed construction of a written immunity agreement that would immunize testimony relating to crimes that did not exist when the agreement was made. *Id.* at 452. And in *United States v. Irwin*, 612 F.2d 1182 (9th Cir. 1980), the Ninth Circuit held that "substantial compliance" with a plea bargain is not "a defense for committing additional criminal acts subsequent to the agreement." *Id.* at 1192. While these cases did not entail precisely the question presented here, their import is clear: an immunity agreement cannot as a matter of public policy license future criminal conduct.

      Defendant makes much of the fact that the *Irwin* and *Black* decisions did not suggest "that a person would be guilty of an offense where he participates in criminal activity solely to protect or continue to maintain his undercover status." *Irwin*, 612 F.2d at 1192 n.22; *accord Black*, 776 F.2d at 1328 ("This is not to say that immunity could not be granted a cooperating individual for future acts that in other circumstances might be criminal." (citing *Irwin*, 612 F.2d at 1192 n.22)). But defendant has not (yet) made such a claim (which would in any event amount to a defense of public authority requiring the giving of advance notice to the government). *See Doe*, 63 F.3d at 125; *People v. C.S.A.*, 104 Cal, Rptr. 3d 832, 838 (Cal. Ct. App. 2010).

More to the point, it has been observed in the context of the public authority defense that "[t]he proposition that a defendant may commit a criminal act without prior notice to any Government official on the basis of a supposed *carte blanche* authorization or a license to do everything but kill is without precedent and stretches any concept of good faith reliance beyond recognition." *United States v. Berg*, 643 F. Supp. 1472, 1480 (E.D.N.Y. 1986). A license to kill is even further beyond the pale and one unknown even in the earliest formulations of the common law.[13]

Based on the foregoing, the court concludes that any grant of prospective immunity to commit murder was without authorization and is hence unenforceable under any circumstance. Without knowledge of the date of the alleged agreement, however, the court is unable to say whether this determination nullifies defendant's claim of immunity in its entirety (again, assuming proof of its existence). The government argues that any grant of immunity for murders preceding the alleged

---

[13] One need only recall the current public debate over the legality of targeted overseas killings of persons deemed to have ties with terrorism, some of whom may be American citizens. Given that even the authority of the President and Commander and Chief of the Armed Forces to authorize such killings has been called into question by legislators and respected legal commentators, it strains credulity to suggest that an Assistant United States Attorney would have had the authority decades ago to authorize the murder of American citizens, on American soil, for reasons wholly unrelated to national security concerns. The roots of the dispute are ancient: "To bereave a man of life . . . without accusation or trial, would be so gross and notorious an act of despotism, as must at once convey the alarm of tyranny throughout the whole kingdom." 1 William Blackstone, Commentaries on the Law of England 131-132.

agreement was similarly void – not because a grant of retrospective immunity is per se unauthorized, but because any such grant in this case would have been made contrary to the Department of Justice (DOJ) policies and procedures that were in place at any conceivable time when the alleged promise to Bulger could have been made.[14]  In support of this argument, the government submits the affidavit of Associate Deputy Attorney General David Margolis, who served in the Organized Crime and Racketeering Section (OCRS) of the DOJ from 1969 to 1990, describing the policies and procedures of the DOJ regarding cooperating individuals.  The Margolis Affidavit states that if O'Sullivan did in fact grant defendant historical immunity for murder, he did so without obtaining proper approval and in contravention of OCRS practices regarding immunity from prosecution for serious crimes of violence.

Raised as it was for the first time in the government's supplemental briefing, this argument is one to which defendant has yet to have the opportunity to respond.

---

[14] While an agreement not to prosecute for past crimes of murder might seem counterintuitive, it is not without precedent.  One particularly well known case is that of Sammy "the Bull" Gravano, who received immunity for nineteen murders to which he confessed in exchange for his testimony against members of the Gambino crime syndicate.  *See generally United States v. Avellino*, 136 F.3d 249 (2d Cir. 1998).  "Since the primary function of a Federal prosecutor is to enforce the criminal law," however, current guidelines caution that non-prosecution agreements should not be "routinely or indiscriminately" entered and require prosecutors to conduct careful balancing of competing considerations.  Department of Justice, 9 Principles of Federal Prosecution § 27.620.

In the court's view, the interests of justice require that the opportunity be afforded, including possibly the opportunity to test Margolis's testimony under cross-examination. The court therefore defers any ruling as a matter of law on the historical element of defendant's immunity claim. The court will grant the parties an additional briefing period and the opportunity to request an evidentiary hearing on Margolis's statements regarding DOJ policies. That briefing should address (or expand upon) the argument that any grant of historical immunity in this case exceeded O'Sullivan's scope of authority, as well as the question of whether a presumed grant of prospective immunity vitiates the whole of the agreement pursuant to *Kiely v. Raytheon Co.*, 105 F.3d 734 (1st Cir. 1997), and similar cases. *See id.* at 736 n.2, citing Restatement (Second) of Contracts § 184 ("If an agreement contains an illegal provision that is not central to the agreement and the illegal provision does not involve serious moral turpitude, the illegal portion of the agreement is discarded, and the balance of the agreement is enforceable.").[15]

---

[15] *See also* Williston, Law of Contracts, § 1761 (Rev. ed. 1938) ("[I]f the performance actually rendered by the plaintiff is something in itself forbidden by law, the fact that the bargain was in such general terms as to cover either the illegal performance or a lawful performance, and that both parties originally had no intention to have the performance unlawful, will surely not justify recovery on the bargain if the illegality is serious or more than an incidental part of the performance.").

ORDER

For the reasons stated above, the government's motion to resolve defendant's immunity claim prior to trial is <u>GRANTED</u>. Defendant's claim of prospective immunity is <u>DENIED</u>.[16] The parties are ordered to submit any supplemental briefing on the issue of historical immunity within fourteen (14) days of the date of this Order. The court will accept replies not exceeding ten (10) pages within seven (7) days thereafter before scheduling any further hearing.

SO ORDERED.

/s/ Richard G. Stearns

———————————————
UNITED STATES DISTRICT JUDGE

---

[16] At the February 13, 2013 hearing, defendant's counsel at times implied that defendant's claim is actually one of entrapment by estoppel (or public authority). The defense of entrapment by estoppel requires inquiry into "whether [defendant] was advised by a government official that the act was legal, whether [defendant] relied on that advice, whether that reliance was reasonable, and whether, given that reliance, prosecution of the defendant would be unfair." *United States v. Smith*, 940 F.2d 710, 715 (1st Cir. 1991). Relatedly, a public authority defense requires that "the conduct of the defendant was undertaken at the behest of a government official with the power to authorize the action . . . and the defendant reasonably relied on the authorization." *United States v. Cao*, 471 F.3d 1, 4 (1st Cir. 2006), citing *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1368 n.18 (11th Cir. 1994). Both entrapment by estoppel and public authority are affirmative defenses to be tried to a jury. The court's ruling is without prejudice to defendant's ability to advance either defense, subject to appropriate notice of the defense to the government, Fed. R. Crim. P. 12.3, and a determination that defendant has a cognizable and colorable basis for asserting it, *see Smith*, 940 F.2d at 713; *Cao*, 471 F.3d at 4-5.