UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
                                    )
v.                                  )   Criminal Action
                                    )   No. 99-10371-DJC
JAMES J. BULGER                     )
                                    )
                                    )
_____ )

**MOTION OF THE BOSTON HERALD, INC. AND HOWIE CARR TO INTERVENE AND TO VACATE SEQUESTRATION ORDER, IN PART**

To protect their First Amendment interests and to allow Mr. Carr to continue with his reporting and newsgathering concerning this trial, the Boston Herald and its columnist Howie Carr respectfully move this court to vacate its Sequestration Order entered on June 7, 2013 (ECF Dkt. No. 981), as applied to Mr. Carr, or to otherwise exempt him from its terms. In addition, to the extent necessary to be heard on their motion, the Boston Herald and Mr. Carr move to intervene in this case. Recognizing the significant First Amendment interests burdened by excluding journalists from the courtroom, this Court has already exempted certain journalists from its Sequestration Order. The Boston Herald and Mr. Carr respectfully submit that the reasons supporting exemption of those journalists similarly require exclusion of Mr. Carr from the Sequestration Order.

As grounds for their Motion, the Boston Herald and Mr. Carr state as follows:

1.      Mr. Carr is a long-time reporter and columnist for the Boston Herald and has reported extensively on organized crime. He is also the author of several books, including: *The Brothers Bulger: How They Terrorized and Corrupted Boston for a Quarter Century* (2006);

1

*Hitman: The Untold Story of Johnny Martorano: Whitey Bulger's Enforcer and the Most Feared Gangster in the Underworld* (2011); and *Rifleman: The Untold Story of Steve Flemmi, Whitey Bulger's Partner* (2013).

2. Mr. Carr has written extensively about this case, this trial, and this defendant. He has intended to continue his reporting on the trial and to attend the trial.

3. The defendant has filed a witness list, as amended, with 82 potential witnesses. (ECF Dkt. No. 961).

4. Mr. Carr is included as witness 7 on the defendant's list.[1]

5. As the Government has stated in the *Government's Objections to the Defendant's Proposed Witness List*:

> The defendant has filed a witness list with 82 names, the vast majority of whom appear to have no relevant testimony to offer. See ECF Dkt. No. 961. For example, the defendant's list includes several prominent media members (Shelley Murphy, Howie Carr, Kevin Cullen, Dick Lehr, etc.) who were not eyewitnesses to any of the crimes charged in the indictment and who can only provide inadmissible hearsay testimony. The government respectfully submits that they should be stricken from the defendant's witness list, or, at a minimum, not be barred from the courtroom because the defendant chose to put them on his witness list.

ECF Dkt. No. 966 (emphasis added).

6. The Boston Globe, Shelley Murphy, and Kevin Cullen moved to exempt Shelley Murphy and Kevin Cullen from any sequestration order the court might enter. (ECF Dkt. No. 965). On June 7, 2013, this Court entered a Sequestration Order and allowed the motion exempting Ms. Murphy and Mr. Cullen from its terms. (ECF Dkt. No. 973).

---

[1] Mr. Carr intends to move to quash any subpoena served on him on the grounds that the defendant will be unable to satisfy the constitutional burdens imposed by those seeking to compel the testimony of reporters. See generally United States v. LaRouche Campaign, 841 F.2d 1176, 1182 (1988). Such issue will, however, be addressed at another time, should Mr. Carr ultimately or, indeed, ever be subpoenaed.

7. As grounds for this exemption, this Court stated (a copy of an excerpt of the transcript from June 7, 2013 is attached for the court's convenience as <u>Exhibit A</u>):

> I have read, obviously, the clear language of Rule 615, but I also think it has to yield to constitutional concerns, which were being raised on behalf of the moving parties. Here they argue that the right does not just attach to the Globe institutionally … but to the reporters themselves, particularly when any testimony arose out of their work as investigative reporters and they seek to attend the trial for much the same purpose.
>
> I note that Judge Tauro came to the same conclusion in <u>United States v. Connolly</u>, 204 F. Supp. 2d 138 (D. Mass. 2002) under what I would describe as similar circumstances . . . .

Ex. A (June 7, 2013 Hr'g Tr.) 5:6-16.

8. In <u>Connolly</u>, the district court exempted two reporters from a sequestration order, stating:

> Moreover, unlike agents and experts, the reporters at issue here are not adversarial witnesses. As well, allowance of this motion has the salutary effort of permitting them to meet their important First Amendment responsibility of keeping the public informed as to the events taking place in open court.

<u>United States v. Connolly</u>, 204 F. Supp. 2d 138, 138 (D. Mass. 2002).

9. The <u>Connolly</u> court expressly adopted the rationale set forth in the newspaper's motion. That motion stated in part:

> Neither of the reporters was a party or a witness to any criminal activity. Their qualifications as witnesses apparently arise from accurately reporting news to the public. Each has a special background and experience to which the public is entitled to enjoy the benefit of in reading about this trial. Enforcing the sequestration order with respect to these reporters therefore threatens the public's understanding of events occurring at trial and unnecessarily interferes with the free flow of information.
>
> The combined effort of the subpoenas (the enforceability of which have not yet been ruled upon by the Court) and the sequestration order would violate the reporters' First Amendment rights if applied to them. There is no question that these reporters have a First Amendment right to attend the trial of this case. <u>Globe Newspaper Co. v. Superior Court</u>, 457 U.S. 596 (1982).

Id. at 139.

10. In exempting Ms. Murphy and Mr. Cullen from the Sequestration Order, this Court also found:

> I also think an exemption from sequestration is particularly appropriate here when I look at the purposes behind 615. The purpose of 615 has long been recognized, "as a means of discouraging and exposing fabrication, inaccuracy, and collusion."
>
> * * *
>
> I think there is little danger or little risk of these dangers here because, in the first instance, I think there is uncertainty about whether the conditions under Rule 613(b) will be met here in regards to extrinsic evidence where [defendant's attorney,] on Mr. Bulger's behalf, has expressed an intention to call the reporters for impeachment purposes under that rule.
>
> But whether either of those witnesses can actually be called is, at best, as I've suggested, uncertain, at least for two reasons: First, we don't know if any witness who is confronted with their prior inconsistent statement, whatever those statements may be, we don't know if they're going to disavow those statements triggering one of the conditions for extrinsic evidence being introduced under the rule. And even if the witness, he or she, did so, I would still have to decide . . . if the alleged inconsistency was as to a material or a collateral matter as per United States v. Cruz-Rodriguez, 541 F.3d 19, 29 to 30 (1st Cir. 2008).
>
> Lastly, as I said, as the rule is aimed at discouraging fabrication, collusion, as I said, I also think there's little danger of that here.
>
> First, as I expect, and I think [defendant's attorney] acknowledged, even if he intends to call these reporters, I think it would only be as to a subset of the witnesses on the government's list and not as to all of them or a great number of them.
>
> And second, to the extent that there's some concern that the witnesses will shade their testimony, I think here where these reporters have both written a book and there's an extensive written record on what they've said, I think there's less danger of that.

Ex. A (June 7, 2013 Hr'g Tr.) 5:18-7:5.

11. For the same reasons that this Court has exempted Ms. Murphy and Mr. Cullen from its Sequestration Order, this Court should vacate the Sequestration Order as to Mr. Carr. Mr. Carr's First Amendment right to attend the trial, see generally Press-Enterprise Co. v.

4

Superior Court of Cal., Riverside City, 464 U.S. 501 (1984), and to write about it outweigh any competing interest in excluding him from the trial solely because the defendant has placed him on his witness list.

12. Here, Mr. Carr similarly is not an eyewitness to the crimes charged in the indictment. There are similar uncertainties about whether Mr. Carr could or would ever be called as a witness. Mr. Carr also has written books and there is an extensive record of what he has said on matters related to this trial. Furthermore, the First Amendment equally and similarly protects the rights of the Boston Herald and Mr. Carr and the rights of the Boston Globe, Ms. Murphy, and Mr. Cullen.

13. For these reasons, and in these circumstances, it would violate the First Amendment to exclude Mr. Carr from attending the trial or to otherwise limit his ability to follow and report on the trial. See, e.g., Anderson v. Cryovac, Inc., 805 F.2d 1, 9 (1st Cir. 1986) ("A court may not selectively exclude news media from access to information otherwise made available [to the] public . . . . Neither the courts nor any other branch of the government can be allowed to affect the content or tenor of the news by choreographing which news organizations have access to relevant information.").

14. The threat presented by the sequestration of journalists has already been examined in this case. The Government has previously argued that the defendant's listing of journalists as witnesses was part of his effort to control the coverage of this trial and, in particular, who covers it; the Government indicated that, in jailhouse tapes and in correspondence, the defendant starkly expressed his hatred of Ms. Murphy, Mr. Cullen and especially Mr. Carr (a copy of an excerpt of the transcript from June 5, 2013 is attached as Exhibit B). See Ex. B (June 5, 2013 Hr'g Tr.) 17:20-18:11. On June 7, 2013, in *Defendant's Supplemental Response to Globe Newspaper*

5

*Company, Inc.'s Motion for Exemption From Sequestration Order*, the defendant, displeased with the content and tone of a Cullen column published by the Globe, threatened to seek sequestration of the jury "[i]f the editors of the Globe do not show better judgment in the publication of columns that are designed to sell newspapers and for-profit books written by this columnist." (ECF Dkt. No. 980 at 2.) As this Court responded in allowing the motion for exemption, "I have considered [defendant's] most recent filing, . . . Docket 980, in reference to a column that was written by Mr. Cullen, who's one of the moving parties. I certainly understand [defendant's] point of view, I'm not sure if it lends more support to [defendant's] opposition or more support to the moving parties' motion."

15. Thus, First Amendment interests are directly burdened when journalists or newspapers are restricted in their ability to newsgather, write, and freely publish on matters of legitimate and significant public interest and concern. Here, Mr. Carr requires access to the trial and the available information about the trial to continue with his work as a journalist. This will allow him to write about this trial based on his past reporting and based on facts as they emerge over the course of this trial. Especially with a trial of this nature — one which will touch upon crimes that have devastated so many in our community — the importance of here protecting the First Amendment interests of one of the two major newspapers in Boston and of an experienced reporter and columnist outweighs any other interest.

Accordingly, the Boston Herald and Mr. Carr respectfully move this Court to vacate the Sequestration Order, as applied to Mr. Carr, or to otherwise exempt him from its terms.

By their attorneys,

**THE BOSTON HERALD, INC. and HOWIE CARR**

/s/ Elizabeth A. Ritvo
Elizabeth A. Ritvo (BBO#421440)
Christopher A. Houck (BBO#679682)
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
(617) 856-8200

Dated: June 8, 2013

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties of record by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/Elizabeth A. Ritvo
Elizabeth A. Ritvo

Dated: June 8, 2013

61189297 v1