**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____

                  )
                  )

**UNITED STATES**        )
                  )

**v.**                  )      **Crim. Action No. 99-10371-DJC**
                  )

**JAMES J. BULGER**      )
                  )

_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                       **July 1, 2013**

## I.      Introduction

The Defendant, James Bulger ("Bulger"), has now moved to vacate this Court's prior ruling, D. 973, barring the parties from violating Local Rule 83.2A of this Court on the grounds that it is unconstitutional under both the First Amendment and Sixth Amendment. D. 1051. For the reasons discussed below, the Court DENIES this motion.

## II.     Relevant Factual Background

Bulger filed this motion on the eve of the ninth day of testimony in the ongoing trial in this case. At trial, Bulger is facing charges for participation in an alleged racketeering conspiracy involving, among other crimes, murder, extortion and money laundering (Count 1) and separate charges of racketeering, money laundering, extortion, and a range of firearms crimes (Counts 2-27, 39-40, 42, 45 and 48). There has been extensive coverage of this case by numerous media outlets, representatives of which attend and report on the proceedings on a daily basis.

Prior to the commencement of trial, counsel for the government moved to bar Bulger's counsel from making extrajudicial statements following appearances in this Court, which had

been a regular practice of defense counsel during the pretrial phases of this case.  D. 927.  At the hearing on this motion, counsel for Bulger acknowledged the provisions of the Local Rule, the distinction that the Local Rule made about extrajudicial statements during the course of the trial and asserted that he would strictly follow the Local Rule.  D. 1010 at 58-61 (Transcript of 6/3/13 Final Pretrial Conference).  The Court granted the government's motion in part, ordering counsel for both parties to comply with the Local Rule 83.2A, but denied the motion to the extent the government sought a broader order to bar extrajudicial statements by defense counsel.  D. 973.

**III.   Discussion**

   **A.   Local Rule 83.2A**

   This District Court's Local Rule 83.2A, adopted on September 1, 1990, "represents part of this District Court's response to the Supreme Court's direction [in Sheppard v. Maxwell, 384 U.S. 333, 363 (1966)] that:  '[t]he courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences.  Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function.'"  United States v. Flemmi, 233 F. Supp. 2d 113, 116 (D. Mass. 2000) (quoting Sheppard, 384 U.S. at 363).

   The Local Rule addresses the obligations of counsel at the various stages of litigation. The rule begins with the admonition that:

> No lawyer or law firm shall release or authorize the release of information or opinion which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which he or the firm is associated, if there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

During the pendency of a criminal case "until the commencement of trial," the rule provides, in relevant part, that:

> [A] lawyer or law firm associated with the prosecution or defense shall not release or authorize the release of any extrajudicial statement, which a reasonable person would expect to be disseminated by means of public communication, relating to that matter and concerning… (6) [a]ny opinion as to the accused's guilt or innocence as to the merits of the case or the evidence in the case.

During the pendency of any criminal trial, the rule provides:

> During the trial of any criminal matter, including the period of selection of the jury, no lawyer or law firm associated with the prosecution or defense shall give or authorize any extrajudicial statement or interview relating to the trial or the parties or issues in the trial which a reasonable person would expect to be disseminated by means of public communication, except that the lawyer or law firm may quote from or refer without comment to public records of the court in the case.

L. R. 83.2A.[1]  Bulger contends that the absence of language in the rule explicitly allowing counsel to make extrajudicial statements during trial limited only by whether "there is a reasonable likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice" renders this rule unconstitutional both under the First Amendment (by infringing his attorneys' right to free speech) and under the Sixth Amendment (by denying him effective assistance of counsel).  The Court rejects both contentions.

**B.      Restrictions on Extrajudicial Statements**

**1.      Addressing the First Amendment Challenge**

As to a challenge on First Amendment grounds, a party may argue that a statute is facially overbroad or that the statute is unconstitutional as applied to the party.  See, e.g., McCullen v. Coakley, 571 F.3d 167, 173 (1st Cir. 2009); McGuire v. Reilly, 386 F.3d 45, 57-61

---

[1] The Court also notes that the Local Rules also permit a judge, in a "widely publicized or sensational criminal or civil case," to issue an order "governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused or the litigants to a fair trial by an impartial jury . . . and any other matters which the court may deem appropriate for inclusion in such an order."  L.R. 83.2B.

(1st Cir. 2004).[2]   A challenged rule or law is facially overbroad if "it prohibits a substantial amount of protected speech" and it's "overbreadth [is] <u>substantial</u>, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." <u>United States v. Williams</u>, 553 U.S. 285, 292 (2008) (emphasis in original).   By contrast, the "most common" as-applied challenge "is where the language of the statute is broad and could potentially cover many different types of fact situations," but the party attempts to "specify the law by freshly testing its constitutionality in one particular fact situation while refusing to adjudicate the constitutionality of the law in other fact situations." <u>McGuire</u>, 386 F.3d at 61.   Here, although the Court notes the defendant's references to the statute's alleged overbreadth, D. 1051 at 1, 6-7, the Court understands the nature of the defendant's motion to be an as-applied challenge, in light of the defendant's specific references to ways in which the statute burdens his attorneys' First Amendment rights and his Sixth Amendment right to effective assistance of counsel in the context of this case.[3] <u>Id.</u> at 6-8.

In the seminal case of <u>Sheppard v. Maxwell</u>, 384 U.S. at 355, the Supreme Court concluded that the media "bedlam that reigned at the courthouse during the trial," the failure of the court to supervise the environment in the courtroom, including its failure to alleviate the issue of trial publicity "by imposing control over the statements made to the news media by counsel, witnesses, and especially the Coroner and police officers" denied the defendant his Sixth Amendment right to a fair trial. <u>Id.</u> at 360.   In so ruling, the Supreme Court instructed that courts

---

[2]   There is some authority to suggest that a party can raise a hybrid "as applied overbreadth challenge," but the First Circuit has not decided this issue. <u>McCullen v. Coakley</u>, 708 F.3d 1, 11 (1st Cir. 2013) (discussing split in the circuits on this issue and declining to address it).

[3]   The Court notes that if the defendant were raising a facial challenge to the statute, he would bear an even heavier burden. <u>New York v. Ferber</u>, 458 U.S. 747, 769 (1982) (noting that the overbreadth doctrine is "'strong medicine' . . . employed . . . with hesitation and then 'only as a last resort'") (quoting <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 613 (1973)).

must take steps to protect the court proceeding "from prejudicial outside interferences," id. at 363, including, as noted above, the extrajudicial statements by counsel and others involved in the proceedings.

Unlike the defendant in Sheppard, Bulger argues that he is being denied his Sixth Amendment right not because the extensive media coverage is infecting the court proceeding, but because his counsel's compliance with Local Rule 83.2A (apparently by making only limited extrajudicial statements) is denying him effective assistance of counsel under the Sixth Amendment and is denying his attorneys' First Amendment right to free speech.

For this position, Bulger relies in large measure on Gentile v. State Bar of Nevada, 501 U.S. 1030 (1991). D. 1051 at 3-6. Unlike this case concerning extrajudicial statements made by counsel during the course of a criminal trial, Gentile involved the disciplining of an attorney for holding a press conference only hours after his client was indicted on criminal charges. Id. at 1033. The Nevada Supreme Court affirmed a ruling of the Southern Nevada Disciplinary Board of the State Bar finding that the attorney had violated Nevada Supreme Court Rule 177, "a rule governing pretrial publicity," id., that was almost identical to the ABA Model Rule of Professional Conduct 3.6,[4] barring attorneys from making extrajudicial statements if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding. Id. The Nevada rule contained both a section listing a

---

[4] This ABA Model Rule of Professional Conduct is similar to the Massachusetts Rule of Professional Conduct 3.6, cited in Bulger's motion (D. 1051 at 6), that provides, in relevant part:

(a) A lawyer who is participating or has participated in the investigation or litigation of a matter shall not make an extrajudicial statement that a reasonable person would expect to be disseminated by means of public communication if the lawyer knows or reasonably should know that it will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.

number of statements that ordinarily would result in material prejudice and a "safe harbor" provision listing a number of statements "that can be made without fear of discipline notwithstanding the other parts of the Rule." Id. at 1033. Since Rule 177 contained this "safe harbor" provision and that provision "appears to permit the speech in question," the Supreme Court reversed, finding the Rule, as applied by the State of Nevada, void for vagueness. Id. at 1048. Nevertheless, the Court concluded that the "substantial likelihood of material prejudice" test was consistent with the First Amendment because it furthers the compelling interest of "protect[ing] the integrity and fairness of a State's judicial system, and it imposes only narrow and necessary limitations on lawyers' speech." Id. at 1075; see Sheppard, 384 U.S. at 363.

Although Gentile recognizes that "[a]n attorney's duties do not begin inside the courtroom door" and that a "defense attorney may pursue lawful strategies to obtain dismissal of an indictment or reduction of charges, including an attempt to demonstrate in the court of public opinion that the client does not deserve to be tried," Gentile, 501 U.S. at 1043, the procedural posture of the criminal case at issue in Gentile was different than the case at bar, in that, as the Supreme Court recognized, Attorney Gentile's "primary motivation was the concern that, unless some of the weaknesses in the State's case were made public, a potential jury venire would be poisoned by repetition in the press of information being released by the police and prosecutors." Id. at 1042.

Here, jury selection has concluded and trial is well underway. Although the Court must presume that the jury is following the Court's instructions, United States v. Freeman, 208 F.3d 332, 344 (1st Cir. 2000), with the heightened media coverage that this case has received, there is still some risk of exposure of the jury to such coverage (i.e., risk of the "substantial likelihood of material prejudice" that the Supreme Court approved in Gentile) even if there is not the acute

concern that the jury pool will be "poisoned" if a jury had not yet been seated in this case as was the posture of the case in <u>Gentile</u>.  <u>See</u> <u>United States v. Brown</u>, 218 F.3d 415, 431 (5th Cir. 2000) (noting that "'emphatic' jury instructions may be at best an imperfect filter, and would also fail to address the threat of a 'carnival atmosphere' [as in <u>Sheppard</u>] around the trial").  Under the analysis of <u>Gentile</u>, there is still a compelling interest in protecting the integrity and fairness of trial proceedings even if counsel for the defense and government may only, under Local Rule 83.2A, quote from or refer without comment to public records of the proceedings.

Moreover, several other Courts, including the Second, Fifth and Tenth Circuits, have each affirmed restrictions on extrajudicial statements where such restrictions were similar to the provisions of Local Rule 83.2A.  In <u>Application of Dow Jones & Co., Inc.</u>, 842 F.2d 603 (2d Cir. 1988), <u>aff'g sub nom.</u> <u>United States v. Simon</u>, 664 F. Supp. 780 (S.D.N.Y. 1987), for example, the Second Circuit affirmed the district court's pretrial order prohibiting the parties and their attorneys from making "any extrajudicial statement . . . except . . . stating, without elaboration or characterization [ ] the general nature of an allegation or defense [ ] information contained in the public record; [ ] the scheduling or result of any step in the proceedings; or [e]xplaining, without characterization, the contents or substance of any motion or step in the proceedings, to the extent such motion or step is a matter of public record."  <u>Dow Jones</u>, 842 F.2d at 606.  The Second Circuit, in affirming the district court's order, could not say that the lower court's findings that given "the sensational public nature of the case and the leaks of grand jury information, the . . . failure to restrain the trial participants would add 'fuel to an already voracious fire of publicity' and create 'a real and substantial likelihood that some, if not all, defendants might be deprived of a fair trial'" were clearly erroneous.  <u>Id.</u> at 611 (quoting <u>Simon</u>, 664 F. Supp. at 792).  In addition, the Second Circuit found that the district court considered less restrictive alternatives –

and determined that there were none – prior to entering its order.  <u>Dow Jones</u>, 842 F.2d at 611-12.

In <u>Brown</u>, 218 F.3d at 418, the Fifth Circuit affirmed the district court's order that parties, lawyers, and potential witnesses could not make "any extrajudicial statement or interview" about the trial, other than matters of public record, that "could interfere with a fair trial or prejudice any defendant, the government, or the administration of justice."  <u>Id.</u>  The district court's order provided that "[s]tatements or information intended to influence public opinion regarding the merits of this case are specifically designated as information which could prejudice a party," but exempted from the order statements that dealt generally with the nature of allegations in the case, or matters of public record provided such statements were made "without elaboration or any kind of characterization."  <u>Id.</u> at 419.  The district court based its decision in part on the grounds that "[u]nrestricted statements by the participants in this trial would only serve to increase the volume of pre-trial publicity."  <u>Id.</u> at 428-29.  While noting that the case "presents a somewhat close call," the Fifth Circuit concluded that the gag order was "constitutionally permissible because it is based on a reasonably found substantial likelihood that comments from the lawyers and parties might well taint the jury pool, either in the present case or one of the two related cases, is the least restrictive corrective measure available to ensure a fair trial, and is sufficiently narrowly drawn."  <u>Id.</u> at 423.  Although the order in <u>Brown</u> concerned the likely impact on the jury pool for two of the related cases where the jury had not yet been seated, the court was also concerned with "the unsequestered jury already impaneled [in a related case]", <u>id.</u> at 429, as is the circumstance in this case.

Similarly, the Tenth Circuit, in <u>United States v. Tijerina</u>, 412 F.2d 661, 666–67 (10th Cir. 1969) affirmed contempt convictions of criminal defendants who violated an order prohibiting

parties and attorneys from "mak[ing] or issu[ing] any public statement, written or oral, either at a public meeting or occasion or for public reporting or dissemination in any fashion regarding the jury or jurors in this case, prospective or selected, the merits of the case, the evidence, actual or anticipated, the witnesses or rulings of the Court" in connection with their upcoming criminal trial on other charges. Id. at 663. As was the circumstance here, none of the parties objected to the order when it was entered, and although counsel for one of the defendants made reference to an upcoming convention, the order made no exception for statements made at the convention. Id. After two of the defendants made statements about the case at the convention, they were later found in contempt. Id. On review, the Tenth Circuit concluded that the order did not violate the defendants' First Amendment rights since it "was designed to maintain the atmosphere essential to the preservation of a fair trial, 'the most fundamental of all freedoms.'" Id. at 667. The Tenth Circuit gave even less credence to the defendants' Sixth Amendment argument, rejecting it and noting that the "guarantee of a public trial means a public trial in the courthouse, not in a convention hall." Id.

Although the aforementioned cases dealt with gag orders imposed prior to jury selection (except as to one of the multiple trials in Brown in which the jury was already empaneled), as this Court's Order (requiring counsel for both parties to comply with Local Rule 83.2A) was entered, without objection from either party, the concerns expressed in these cases about the impact of extrajudicial statements and the "carnival atmosphere" that courts should endeavor to avoid remain even after the jury is seated and the presentation of evidence is underway.

a. *There Continues to Be a Substantial Likelihood that Extrajudicial Statements Will Materially Prejudice the Outcome of the Trial*

The Defendant is perhaps correct that "[t]his case has garnered a level of public interest that is unprecedented in this Circuit." D. 1051 at 1. Yet this fact does not weigh in favor of

giving the parties and their attorneys more leeway than the Local Rule permits in terms of their extrajudicial statements during the course of this ongoing trial.  As counsel for Bulger properly acknowledged, unlike statements by media commentators or even a single trial witness, statements by counsel for the parties bears an imprimatur of official and informed opinion that statements by others do not.[5]  Regardless of the presumption that the jurors are heeding the Court's instructions to bypass any media coverage of this case, the media coverage of this trial is so pervasive that there is a danger that jurors might inadvertently come upon a news report of this case on television, the Internet or in print.  See United States v. Kobruti, 305 F. Supp. 2d 723, 738, 763-64 (E.D. Mich. 2003) (admonishing the United States Attorney General for extrajudicial statements after allegations by defense that his comments were "available electronically and could very easily have been inadvertently discovered by one of the jurors in the case").  As discussed above, other courts have found that heightened media scrutiny supports the conclusion that attorneys and parties should not make extrajudicial statements.  Brown, 218 F.3d at 429 (noting that "[u]nrestricted statements by the participants in this trial would only serve to increase the volume of pre-trial publicity"); Simon, 664 F. Supp. at 792 (noting that in light of "the sensational nature of this case. . . [and] the near certainty that any statements made by the trial participants would be widely publicized . . . an unrestrained field of attorneys and defendants would add enough fuel to an already voracious fire of publicity to create, at the very least, a real and substantial likelihood that some, if not all, defendants might be deprived of a fair trial").  Against this backdrop, there remains a substantial likelihood that extrajudicial statements by counsel, beyond those permitted by Local Rule 83.2A, could materially prejudice the

---

[5] This is the consideration that Supreme Judicial Court Justice Wilkins suggested was missing from the analysis of the gag order adopted by the trial court in Commonwealth v. Salvi. D. 1062-1 at 2-3.

proceedings, even where the jury has been seated, particularly where the trial has been underway with counsel's adherence to the Local Rule and the Court anticipates that extensive media coverage will continue for the duration of the trial.

There is not only a compelling interest in avoiding any risk of the jurors' exposure to the extrajudicial statements of counsel about this case, there is also a compelling interest in insulating witnesses, many of whom have not yet testified, from extrajudicial statements in this case.  There is a risk that extrajudicial statements, particularly those by counsel, may affect witness testimony.

Finally, the Local Rule (and its application in this case) have not rendered defense counsel silent in this case.  The counsel has been zealous in their defense of Bulger and articulating its defense to the jury and to the Court in the courtroom and there has been significant coverage of these arguments in the media.  Virtually all of the defense arguments that have been raised in Court have gained media coverage.  See, e.g., Whitey Bulger Trial: Reputed Mobster's Attorneys Grill Admitted Killer John Martorano, CBS NEWS (Jun. 19, 2013), http://www.cbsnews.com/8301-504083_162-57590059-504083/whitey-bulger-trial-reputed-mobsters-attorneys-grill-admitted-killer-john-martorano" (discussing alleged inconsistencies in government witness's testimony); Defense Hammers Key Witness in Whitey Bulger Trial, USA TODAY (Jun. 19, 2013), http://www.usatoday.com/story/news/nation/2013/06/19/whitey-bulger-trial-defense-attorney-mobster-boston/2438917 (discussing cross-examination of government witness including promises, rewards and inducements provided to witness); Defense Says Whitey Bulger Was Never Informant, Attacks Witness' Character, WGBH (Jun. 12, 2013), http://www.wgbhnews.org/post/defense-says-whitey-bulger-was-never-informant-attacks-witnesses-character.  Even defense counsel's arguments relating to the subject of this very

motion have made headlines.  Bulger Lawyers Seek to Lift Gag Order, Boost Whitey's Image, BOSTON HERALD (Jun. 23, 2013), http://bostonherald.com/news_opinion/local_coverage/2013/06/bulger_lawyers_seek_to_lift_gag_order_boost_whiteys_image (quoting defense counsel); Carney to Judge Casper: 'Let me Speak,' MASS. LAWYERS WEEKLY (Jun. 23, 2013), http://masslawyersweekly.com/2013/06/23/carney-to-judge-casper-let-me-speak (same).[6] Moreover, the Local Rule does not require counsel's silence outside of the courtroom.  See Brown, 218 F.3d at 429 ("observ[ing] that the district court did not impose a 'no comment' rule" in affirming gag order).  Local Rule 83.2A does not prevent attorneys from quoting from or referring to, without comment, the public records in this case.  As the transcripts and exhibits are public record in this case, the boundary of this restriction allows counsel to quote from or refer to the testimony of witnesses and the exhibits that the Court has admitted.[7]  Finally, the Court has

---

[6] To the extent that Bulger is concerned that the coverage to date appears one-sided in favor of the government, D. 1051 at 2, the Court notes that media has covered the defense's cross-examinations of government witnesses extensively.  See, e.g., "Whitey" Bulger lawyers challenge FBI's 700-page informant file, REUTERS, (Jun. 25, 2013), http://www.reuters.com/article/2013/06/25/us-usa-crime-bulger-idUSBRE95O0CY20130625 (discussing cross-examination of James Marra); Ex-FBI agent faces tough questions in Bulger trial, WTBW, (Jun. 28, 2013), http://www.wbtw.com/story/22710040/ex-fbi-agent-faces-tough-questions-in-bulger-trial (Associated Press article discussing cross-examination of John Morris); "Lawyer for 'Whitey' Bulger Spars with Ex-Hit Man, THE BOSTON GLOBE (Jun. 18, 2013), http://www.boston.com/metrodesk/2013/06/18/confessed-killer-john-martorano-says-whitey-bulger-murdered-dorchester-man/7RwS2w8ZPKOtYzMdiRlaRL/story.html (discussing cross-examination of John Martorano).  Moreover, the government is still presenting its case and the defendant's opportunity to present a defense case, if he elects to do so, has not yet occurred.  Finally, to the extent that there is an ongoing "heated public conversation" about the defendant and the ongoing trial, D. 1051 at 3, Local Rule 83.2A (and the Court's Order adopting same) circumscribes both defense counsel's and the prosecutors' participation in same.

[7] That Massachusetts Rule of Professional Conduct 3.6, see footnote 4, supra, is broader than Local Rule 83.2A during the pendency of trial does not, as Bulger argues, D. 1051 at 6, necessitate a different result here.  As stated, the Local Rule, even during the course of trial, does not require silence by defense counsel, but limits counsel's comments to reference to the public record.  Moreover, to the extent that 3.6.(c) allows an attorney to make any statement "to protect a client from the substantial undue prejudicial effect of recent publicity," D. 1051 at 6 (citing rule), such concern is more aptly focused on the phase before a jury has been seated.

considered less restrictive alternatives, see Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 563-64 (1976) (considering less restrictive alternatives where actions implicate First Amendment); Dow Jones, 842 F.2d at 611 (citing Sheppard, 384 U.S. at 358-63, for less restrictive alternatives including "change of venue, trial postponement, a searching voir dire, emphatic jury instructions, and sequestration of jurors") but given the stage of the trial (after the jury has been chosen following voir dire questions about a host of issues including exposure to media coverage; impaneled; instructed repeatedly not to watch, listen or read media coverage regarding this case; and already has been hearing evidence, unsequestered (where sequestration would be impracticable and unduly burdensome to the jurors)), there are no other sufficient, less restrictive alternatives that will continue to ensure that the defendant gets a fair trial decided by an impartial jury than by continuing counsel's adherence to Local Rule 83.2A along with the continued measure of instructing the jury to avoid media coverage.

### 2.     Addressing the Sixth Amendment Challenge

Contrary to Bulger's argument, his counsel's adherence to Local Rule 83.2A (and this Court's Order requiring adherence to same) does not deny him his Sixth Amendment right to effective assistance of counsel. While, as discussed above, the Court must consider the effect of any such rule or order on the defendant's First Amendment right, "[a]t the same time the proper administration of criminal justice must protect an accused's Sixth Amendment rights." Dow Jones, 842 F.2d at 609. For this argument, Bulger also points to the language in Gentile that an attorney's duties "do not begin inside the courtroom door." Gentile, 501 U.S. at 1043. Even as counsel may have a duty to respond to unfavorable coverage in the media prior to jury selection to ensure that the jury who is seated is impartial and not tainted by coverage, the need to do so after the jury is seated is greatly lessened. Although the Court must continue to take measures to

ensure that the jury remains impartial during the presentation of evidence through various means—repeated admonitions not to be exposed to media coverage of the case and limitations of counsel's extrajudicial statements during the course of the trial, as discussed above—the need for effective assistance of counsel at this juncture of the case is in the courtroom and not the courthouse steps.   There is nothing about adherence to Local Rule 83.2A that prevents counsel from doing what they have been doing since the start of trial—defending Bulger before the jury seated in this case.

### IV.     Conclusion

For the foregoing reasons, the Court DENIES D. 1051.  The Court's Order of June 3, 2013, D. 973, requiring the compliance of all counsel in this case with Local Rule 83.2A, remains in full force and effect.


**So Ordered.**

                                                        /s/ Denise J. Casper
                                                        United States District Judge