1                    ` STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
2

3    _____

4    UNITED STATES OF AMERICA,

5                        Plaintiff,        Criminal Action
                                           No. 99-10371-DJC
6    v.
                                           August 6, 2013
7    JAMES J. BULGER,                      9:00 a.m.

8                        Defendant.
     _____
9

10

11              TRANSCRIPT OF JURY TRIAL DAY 37

12                        JURY CHARGE

13       BEFORE THE HONORABLE DENISE J. CASPER

14           UNITED STATES DISTRICT COURT

15          JOHN J. MOAKLEY U.S. COURTHOUSE

16                  1 COURTHOUSE WAY

17                 BOSTON, MA  02210

18

19

20

21
                     DEBRA M. JOYCE, RMR, CRR
22                    Official Court Reporter
                  John J. Moakley U.S. Courthouse
23                 1 Courthouse Way, Room 5204
                        Boston, MA  02210
24                      617-737-4410

25

1    APPEARANCES:

2    FOR THE GOVERNMENT:

3    BRIAN T. KELLY, ESQ.
     FRED M. WYSHAK, JR., ESQ.
4    ZACHARY R. HAFER, ESQ.
     United States Attorney's Office
5    John Joseph Moakley Federal Courthouse
     1 Courthouse Way
6    Suite 9200
     Boston, MA 02210
7    617-748-3197

8    FOR THE DEFENDANT:

9    J.W. CARNEY, JR., ESQ.
     HENRY B. BRENNAN, ESQ.
10   Carney & Bassil
     20 Park Plaza
11   Suite 1405
     Boston, MA 02116
12   617-338-5566

13

14

15

16

17

18

19

20

21

22

23

24

25

P R O C E E D I N G S

1

2          (The following proceedings were held in open

3    court before the Honorable Denise J. Casper, United States

4    District Judge, United States District Court, District of

5    Massachusetts, at the John J. Moakley United States Courthouse,

6    1 Courthouse Way, Boston, Massachusetts, on August 6, 2013.)

7          THE COURT:  Counsel, I'll see you at sidebar.

8          MR. CARNEY:  Just me and Mr. Wyshak?

9          THE COURT:  Sure.

09:00 10          (At sidebar on the record.)

11          MR. CARNEY:  Your Honor, I wanted to --

12          THE COURT:  Keep your voice down.

13          MR. CARNEY:  Your Honor, I wanted to inform you that

14    my client was experiencing severe back pain this morning.  He

15    was seen by the nurse, who, I believe, gave him Motrin to relax

16    his back and ease the pain.  He's in the courtroom now, and I

17    don't anticipate there will be a problem during your Honor's

18    charge.

19          THE COURT:  Okay.

09:01 20          MR. CARNEY:  If I have to, I'll, of course, notify

21    you, ask to approach sidebar.

22          THE COURT:  Counsel, it's always hard to tell how long

23    these things will take in real time, but I expect an hour and a

24    half.

25          MR. CARNEY:  If you need more time, it's okay, your

1    Honor.

2              THE COURT:  Thank you.

3              MR. CARNEY:  Thanks.

4              (End of discussion at sidebar.)

5              (Jury entered the courtroom.)

6              THE COURT:  Good morning, jurors.

7              THE JURY:  Good morning.

8              THE COURT:  As I told you yesterday, this is the part

9    of the case where I give the final jury charge, the final

10   instructions that will govern your consideration of the

11   evidence in this case and the conduct of your deliberations.

12             As you might imagine, we have a lot of ground to

13   cover, so I just ask for your full attention as I move through

14   these instructions.

15             Jurors, it is your duty to find the facts from all of

16   the evidence admitted in this case.  To those facts you must

17   apply the law as I give it to you.  The determination of the

18   law is my duty as the presiding judge in this court.  It is

19   your duty to apply the law exactly as I give it to you, whether

20   you agree with it or not.  That means you must decide the case

21   solely on the evidence before you and according to the law.

22             In following my instructions, you must follow all of

23   them and not single out some and ignore others.  They are all

24   equally important.  You must not read into these instructions,

25   or into anything I may have said or done, any suggestions by me

1    as to what verdict you should return.  That is a matter

2    entirely for you to decide.

3         I have organized these instructions into three parts.

4    First, general instructions; second, instructions as to the

5    charges in this case; and third, instructions that will govern

6    the conduct of your deliberations.

7         Every person accused of a crime is presumed to be

8    innocent unless and until his or her guilt is established

9    beyond a reasonable doubt.  The presumption is not a mere

09:05 10   formality, it is a matter of the most important substance.

11        The presumption of innocence alone may be sufficient

12   to raise a reasonable doubt and to require the acquittal of a

13   defendant.  The defendant before you, Mr. James Bulger, has the

14   benefit of that presumption throughout the trial, and you are

15   not to convict him of a particular charge unless you are

16   persuaded of his guilt of that charge beyond a reasonable

17   doubt.

18        The presumption of innocence until proven guilty means

19   that the burden of proof is always on the government to satisfy

09:06 20   you that Mr. Bulger is guilty of the crimes with which he is

21   charged beyond a reasonable doubt.

22        The law does not require the government prove guilt

23   beyond all possible doubt, proof beyond a reasonable doubt is

24   sufficient to convict.  This burden never shifts to the

25   defendant, Mr. Bulger.  It is always the government's burden to

prove each of the elements of the crimes charged beyond a
reasonable doubt by the evidence and the reasonable inferences
to be drawn from that evidence.  The law does not require a
defendant to prove his innocence or to produce any evidence.
The defendant, Mr. Bulger, has the right to rely upon the
failure or the inability of the government to establish beyond
a reasonable doubt any essential element of the crimes charged
against him.

If, after fair and impartial consideration of all of
the evidence, you have a reasonable doubt as to Mr. Bulger's
guilt of the crime charged, it is your duty to acquit him of
that crime.  On the other hand, if after fair and impartial
consideration of all the evidence, you are satisfied beyond a
reasonable doubt of the defendant's guilt of the crime charged,
you should vote to convict him.

The defendant, Mr. Bulger, has a constitutional right
not to testify, and no inference of guilt or of anything else
may be drawn from the fact that the defendant did not testify.
For any of you to draw such an inference would be wrong, and
indeed, it would be a violation of your oath as a juror.

You must decide this case solely upon the evidence.
You must not be influenced by any personal likes or dislikes,
prejudice, or sympathy.  You may also not consider or be
influenced by any possible punishment that may be imposed on
the defendant, Mr. Bulger, or any other possible consequences

1    of a conviction.  Your function is to weigh the evidence in the

2    case and determine whether the government has proved the

3    defendant's guilt beyond a reasonable doubt, solely upon the

4    basis of the evidence.

5          Your verdict must be based solely on the evidence and

6    the law as I have given it to you in these instructions.

7          The evidence from which you are to decide the facts in

8    this case consist of the sworn testimony of witnesses, both on

9    direct and cross-examination, regardless of who called the

09:08 10   witness, and the exhibits that have been received into

11   evidence.

12         Although you may consider only the evidence presented

13   in the case, you are not limited in considering that evidence

14   to the plain statements made by the witnesses or contained in

15   the documents.  In other words, you are not limited solely to

16   what you see and hear as the witnesses testify.  You are

17   permitted to draw from facts that you find to have been proven

18   such reasonable inferences as you believe are justified in the

19   light of common sense and personal experience.

09:09 20         An inference is simply a deduction or a conclusion

21   that may be drawn from the facts that have been established.

22   Any inference you draw must be reasonable and based on the

23   facts as you find them.  Inferences may not be based on

24   speculation or conjecture.

25         There are two kinds of evidence: direct and

1    circumstantial.  Direct evidence is evidence that directly

2    addresses the truth of a fact, such as testimony from an

3    eyewitness that the witness saw something.  Direct evidence

4    could be a simple assertion by someone, for example, it's

5    raining outside.  That is a statement of a fact observed.  If

6    you thought that person who said that to you was truthful and

7    had a sufficient basis for knowing what the weather was like

8    outside, you could accept the statement as direct evidence that

9    it is raining outside.  Alternatively, if you doubted the

09:10 10    reliability of the statement, you could reject it.

11          Circumstantial evidence is indirect evidence, that is,

12    proof of a fact or facts from which you can draw the inference

13    by reason and common sense that another fact exists, even

14    though it has not been proved directly.  To illustrate an

15    example of circumstantial evidence, let's return to the prior

16    example regarding the weather outside.  Suppose that instead of

17    having someone report to you about the weather conditions,

18    someone came in from outside wearing a wet raincoat and shaking

19    water off an umbrella.  Without any words being spoken, that

09:10 20    is, without any direct statement or assertion being made, an

21    observer might conclude that it was raining outside.  The

22    observer would have some direct evidence to consider: the

23    observations of a wet raincoat and a dripping umbrella.

24    Thinking about those pieces of direct evidence might lead the

25    observer to draw a conclusion or an inference about an

1    unobserved fact, that it was raining.

2           You are entitled to consider both kinds of evidence,

3    direct and circumstantial.  The law permits you to give equal

4    weight to both, but it is for you to decide how much weight to

5    give to any evidence.  Circumstantial evidence alone may be

6    sufficient to convict the defendant if it persuades you beyond

7    a reasonable doubt that the defendant is guilty of the offenses

8    alleged in the indictment.

9           Certain things, as I've told you before, are not

09:11 10   evidence.  Let me list those for you again.

11          Arguments and statements by lawyers are not evidence.

12   The lawyers are not witnesses.  What they say in their opening

13   statements, closing arguments, and at other times is intended

14   to help you interpret the evidence, but it is not evidence.  If

15   the facts as you remember them from the evidence differ from

16   the way the lawyers have stated them, your memory of them

17   controls.

18          Questions by lawyers standing alone are not evidence.

19   Again, the lawyers are not witnesses.  The question and the

09:12 20   answer taken together are the evidence.

21          Objections by lawyers are not evidence.  Lawyers have

22   a duty to their clients to object when they believe a question

23   is improper under the rules of evidence.  If I sustained an

24   objection, in other words, if I agreed with the lawyer

25   objecting, you must ignore the question or exhibit and must not

1  try to guess what the answer might have been or what the

2  exhibit might have contained.

3          Anything you may have seen or heard when the court was

4  not in session is not evidence.  You are to decide the case

5  solely on the evidence received at trial.

6          The indictment is not evidence.  This case, like most

7  criminal cases, began with an indictment.  I'm sending a copy

8  of the indictment into the jury room for you to have during

9  your deliberations.  I caution you, as I have before, that the

09:13 10  fact that Mr. Bulger has had an indictment filed against him is

11  no evidence whatsoever of his guilt.  Mr. Bulger has pled not

12  guilty in this case and denies the charges in the indictment.

13  The indictment is simply an accusation, it is the means by

14  which the allegations and charges of the government are brought

15  before this court.

16          Anything I have excluded from evidence or ordered

17  stricken and instructed you to disregard is not evidence.  You

18  must not consider such items.

19          The exhibits that have been admitted in evidence for

09:13 20  your consideration will be given to you.  The numbers assigned

21  to the exhibits are for convenience and to ensure an orderly

22  procedure.  You should draw no inference from the fact that a

23  particular exhibit was assigned a particular number or that

24  there may be gaps in the number sequence.

25          A particular item of evidence was sometimes received

for a limited purpose only; that is, it can be used by you only

for one particular purpose and not for any other purpose.  I've

told you when that occurred and instructed you on the purposes

for which the item can and cannot be used.

As I indicated at the beginning of the trial, you were

permitted to take notes if you chose to do so, but some

cautions apply.  You should bear in mind that not everything

that is written down is necessarily what was said.  Thus, when

you return to the jury room to discuss the case, do not assume

simply because something appears in somebody's notes that it

necessarily took place in court.  Notes are an aid to

recollection, nothing more.  The fact that something is written

down does not mean that it is necessarily accurate.

You may recall that a recording of conversations

involving the defendant were admitted in evidence.  The

recording of those conversations are the evidence.  The

transcripts that were provided to you while listening to the

recording are not evidence.  The transcripts were only provided

to assist you in listening to the recording.  The recording

itself and what you heard on the recording is the evidence for

you to consider and give what weight, if any, you decide it

should have.

Whether the government has sustained its burden of

proof does not depend upon the number of witnesses it has

called or the number of exhibits it has offered, but instead,

upon the nature and quality of the evidence presented.  You do

not have to accept the testimony of any witness if you find the

witness not credible.  You must decide which witnesses to

believe and which facts are true.  To do this, you must look at

all the evidence, drawing upon your common sense and personal

experience.  You may believe all of the testimony of a witness

or some of it or none of it.  You alone are the judges of the

credibility of the witnesses.

In deciding whether to believe a witness' testimony,

you may want to take into consideration such factors as the

witness' conduct and demeanor while testifying; any apparent

fairness or any bias he or she may have displayed; any interest

you may discern that he or she may have in the outcome of the

case; any prejudice he or she may have shown; their

opportunities for seeing and knowing the things about which he

or she has testified; the reasonableness or unreasonableness of

the events that he or she have related to you in their

testimony; and any other facts or circumstances disclosed by

the evidence that tend to corroborate or contradict his or her

version of the events.

The testimony of a witness may be discredited or

impeached by showing that he or she previously made statements

that are inconsistent with his or her present testimony.  You

may can consider that earlier statement to help you decide how

much of the witness' testimony to believe.  If you find that

the prior statement was not consistent with the witness'

testimony at this trial, then you should decide whether that

affects the believability of that person's testimony at this

trial.  Sometimes, of course, people make innocent mistakes,

particularly as to unimportant details.  Not every

contradiction or inconsistency is necessarily important.

Again, you alone are the judges of the witness' credibility.

        Some prior inconsistent statements may be used for

purposes other than impeachment.  If you find that a witness

has made inconsistent statements under oath on an earlier

occasion, such as in a prior trial, court proceeding, or in a

deposition, you may consider that earlier statement for its

truth or falsity, the same as any testimony at this trial.

        Now, you have heard from a number of witnesses who

have provided evidence under an agreement with the government,

participated in the crimes charged against the defendant and/or

testified under a grant of immunity.  Some people in this

position are entirely truthful when testifying.  In evaluating

the credibility of these witnesses' testimony, you should

consider the same factors that you should for any other

witness, but you should also consider the testimony of these

individuals with particular caution; they may have had reason

to make up stories or exaggerate what others did because they

wanted to help themselves.  You must determine whether the

testimony of any such witness has been affected by any interest

1    in the outcome of the case or any benefits the witness has

2    received from the government as a result of a plea agreement or

3    immunity agreement.

4         You also have heard from witnesses who have pled

5    guilty to charges arising out of the same facts and charges as

6    this case.  You are instructed that you are to draw no

7    conclusions or inferences of any kind about the guilt of the

8    defendant on trial from the fact that a prosecution witness

9    pled guilty to similar charges.  Each individual's decision to

09:19 10   plead guilty is a personal decision about his or her own guilt.

11   You may consider a witness' guilty plea in assessing his or her

12   own credibility, but it may not be used by you in any way as

13   evidence against the defendant, Mr. Bulger, on trial here.

14        During the course of this trial, you have heard

15   reference to "substantial assistance" motions in regard to the

16   reduction of the criminal sentence of certain witnesses who

17   entered into cooperation agreements with the government.  In

18   considering the testimony of such witnesses with particular

19   caution, as I have instructed you, you may consider whether a

09:19 20   witness, hoping to have his or her sentence reduced, may have a

21   motive to make up stories or exaggerate what others did because

22   he or she wanted to help himself or herself.

23        If, at the time of sentencing, the government

24   concludes that a person has provided substantial assistance to

25   the government in its criminal investigations and/or

prosecutions of one or more individuals, the government may
file a substantial assistance motion with the court to
recommend a reduced sentence for that person.  Although the
sentence ultimately imposed is determined by the court based
upon numerous factors, including, but not limited to, the value
of the person's assistance to the government, the determination
of whether a defendant has provided substantial assistance and
the filing of any such motion is determined by the government.
Under Rule 35 of the federal criminal rules, the general rule
is that a substantial assistance motion is made within one year
of the person's sentence.  The government may file a
substantial assistance motion more than one year after a person
is sentenced if that individual's substantial assistance
involves information not known to the person until one year or
more after sentencing; information provided by the person to
the government within one year of sentencing, but which did not
become useful to the government until more than one year after
sentencing; or information the usefulness of which could not
reasonably have been anticipated by the defendant until more
than one year after sentencing and which was promptly provided
to the government after its usefulness was reasonably apparent
to defendant.

          You have heard testimony from several witnesses
offered as experts regarding various matters in this case.  An
expert witness has specialized knowledge or experience that

1  allows the witness to give an opinion.  You may accept or

2  reject such testimony.

3       In weighing an expert's testimony, you should consider

4  the factors that generally bear upon the credibility of a

5  witness as well as the expert's qualifications, including his

6  or her education, experience, and training, the soundness of

7  the reasons given for the opinion, and all other evidence in

8  the case.  You may give the expert testimony whatever weight,

9  if any, you find it deserves in light of all of the evidence in

09:22 10  this case.  You should not, however, accept a witness'

11  testimony merely because he or she is an expert.  Remember that

12  you alone decide how much of a witness' testimony to believe

13  and how much weight it should be given.

14       Intentional flight by a defendant after he is accused

15  of the crimes for which he is now on trial may be considered by

16  you in light of all the other evidence in the case.  The burden

17  is upon the government to prove intentional flight.

18  Intentional flight after a defendant is accused of a crime is

19  not alone sufficient to conclude that he is guilty.  Flight

09:23 20  does not create a presumption of guilt.  At most, it may

21  provide the basis for an inference of consciousness of guilt,

22  but flight may not always reflect feelings of guilt.  Moreover,

23  feelings of guilt, which are present in many innocent people,

24  do not necessarily reflect actual guilt.  In your consideration

25  of the evidence of flight, you should consider that there may

1    be reasons for a defendant's actions that are fully consistent

2    with innocence.

3         It is up to you as members of the jury to determine

4    whether or not evidence of intentional flight shows a

5    consciousness of guilt and the weight or significance to be

6    attached to any such evidence.

7         I'm now going to instruct you on the nature of the

8    crimes charged in the indictment and the elements of those

9    offenses, all of which the government must prove beyond a

09:24 10   reasonable doubt.  As you may recall when I spoke to you at the

11   very beginning of this case, the defendant, Mr. Bulger, has

12   been charged by the government with 32 counts in violation of

13   federal law.  He is charged with two racketeering counts in

14   Count One and Two of the indictment, Count One is a

15   racketeering conspiracy charge.  As part of the racketeering

16   charges in those two counts, the government alleges that the

17   defendant committed 33 Racketeering Acts, numbered Racketeering

18   Acts Number One through Thirty-Three, that are themselves

19   separate crimes under federal or state law.  The indictment

09:24 20   also charges the defendant with two extortion counts in Counts

21   Three and Four, Count Three is an extortion conspiracy charge;

22   23 money laundering charges in Counts Five through

23   Twenty-Seven, Count Five is a money laundering conspiracy

24   charge; and five firearms-related counts, charges, in Counts

25   Thirty-Nine, Forty, Forty-Two, Forty-Five, and Forty-Eight.

1  The government bears the burden of proving each and every

2  element of each of these charges beyond a reasonable doubt.  I

3  will instruct you in a moment about each of these charges and

4  each of the elements that the government must prove beyond a

5  reasonable doubt, but first I want to give you some general

6  instructions about the indictment and some terms that you will

7  hear throughout my instructions about the charges against the

8  defendant.

9         You will note that the indictment charges that the

09:25 10  charged offenses occurred on or about certain dates.  It does

11  not matter if the indictment charges that specific acts

12  occurred in or around a certain date and the evidence indicates

13  that, in fact, it was on another date.  The law only requires a

14  substantial similarity between the dates alleged in the

15  indictment and the date established by the evidence presented

16  at trial.

17        You will hear reference throughout these instructions

18  to whether the government has proven beyond a reasonable doubt

19  that the defendant committed certain acts knowingly, willfully,

09:26 20  or intentionally.  To act "knowingly" means that the act was

21  done voluntarily and intentionally and not because of mistake

22  or accident.  You may infer, but you are certainly not required

23  to infer, that a person intends the natural and probable

24  consequences of acts knowingly done or knowingly omitted.  To

25  act "willfully" means to act voluntarily and intelligently and

1    with the specific intent that the underlying crime be

2    committed; that is to say, with bad purpose either to disobey

3    or disregard the law, not to act by ignorance, accident, or

4    mistake.  To act "with intent" or "intentionally" refers to a

5    mental condition or state of mind; that is, the state of mind

6    with which an act is done or failed to be done.  All of these

7    terms concern the defendant's state of mind.  Because it is

8    impossible to prove through direct evidence the inner workings

9    of the human mind, it is frequently necessary to resort to

09:27 10   circumstantial evidence.  Thus, in considering whether

11   something is done knowingly, willfully, or intentionally, you

12   may consider the actions of the defendant by what he said or

13   did, all of the facts and circumstances surrounding his

14   conduct, and any reasonable inferences to be drawn from those

15   facts or circumstances.  It is entirely up to you, however, to

16   decide what facts are proven by the evidence received during

17   this trial.

18        Intent and motive should never be confused.  Motive is

19   what prompts a person to act or fail to act.  Intent refers to

09:27 20   the state of mind with which the act is done or failed to be

21   done.  The motive of the accused is immaterial and need not be

22   proved by the defendant.  Rather, evidence regarding motive is

23   relevant only insofar as it sheds light on the intent of the

24   defendant.

25        I shall now turn to each of the charges alleged

1    against Mr. Bulger in the indictment.

2           The defendant, Mr. Bulger, is charged in Counts One,

3    Three, and Five, and in Racketeering Acts Twenty-One,

4    Twenty-Four, Twenty-Nine, and Thirty of conspiring to commit

5    certain federal crimes.  It is against federal law to conspire

6    to commit these crimes.  The conspiracy charges alleged in the

7    indictment are as follows:

8           The defendant is charged with racketeering conspiracy

9    in Count One.

09:28 10          The defendant is charged with conspiracy to commit

11   extortion in Count Three and Racketeering Acts Twenty-One and

12   Twenty-Four.

13          The defendant is charged with conspiracy to distribute

14   narcotics or to possess narcotics with the intent to distribute

15   in Racketeering Act Twenty-Nine.

16          And the defendant is charged with conspiracy to commit

17   money laundering in Count Five and Racketeering Act Thirty.

18          For you to find the defendant guilty of conspiracy,

19   you must be convinced that the government has proven each of

09:29 20   the following things beyond a reasonable doubt:

21          First, that the agreement specified in the indictment

22   and not some other agreement or agreements existed between at

23   least two people to commit the crime; and second is, that the

24   defendant willfully joined in that agreement.

25          A conspiracy is an agreement, spoken or unspoken.  The

conspiracy does not have to be a formal agreement, a plan in which everyone involved sat down together and worked out all of the details.  However, the government must prove beyond a reasonable doubt that those who were involved shared a general understanding about the crime.  Mere similarity of conduct among various people or the fact that they may have associated with each other or discussed common aims and interests does not necessarily establish proof of the existence of a conspiracy, but you may consider such factors.

The government must prove two types of intent beyond a reasonable doubt before the defendant can be said to have willfully joined the conspiracy: an intent to agree and an intent, whether reasonable or not, that the underlying crime be committed.  Mere presence at the scene of a crime is not alone enough, but you may consider it among other factors.

Proof that the defendant willfully joined in the agreement must be based upon evidence of his own words and/or actions.  You need not find that the defendant agreed specifically to or knew about all the details of the crime or knew every other co-conspirator or that he participated in each act of the agreement or played a major role, but the government must prove beyond a reasonable doubt that he knew the essential features and the general aims of the venture.  Even if the defendant was not part of the agreement at the very start, he may be found guilty of the conspiracy if the government proves

 1    beyond a reasonable doubt that he willfully joined the
 2    agreement later.  On the other hand, a person who has no
 3    knowledge of a conspiracy, but simply happens to act in a way
 4    that furthers some object or purpose of the conspiracy, does
 5    not thereby become a conspirator.

 6         The government does not have to prove that the
 7    conspiracy succeeded or was achieved.  The crime of conspiracy
 8    is complete upon the agreement to commit the underlying crime.

 9         I have admitted into evidence against the defendant
09:31 10   the acts and statements of others because these acts and
11    statements were committed by persons who the government charges
12    were also confederates or co-conspirators of the defendant,
13    Mr. Bulger, on trial.

14         The reason for allowing this evidence to be received
15    against the defendant has to do with the nature of the crime of
16    conspiracy.  A conspiracy is often referred to as a partnership
17    in crime.  Thus, as in other types of partnerships, when people
18    enter into a conspiracy to accomplish an unlawful end, each
19    member becomes an agent for the other co-conspirators in
09:32 20   carrying out the conspiracy.

21         Accordingly, the reasonably foreseeable acts,
22    declarations, statements, and omissions of any member of the
23    conspiracy and in furtherance of the common purpose of the
24    conspiracy are deemed, under the law, to be the acts of all of
25    the members, and all of the members are responsible for such

1    acts, declarations, statements, and omissions.

2           If you find beyond a reasonable doubt that the

3    defendant was a member of a conspiracy charged in the

4    indictment, then any acts done or statements made in

5    furtherance of the conspiracy by persons also found by you to

6    have been members of that conspiracy may be considered against

7    the defendant.  This is so even if such acts were done and

8    statements were made in the defendant's absence and without his

9    knowledge.

09:33 10          However, before you may consider the statements or

11   acts of a co-conspirator in deciding the issue of the

12   defendant's guilt, you must first determine that the acts and

13   statements were made during the existence and in furtherance of

14   the unlawful scheme.  If the acts were done or the statements

15   made by someone whom you do not find to have been a member of

16   the conspiracy, or if they were not done or said in furtherance

17   of the conspiracy, then they may not be considered by you as

18   evidence against the defendant.

19          To establish the existence of a conspiracy, the

09:33 20   government need not show that the conspirators entered into any

21   express agreement or formal agreement.  It is not necessary to

22   show that the conspirators directly, by spoken or written

23   words, stated among themselves exactly what their object or

24   purpose was or exactly what the details of the scheme were or

25   exactly what means they would adopt to achieve those goals.  A

conspiracy is, by its very nature, usually secret in its origin

and its execution.  Because of the secretive nature of the

crime of conspiracy, the agreement between two or more people

may be express or tacit.  It is sufficient if the government

demonstrates conduct evidencing a silent understanding to share

a purpose to violate the law.

Because a conspiracy by its very nature is often

secret, neither the existence of the agreement, nor the fact of

the defendant's participation in it, must be proved by direct

evidence, but may be proved by circumstantial evidence.

There is another method by which you may evaluate

whether to find the defendant guilty of certain substantive

charges in the indictment.  In light of my instructions, if you

find beyond a reasonable doubt that the defendant was guilty of

any of the federal conspiracy charges, which I just described,

Counts One, Three, and Five, then you may also, but you're not

required to, find him guilty of the corresponding substantive

crimes, racketeering, extortion and money laundering,

respectively, referenced in that respective conspiracy count,

provided the government has proven beyond a reasonable doubt

each of the following elements:

First, that someone committed the substantive crime

charged in that count.

Second, that the person you find actually committed

the substantive crime was a member of the conspiracy of which

1    you found the defendant was a member.

2        Third, that this co-conspirator committed the

3    substantive crime in furtherance of the conspiracy.

4        Fourth, that the defendant was a member of this

5    conspiracy at the time the substantive crime was committed and

6    has not withdrawn from it.

7        And Fifth, that the defendant could reasonably have

8    foreseen that one or more of his co-conspirators might commit

9    the substantive crime.

09:36 10        If you find all five of these elements to exist beyond

11    a reasonable doubt, then you may find the defendant guilty of

12    the substantive crime charged, even though he did not

13    personally participate in the acts constituting the crime or

14    did not have actual knowledge of them.

15        If, however, you are not satisfied as to the existence

16    of any one of these five elements, then you may not find the

17    defendant guilty of the particular substantive crime unless the

18    government proves beyond a reasonable doubt that the defendant

19    personally committed that substantive crime or aided and

09:36 20    abetted its commission.

21        Now, before I turn to the substantive charges in the

22    indictment, I must instruct you on another legal principle of

23    culpability, aiding and abetting.

24        A number of the counts in the indictment charge not

25    only a violation of a specific criminal statute, but also a

1    violation of Title 18, United States Code, Section 2.  Section

2    2(a) of Title 18 of the United States Code provides that:

3           Whoever commits an offense against the United States

4    or aids, abets, counsels, commands, induces, or procures its

5    commission, is punishable as a principal.

6           To "aid and abet" means to intentionally help someone

7    else commit the charged crime.  To establish aiding and

8    abetting, the government must prove beyond a reasonable doubt:

9           First, that someone else committed the charged crime;

09:37 10   and, second, that the defendant conscientiously shared the

11   other person's knowledge of the charged crime, intended to help

12   the other person, and took part in the endeavor, seeking to

13   make it succeed.

14          The defendant need not perform the charged crime, be

15   present when it is performed, or be aware of the details of its

16   execution to be guilty of aiding and abetting.  But a general

17   suspicion that an unlawful act may occur or that something

18   criminal is happening is not enough.  Mere presence at the

19   scene of a crime and knowledge that the crime is being

09:38 20   committed are also not sufficient to establish aiding and

21   abetting, but you may consider these among other factors.

22          Section 2(b) of Title 18 of the United States Code

23   provides that:  Whoever willfully causes an act to be done,

24   which if directly performed by him or another would be an

25   offense against the United States, is punishable as a

1  principal.

2       If a defendant willfully causes an act to be done by

3  another person, the defendant is responsible for those acts as

4  though the defendant personally committed them.  To establish

5  the defendant caused an act to be done, the government must

6  prove beyond a reasonable doubt:

7       First, that another person committed the charged crime

8  or committed an indispensable element of the charged crime; and

9  second, that the defendant willfully caused the act or acts,

09:39 10  even though the defendant did not personally commit the act or

11  acts.

12       The government need not prove that the person who did

13  commit the charged crime did so with criminal intent.  That

14  person may be an innocent intermediary.  The defendant need not

15  perform the charged crime, be present when it was performed, or

16  be aware of the details of its execution to be guilty of

17  causing an act to be done by another.  A general suspicion that

18  an unlawful act may occur or that something criminal is

19  happening is not enough.  Mere presence at the scene of the

09:39 20  charged crime and knowledge that the crime is being committed

21  are also not sufficient to establish causing an act to be done

22  through another, but you may consider these among other

23  factors.

24       Count One charges a conspiracy under section 1962(d)

25  of Title 18 of the United States Code which makes it unlawful

1    to conspire to violate Section 1962(c) of that Title.  I've

2    already instructed you on conspiracy under federal law.  I will

3    now instruct you on the substantive crime of racketeering under

4    Section 1962(c).

5         Count Two charges the defendant with violating Section

6    1962(c) of Title 18 of the United States Code.  Section 1962(c)

7    provides in pertinent part that:

8         It shall be unlawful for any person employed by or

9    associated with any enterprise engaged in, or the activities of

09:40 10   which affect, interstate or foreign commerce, to conduct or

11   participate, directly or indirectly, in the conduct of such

12   enterprise's affairs through a pattern of racketeering

13   activity.

14        Section 1962(c) of Title 18 of the United States Code,

15   in essence, makes it a crime to participate in the conduct of

16   an enterprise's affairs through a pattern of certain violations

17   of law known as "Racketeering Acts."  In this case, the charged

18   Racketeering Acts include conspiracy to murder, murder,

19   conspiracy to commit extortion, extortion, narcotics

09:41 20   distribution conspiracy, money laundering conspiracy, and money

21   laundering.

22        The word "racketeering" has certain implications in

23   our society.  Use of that term in this statute should not be

24   regarding as having anything to do with your determination of

25   whether the guilt of this defendant has been proven.  The term

is only a term used by Congress to describe the statute.

To prove that a defendant violated Section 1962(c), the government must establish beyond a reasonable doubt each of the following five elements of the offense:

First, that an enterprise existed as alleged in the indictment; second, that the enterprise affected interstate or foreign commerce; third, that the defendant was associated with or employed by the enterprise; fourth, that the defendant engaged in a pattern of racketeering activity; and fifth, that the defendant conducted or participated in the conduct of the enterprise through that pattern of racketeering activity.

I will now address each of these elements.

The first element that the government must prove beyond a reasonable doubt is that an enterprise existed as alleged in Count One of the indictment, which is incorporated by reference into Count Two of the indictment.  An enterprise may be, one, a legal entity, such as a corporation or partnership; or two, a group of individuals associated in fact, although this association is not recognized as a legal entity, for a common purpose of engaging in a course of conduct.  That is, although an enterprise can include a legal entity, such as a partnership or corporation, an enterprise also includes a group of people who have associated together for a common purpose of engaging in a course of conduct over a period of time.  This group associated in fact, in addition to having a

1    common purpose, must have an ongoing organization, either

2    formal or informal, and must have personnel who function as a

3    continuing unit.  Such association must have a structure.  In

4    this context, structure means a purpose, relationships among

5    those associated with the enterprise, and longevity sufficient

6    to permit those associates to pursue the enterprise's purpose.

7    This group may be organized for a legitimate and lawful purpose

8    or it may be organized for an unlawful purpose.

9          The government has charged that the enterprise in this

09:44 10  case was a criminal organization known by several names whose

11   members and associates associated together and with others to

12   earn money through extortion, the distribution of narcotics,

13   money laundering, loansharking, bookmaking, and crimes of

14   violence, including murder.  If you find that the government

15   has proven beyond a reasonable doubt that this group of people

16   associated in fact were characterized by: one, having a

17   structure as that term is defined above, as I said; two, a

18   common purpose; three, an ongoing organization, either formal

19   or informal; and four, by personnel who functioned as a

09:44 20  continuing unit, then you may find that an enterprise existed.

21         If you find that this enterprise existed, you must

22   also determine whether this enterprise continued in essentially

23   unchanged form during substantially the entire period charged

24   in the indictment.  This does not mean that everyone involved

25   has to be the same, but the core of the enterprise has to be

1   the same throughout.

2          The second element the government must prove beyond a

3   reasonable doubt is that the enterprise was engaged in or had

4   an effect upon interstate or foreign commerce.

5          Interstate commerce includes the movement of goods,

6   services, money, and individuals between states, or between

7   states and the District of Columbia or U.S. Territory or

8   possession, or between the United States and a foreign state or

9   nation.

09:45 10        The government must prove that the enterprise engaged

11  in interstate commerce or that its activities affected

12  interstate commerce in any way, no matter how minimal.  It does

13  not have to prove that the racketeering activity actually

14  affected interstate commerce, although proof that Racketeering

15  Acts did affect interstate commerce is sufficient to satisfy

16  this element.  It is not necessary to prove that the acts of

17  the defendant affected interstate commerce as long as the acts

18  of the enterprise had such an effect.  Finally, the government

19  is not required to prove that the defendant knew he was

09:46 20  affecting interstate commerce.

21         The third element which the government must prove

22  beyond a reasonable doubt is that the defendant was associated

23  with or employed by the enterprise.

24         It is not required that the defendant have been

25  employed by or associated with the enterprise for the entire

1    time that the enterprise existed.  It is required, however,

2    that the government prove beyond a reasonable doubt that at

3    some time during the period indicated in the indictment the

4    defendant in question was employed by or associated with the

5    enterprise.

6           A person cannot be associated with or employed by an

7    enterprise if he or she does not know of the enterprise's

8    existence or the nature of its activities.  Thus, in order to

9    prove this element, the government must prove beyond a

09:47 10   reasonable doubt that the defendant was connected to the

11   enterprise in some meaningful way and that the defendant knew

12   of the existence of the enterprise and of the general nature of

13   its activities.

14          The fourth element of Count Two which the government

15   must prove beyond a reasonable doubt is that the defendant

16   engaged in a pattern of racketeering activity.  The prove this

17   element for Count One, that is the conspiracy count, the

18   government need only prove that the defendant agreed with at

19   least one other person to engage in a pattern of racketeering

09:47 20   activity.

21          The government has charged the defendant with

22   committing 33 Racketeering Acts which are specified in Count

23   One of the indictment and are incorporated by reference into

24   Count Two of the indictment.

25          For the federal and state offenses of conspiracy to

commit murder, murder, conspiracy to commit extortion,

extortion, narcotics distribution conspiracy, money laundering

conspiracy, and money laundering to be considered as

Racketeering Acts, the government must prove to you beyond a

reasonable doubt that the defendant committed those offenses.

I will soon explain each of the elements of those offenses, the

alleged Racketeering Acts, to you.  To prove that Racketeering

Acts constituted a pattern of racketeering activity, the

government must prove that the defendant committed or aided and

abetted the commission of at least two Racketeering Acts

occurring within ten years of each other that were related to

each other and that posed a threat of continued criminal

activity.  It is not sufficient for the government to prove

only that the defendant committed two of the Racketeering Acts

I've just described.  A series of disconnected acts does not

constitute a pattern, and a series of disconnected crimes does

not constitute a pattern of racketeering activity, nor do they

amount to or pose a threat of continued racketeering activity.

       To prove that the Racketeering Acts are related, the

government must prove that the acts had the same or similar

purposes, results, participants, victims, or methods of

commission, or that they are otherwise interrelated by

distinguishing characteristics and are not isolated events.

       To prove that the Racketeering Acts pose a threat of

continued racketeering activity, the government must establish

1  that the acts are part of a long-term association that exists

2  for criminal purposes.

3       The Fifth and final element that the government must

4  prove beyond a reasonable doubt as to Count Two is that the

5  defendant conducted or participated in the conduct of the

6  enterprise through a pattern of racketeering activity.  To

7  prove this element for Count One, again, the racketeering

8  conspiracy charge, the government need only prove that the

9  defendant agreed with at least one other person to conduct or

09:50 10  participate in the conduct of the enterprise through a pattern

11  of racketeering activity.

12       To conduct or participate in the conduct of the

13  enterprise means the defendant must have played some part in

14  the operation or management of the enterprise.  The government

15  is not required to prove that the defendant was a member of the

16  upper management.  An enterprise is operated not only by those

17  in upper management, but also by those lower down in the

18  enterprise who act under the direction of upper management.

19       In addition to proving that the defendant played some

09:50 20  part in the operation or management of the enterprise, the

21  government must also prove that there is some meaningful

22  connection between the defendant's illegal acts and the affairs

23  of the enterprise.  To satisfy this part of the element, the

24  government must establish either, one, that the defendant's

25  position in the enterprise facilitated commission of those

illegal acts and that the Racketeering Acts had some impact or

effect on the enterprise; or, two, that the acts were in some

way related to the affairs of the enterprise; or, three, that

the defendant was able to commit the acts by virtue of his

position or involvement in the affairs of the enterprise.

With respect to Count Two, jurors, as I've just

instructed you, the government must prove beyond a reasonable

doubt that at least two of the Racketeering Acts recited in the

indictment were committed by the defendant within the

prescribed time.

You may not find the defendant guilty of Count Two

unless you agree unanimously that at least two particular

Racketeering Acts were committed by the defendant.  It is not

enough that you all believe that two Racketeering Acts were

committed; that is, you cannot find the defendant guilty of

Count Two if some of you think that only Racketeering Acts A

and B were committed by the defendant and the rest of you that

only Racketeering Acts C and D were committed by the defendant.

There must be at least two specific Racketeering Acts that all

of you believe were committed by the defendant in order to

convict him of Count Two.

The verdict form that I will later describe to you in

these instructions contains a series of interrogatories for you

to answer to indicate which Racketeering Acts, if any, you

unanimously find.  Do not answer these interrogatories until

1   after you've reached your verdict as to Count Two.  If you

2   decide that the government has not proven the substantive

3   racketeering charge in Count Two, then you do not need to

4   answer these interrogatories.  However, if you find that the

5   government has proven the elements of this offense beyond a

6   reasonable doubt, then after you have reached and recorded your

7   verdict as to Count Two on the verdict form, you should answer

8   the interrogatories with respect to each of the alleged

9   Racketeering Acts.  That is, you must decide first whether

09:53 10   Mr. Bulger is guilty of the offense charged in Count Two before

11   answering the interrogatories about each of the Racketeering

12   Acts.

13       The Racketeering Acts alleged in the racketeering

14   counts, Counts One and Two, arise under federal or state law.

15   Counts One and Two of the indictment allege that Mr. Bulger

16   committed 33 acts of racketeering activity; that is,

17   Racketeering Act One through Thirty-Three.  These Racketeering

18   Acts include:

19       Conspiracy to murder in violation of Massachusetts

09:53 20   state law, that's Racketeering Acts One, Seven A, Ten A,

21   Thirteen A, and Seventeen A;

22       Murder in violation of Massachusetts state law,

23   Racketeering Acts Two through Six, Seven B, Eight and Nine, Ten

24   B, Eleven, Twelve, Fourteen, Fifteen, Sixteen, Eighteen,

25   Nineteen, and Twenty;

1              Murder in violation of Oklahoma state law,

2    Racketeering Act Thirteen B;

3              Murder in violation of Florida state law, Racketeering

4    Act Seventeen B;

5              Extortion and extortion conspiracy in violation of

6    federal law, Racketeering Acts Twenty-One through Twenty-Seven;

7              Extortion in violation of Massachusetts state law,

8    Racketeering Act Twenty-Eight;

9              Narcotics distribution conspiracy in violation of

09:54 10    federal law, Racketeering Act Twenty-Nine;

11             And money laundering and money laundering conspiracy

12    in violation of federal law, Racketeering Acts Thirty through

13    Thirty-Three.

14             I will now address the elements of each of the

15    Racketeering Acts that the government must prove beyond a

16    reasonable doubt.

17             Racketeering Acts Two through Six, Seven B, Eight,

18    Nine, Ten B, Eleven, Twelve, Fourteen, Fifteen, Sixteen,

19    Eighteen, Nineteen, and Twenty charged in Counts One and Two of

09:55 20    the indictment charge Mr. Bulger with murder in Massachusetts.

21             These Racketeering Acts charge the defendant with

22    violating Section 1 of Chapter 265 and Section 2 of Chapter 274

23    of the Massachusetts General Laws.  The relevant part of

24    Section 1 of Chapter 265 reads as follows:

25             Murder committed with deliberately premeditated malice

1     aforethought is murder in the first degree.

2            The relevant part of Section 2 of Chapter 274 reads as

3     follows:

4            Whoever aids in the commission of a felony, or is

5     accessory thereto before the fact by counselling, hiring or

6     otherwise procuring such felony to be committed, shall be

7     punished in the manner provided for the punishment of the

8     principal felon.

9            To prove the defendant, Mr. Bulger, guilty of murder

09:55 10    in the first degree with deliberate premeditation, the

11    government must prove beyond a reasonable doubt the following

12    elements:

13           First, the defendant caused the death of the victim;

14    second, the defendant intended to kill the victim, that is, the

15    defendant conscientiously and purposefully intended to cause

16    the victim's death; and third, the defendant committed the

17    killing with deliberate premeditation, that is, he decided to

18    kill after a period of reflection.

19           Let me address each of these elements.  The first

09:56 20    element is that the defendant caused the death of the victim.

21    A defendant's act is the cause of the victim's death where the

22    act, in a natural and continuous sequence, results in death,

23    and without which death would not have occurred.

24           The second element is that the defendant intended to

25    kill the victim; that is, the defendant conscientiously and

1     purposely intended to cause the victim's death.

2            The third element is that the defendant committed the

3     killing with deliberate premeditation; that is, he decided to

4     kill after a period of reflection.  Deliberate premeditation

5     does not require any particular length of time of reflection.

6     A decision to kill may be formed over a period of days, hours,

7     or even a few seconds.  The key is the sequence of the thought

8     process: first, the consideration of whether to kill; second,

9     the decision to kill; and third, the killing arising from the

09:57 10     decision.  There is no deliberate premeditation where the act

11     is taken so quickly that the defendant takes no time to reflect

12     on the action and then decides to do it.

13            The government is not required to prove that the

14     defendant himself performed the act that caused the victim's

15     death.  However, to establish that a defendant is guilty of

16     murder, the government must prove two things beyond a

17     reasonable doubt:

18            First, that the defendant knowingly participated in

19     the commission of the murder; and second, that the defendant

09:57 20     did so with the intent required to commit the crime.

21            Such knowing participation by the defendant may take

22     many forms.  It may take the form of personally committing the

23     acts that constitute the crime, or of aiding or assisting

24     another in those acts.  It may take the form of a defendant

25     asking or encouraging another person to commit the crime, or of

1    helping to plan the commission of the crime.  Alternatively, it

2    may take the form of the defendant agreeing to stand by, at, or

3    near the scene of the crime to act as a lookout, or to provide

4    aid or assistance in committing the crime, or in escaping, if

5    such help becomes necessary.  An agreement to help if needed

6    does not need to be made through a formal or explicit written

7    or oral advance plan or agreement.  It is enough if the

8    defendant and at least one other person conscientiously acted

9    together before or during the crime with the intent of making

09:58 10   the crime succeed.

11         The government must also prove beyond a reasonable

12   doubt that at the time the defendant knowingly participated in

13   the commission of the murder, he possessed or shared the intent

14   required for that crime.  You are permitted, but not required,

15   to infer the defendant's mental state or intent from his

16   knowledge of the circumstances or any subsequent participation

17   in the crime.  The inferences you draw must be reasonable, and

18   you may rely on your experience and common sense in determining

19   the defendant's knowledge and intent.

09:59 20        Mere knowledge that a murder is to be committed is not

21   sufficient to convict the defendant.  The government must also

22   prove more than mere association with the perpetrator of the

23   crime either before or after its commission.  It must also

24   prove more than a failure to take appropriate steps to prevent

25   the commission of the crime.

1          Mere presence at the scene of the murder is not enough

2     to find a defendant guilty.  Presence alone does not establish

3     a defendant's knowing participation in the crime, even if a

4     person knew about the intended crime in advance and took no

5     steps to prevent it.  To find a defendant guilty, there must be

6     proof that the defendant intentionally participated in some

7     fashion in committing that particular crime and that he had or

8     shared the intent required to commit the crime.  It is not

9     enough to show that the defendant simply was present when the

10:00 10    crime was committed or that he knew about it in advance.

11          Racketeering Act Thirteen B charges the defendant,

12    Mr. Bulger, with murder in Oklahoma.

13          This Racketeering Act charges the defendant with

14    violating Section 701.7 of Title 21 and Section 432 of Title 22

15    of the Oklahoma statutes.  The relevant part of Section 701.7

16    of Title 21 reads as follows:

17          A person commits murder in the first degree when that

18    person unlawfully and with malice aforethought causes the death

19    of another human being.  Malice is that deliberate intention

10:01 20    unlawfully to take away the life of a human being, which is

21    manifested by external circumstances capable of proof.

22          The relevant part of Section 432 of Title 22 reads as

23    follows:

24          The distinction between an accessory before the fact

25    and a principal, and between principals in the first and second

degree, in cases of felony, is abrogated, and all persons

concerned in the commission of a felony, whether they directly

commit the act constituting the offense, or aid and abet in its

commission, though not present, must be prosecuted, tried and

punished as principals, and no additional facts need be alleged

in any indictment or information against such an accessory than

are required in an indictment or information against his

principal.

No person may be convicted of murder in the first

degree under Oklahoma law unless the government has proven

beyond a reasonable doubt each element of the crime:

First, the death of a human; and, second, the death

was unlawful; third, the death was caused by the defendant; and

fourth, the death was caused with malice aforethought.

"Malice aforethought" means a deliberate intention to

take away the life of a human being.  As used in these

instructions, malice aforethought does not mean hatred, spite

or ill will.  The deliberate intent to take a human life must

be formed before the act and must exist at the time a homicidal

act is committed.  No particular length of time is required for

formation of this deliberate intent.  The intent may have been

formed instantly before commission of the act.

The external circumstances surrounding the commission

of a homicidal act may be considered in finding whether or not

deliberate intent existed in the mind of the defendant to take

a human life.  External circumstances include words, conduct,

demeanor, motive and all other circumstances connected with a

homicidal act.

Racketeering Act Seventeen B charges Mr. Bulger with

murder in Florida.  This Racketeering Act charges the defendant

with violating Section 782.04 subsection (1)(a) and Section

777.011 of the Florida statutes.  The relevant part of Section

782.04(1)(a) defines murder as follows:

The unlawful killing of a human being when perpetrated

from a premeditated design to effect the death of the person

killed or any human being.

The relevant part of Section 777.011 reads as follows:

Whoever commits any criminal offense against the

state, whether felony or misdemeanor, or aids, abets, counsels,

hires, or otherwise procures such offense to be committed, and

such offense is committed or is attempted to be committed, is a

principal in the first degree and may be charged, convicted,

and punished as such, whether he or she is or is not actually

or constructively present at the commission of such offense.

To prove the crime of First Degree Premeditated

Murder, again, under Florida law, the government must prove the

following three elements beyond a reasonable doubt:

First, the victim is dead; second, the death was

caused by the criminal act of the defendant; and third, there

was a premeditated killing of the victim.

1          An "act" includes a series of related actions arising

2     from and performed pursuant to a single design or purpose.

3          "Killing with premeditation" is killing after

4     consciously deciding to do so.  The decision must be present in

5     the mind at the time of the killing.  The law does not fix the

6     exact period of time that must pass between the formation of

7     the premeditated intent to kill and the killing.  The period of

8     time must be long enough to allow reflection by the defendant.

9     The premeditated intent to kill must be formed before the

10:05 10    killing.

11          The question of premeditation is a question of fact to

12    be determined by you from the evidence.  It will be sufficient

13    proof of premeditation if the circumstances of the killing and

14    the conduct of the defendant convince you beyond a reasonable

15    doubt of the existence of premeditation at the time of the

16    killing.

17          Racketeering Acts One, Seven A, Ten A, Thirteen A, and

18    Seventeen A allege that the defendant, Mr. Bulger, conspired to

19    commit murder in violation of Massachusetts General Laws

10:06 20    Chapter 274, Section 7.

21          These Racketeering Acts charge the defendant with

22    violating Section 1 of Chapter 265 and Section 7 of Chapter 274

23    of the Massachusetts General Laws.  The relevant part of

24    Section 1 of Chapter 265 reads as follows:

25          Murder committed with deliberately premeditated malice

1  aforethought is murder in the first degree.

2  The relevant part of Section 7 of Chapter 274 reads as

3  follows:

4  If a person is convicted of a crime of conspiracy for

5  which crime the penalty is expressly set forth in any other

6  section of the general laws, the penalty therefore shall be

7  imposed pursuant to the provisions of such other section.

8  The defendant is charged with the offense of

9  conspiracy to commit murder.  As indicated earlier, a

10  conspiracy is an agreement of two or more people to do

11  something that is unlawful.  The crime is the agreement to do

12  something unlawful.  It does not matter whether the plan was

13  successful or not or whether any steps were taken to carry out

14  the plan.

15  To prove the defendant guilty of the crime of

16  conspiracy to commit murder, the government must prove three

17  things beyond a reasonable doubt:

18  First, that the defendant joined in an agreement or

19  plan with one or more other persons; second, that the purpose

20  of the agreement was to commit murder; and third, that the

21  defendant joined the conspiracy knowing of the unlawful plan

22  and intending to help carry it out.

23  It is not necessary that the conspirators formulated a

24  formal agreement among themselves, or that they agreed on every

25  detail of the conspiracy, or even that they met together, but

1    the government must prove that there was a joint plan among

2    them and that the defendant joined in that plan.

3         It is not always possible to prove a conspiracy by

4    direct evidence.  The law allows you, where it seems

5    reasonable, to infer that there was a conspiracy from all of

6    the circumstances.  For example, if people who know each other

7    or have been in communication with each other are shown to have

8    been involved in concerted actions which all seem designed to

9    accomplish a specific purpose, then it may be reasonable to

10:08 10   conclude that those actions were not coincidental but were

11   taken pursuant to a joint plan.

12        However, remember that it is not enough that the

13   defendant knew about the conspiracy or associated with

14   conspirators.  To be liable as a conspirator, the defendant

15   must have actually joined in the conspiracy as something that

16   he wished to bring about.

17        Counts Three and Four and Racketeering Acts Twenty-One

18   through Twenty-Seven charge Mr. Bulger with extortion in

19   violation of federal law.  Count Three and Racketeering Act

10:08 20   Twenty-One charge the defendant with an extortion conspiracy,

21   while Count Four and Racketeering Acts Twenty-Two through

22   Twenty-Seven charge the defendant with substantive counts of

23   extortion.  I've already instructed you on conspiracy.  I will

24   now instruct you on the substantive crime of extortion.

25        These counts and Racketeering Acts charge the

defendant with violating Section 1951 of Title 18 of the United

States Code.  The relevant part of Section 1951 of Title 18

reads as follows:

Whoever in any way or degree obstructs, delays, or

affects commerce or the movement of any article or commodity in

commerce, by extortion or attempts or conspires so to do, or

commits or threatens physical violence to any person or

property in furtherance of the plan or purpose to do anything

in violation of this section shall be punished.

In these counts and Racketeering Acts, the defendant

is accused of obstructing, delaying, and affecting commerce by

committing extortion.  It is against federal law to engage in

such conduct.  For you to find the defendant guilty of this

crime, you must be convinced that the government has proven

each of the following things beyond a reasonable doubt:

First, that the defendant knowingly and willfully

obtained property from a person; second, that the defendant did

so by means of extortion; third, that the defendant knew that

the person extorted parted with the property because of the

extortion; and fourth, that the extortion affected commerce.

It is not necessary for you to find that the defendant

knew or intended that his actions would affect commerce.  It is

only necessary that the natural consequences of the acts

committed by the defendant as charged in the indictment would

affect commerce in any way or degree.  The term "commerce"

means commerce between any point in a state and any point outside the state.

"Extortion" means the obtaining of property from another with his consent, induced by wrongful use of actual or threatened force, violence or fear, or under color of official right.

Racketeering Act Twenty-Eight charges the defendant with extortion under Massachusetts state law.

This Racketeering Act charges the defendant with violating Section 25 of Chapter 265 of the Massachusetts General Laws.  The relevant part of Section 25 of Chapter 265 reads as follows:

Whoever verbally or by a verbal communication maliciously threatens an injury to the person or property of another with intent thereby to extort money or any pecuniary advantage, or with an intent to compel any person to do any act against his will, shall be punished.

The relevant part of Section 2 of Chapter 274 reads as follows:

Whoever aids in the commission of a felony, or is an accessory thereto before the fact by counselling, hiring or otherwise procuring such felony to being committed, shall be punished in the manner provided for the punishment of the principal felon.

The defendant is accused of committing a state

1    extortion of Raymond Slinger.  For you to find the defendant

2    guilty of this crime, you must be convinced that the government

3    has proven each of the following things beyond a reasonable

4    doubt:

5         First, that the defendant made a malicious threat;

6    second, that it was to Raymond Slinger; third, to injure

7    Raymond Slinger's person or property; and fourth, with intent

8    to extort money.

9         In determining whether or not the defendant made a

10:12 10   malicious threat to injure someone, you may consider the

11   personal history of the speaker, the timing, location, subject

12   matter, and other conditions of the exchange and the

13   relationship of the parties.  The government need not prove

14   that a threat was made by direct evidence.  You may infer from

15   circumstantial evidence that the defendant made an extortive

16   threat, so long as you are convinced beyond a reasonable doubt.

17        Alternatively, you may consider under Massachusetts

18   state law whether the defendant aided and abetted the extortion

19   of Raymond Slinger.  Where there is evidence that more than one

10:13 20   person may have participated in the commission of a crime, the

21   government must prove two things beyond a reasonable doubt:

22        First, that the defendant knowingly and intentionally

23   participated in some meaningful way in the commission of the

24   alleged offense, alone or with others; and second, that he did

25   so with the intent required for that offense.

1          For aiding and abetting the state extortion of Raymond

2    Slinger, the government must prove that the defendant

3    intentionally participated in the commission of the crime as

4    something he wished to bring about and sought by his actions to

5    make it succeed.  Such participation may take the form of

6    personally committing the acts that constitute the crime,

7    helping to plan the commission of the crime, or agreeing to

8    provide aid or assistance in committing the crime.

9          An agreement to help if needed does not need to be

10:14 10   made through a formal or explicit written or oral advanced plan

11   or agreement.  It is enough to act conscientiously together

12   before or during the crime with the intent of making the crime

13   succeed.

14         The government must also prove beyond a reasonable

15   doubt that at the time the defendant knowingly participated in

16   the commission of the extortion of Mr. Slinger, he had or

17   shared the intent required for that crime.  You are permitted,

18   but are not required, to infer the defendant's mental state or

19   intent from his knowledge of the circumstances or any

10:14 20   subsequent participation in the crime.  The inferences that you

21   draw must be reasonable, and you may rely on your experience

22   and common sense in determining from the evidence the

23   defendant's knowledge and intent.

24         Racketeering Act Twenty-Nine in the indictment charges

25   Mr. Bulger with conspiring to distribute or possess with intent

1    to distribute cocaine and marijuana.

2         This Racketeering Act charges the defendant with

3    violating Section 846 of Title 21 of the United States Code.

4    The relevant part of Section 846 of Title 21 reads as follows:

5         Any person who attempts or conspires to commit any

6    offense defined in this subchapter shall be subject to the same

7    penalties as those prescribed for the offense, the commission

8    of which was the object of the attempt of the conspiracy.

9         The defendant is accused of conspiring to commit a

10:15 10   federal crime, specifically the crime of distributing cocaine

11   or marijuana to others, or the crime of possessing cocaine or

12   marijuana with the intent to distribute the drugs to others.

13   It is against federal law to conspire with someone to commit

14   these crimes.  For you to find a defendant guilty of a

15   narcotics conspiracy, you must be convinced that the government

16   has proven each of the following things beyond a reasonable

17   doubt:

18        First, that the agreement specified in the indictment

19   and not some other agreement or agreements existed between at

10:16 20   least two people to distribute, or to possess with intent to

21   distribute, cocaine or marijuana or both drugs; and second is

22   that the defendant willfully joined in that agreement.

23        The government does not have to prove that the

24   conspiracy succeeded or was achieved.  The crime of conspiracy,

25   as I said before, is complete upon the agreement to commit the

underlying crime.  If you find that a defendant is guilty of
this conspiracy charge, you will also have to determine whether
the government has proven beyond a reasonable doubt that the
conspiracy of which he was a member involved at least five
kilograms of cocaine and/or a thousand kilograms of marijuana.

The defendant is not charged in Racketeering Act
Twenty-Nine with the crime of distribution of cocaine or
marijuana or possession of cocaine or marijuana with intent to
distribute.  Rather, the defendant is charged in this
Racketeering Act with conspiracy to commit that crime.  For
your reference, however, the elements of the crimes of
distribution of cocaine or marijuana and of possession of
cocaine or marijuana with intent to distribute are as follows:

As to distribution:  First, that an individual
transferred cocaine and marijuana to another person; second,
that he knew the substance was cocaine or marijuana; and third,
that the defendant acted intentionally, that is, it was his
conscious object to transfer the controlled substance to
another person.

As to possession with intent to distribute:  First,
that an individual possessed cocaine or marijuana, either
actually or constructively; second, that he did so with the
specific intent to distribute the cocaine or marijuana over
which he had actual or constructive possession; and third, that
he did so knowingly and intentionally.

1          Counts Five through Twenty-Seven and Racketeering Acts

2     Thirty through Thirty-Three charge Mr. Bulger with concealment

3     money laundering in violation of federal law.  Count Five and

4     Racketeering Act Thirty charge the defendant with the

5     concealment money laundering conspiracy, while Counts 6 through

6     Twenty-Seven and Racketeering Acts Thirty-One through

7     Thirty-Three charge the defendant with substantive counts of

8     concealment money laundering.  I've already instructed you on

9     conspiracy.  I will now instruct you on the subjective crime of

10:18 10    concealment money laundering.

11         These counts and Racketeering Acts charge the

12    defendant with violating Section 1956(a)(1)(B)(i) of Title 18

13    of the United States Code.  This section provides in part that:

14         Whoever, knowing that the property involved in a

15    financial transaction represents the proceeds of some form of

16    unlawful activity, conducts or attempts to conduct such a

17    financial transaction which in fact involves the proceeds of

18    specified unlawful activity knowing that the transaction is

19    designed in whole or in part to conceal or disguise the nature,

10:19 20    location, the source, the ownership, or the control of the

21    proceeds of specified unlawful activity shall be punished.

22         In these counts and Racketeering Acts, the defendant

23    is charged with violating that portion of the federal money

24    laundering statute that prohibits concealment of the proceeds

25    of certain unlawful activities.  It is against federal law to

engage in such concealment.  For the defendant to be convicted
of this crime, you must be convinced that the government has
proven each of the following things beyond a reasonable doubt:

First, that the defendant entered into a financial
transaction or transactions, on or about the date alleged;
second, that the transaction involved the use of proceeds of
unlawful activities, specifically, proceeds of extortion and
the distribution of narcotics and controlled substances; third,
that the defendant knew that these were the proceeds of some
kind of crime that amounts to a state or federal felony; and
fourth, that the defendant knew that the transaction or
transactions were designed in whole or in part to conceal or
disguise the nature, location, source, ownership, or control of
the proceeds of that specified unlawful activity.

A "financial transaction" means a transaction which in
any way or degree affects interstate commerce by, one,
involving the movement of funds by wire or other means; or, two
involving one or two monetary instruments; or three, involving
the transfer of title to any real property.  A "financial
transaction" can also be a transaction involving the use of a
financial institution which is engaged in, or the activities of
which affect, interstate commerce in any way or degree.  A
"monetary instrument" means coin or currency of the United
States, personal checks, bank checks, or money orders.

Negotiation of a check or a withdrawal, deposit, or

transfer of funds to or from a bank are all financial

transactions.  In addition, a delivery of cash or a transfer of

property that affects interstate commerce, even minimally, is a

financial transaction.

"Proceeds" means any property, or any interest in

property, that someone acquires or retains as a result of the

commission of the unlawful activity.

Count 27 and Racketeering Act 33 of the indictment

also charge Mr. Bulger with promotion money laundering.

This count and Racketeering Act charge the defendant

with violating Section 1956(a)(1)(A)(i) of Title 18 of the

United States Code.  This section provides, in part, that:

Whoever, knowing that the property involved in a

financial transaction represents the proceeds of some form of

unlawful activity, conducts or attempts to conduct such a

financial transaction which in fact involves the proceeds of

specified unlawful activity with the intent to promote the

carrying on of specified unlawful activity shall be punished.

The defendant is charged with violating that portion

of the federal money laundering statute that prohibits certain

financial transactions intended to promote specified unlawful

activity.  It is against federal law to engage in such conduct.

For the defendant to be convicted of this crime, you must be

convinced that the government has proven each of the following

things beyond a reasonable doubt:

First, that the defendant entered into a financial

transaction or transactions on or about the date alleged;

second, that the transaction involved the use of proceeds of

unlawful activity, specifically, proceeds of extortion and the

distribution of narcotics and controlled substances; third,

that the defendant knew that these were the proceeds of some

kind of crime that amounts to a state or federal felony; and

fourth, that the defendant entered into the transaction or

transaction with the intent to promote the carrying on of the

specified unlawful activities.

As to promotion money laundering, a "financial

transaction" means a transaction which in any way or degree

affects interstate commerce by, again, one, involving the

movement of funds by wire or other means; or two, involving one

or more monetary instruments; or three, involving the transfer

of title to any real property.  A "financial transaction" can

also be a transaction involving the use of a financial

institution which is engaged in, or the activities of which

affect, interstate commerce in any way or degree.  A "monetary

instrument" means coin or currency of the United States,

personal checks, bank checks, or money orders.

Negotiation of a check or a withdrawal, deposit, or

transfer of funds to or from a bank are all financial

transactions.  In addition, a delivery of cash or transfer of

property that affects interstate commerce, even minimally, is a

1   financial transaction.

2        "Proceeds" means any property, or any interest in

3   property, that someone acquires or retains as a result of the

4   commission of the unlawful activity.

5        "Promote" means to further, to help carry out or to

6   make easier.

7        Count Thirty-Nine of the indictment charges the

8   defendant, Mr. Bulger, with possession of firearms in

9   furtherance of crimes of violence.

10:25 10      This charges the defendant with violating Section

11   924(c) of Title 18 of the United States Code.  This section

12   provides, in relevant part, that:

13        Any person who, during and in relation to any crime of

14   violence for which the person may be prosecuted in a court of

15   the United States, uses or carries a firearm, or who, in

16   furtherance of any such crime, possesses a firearm, shall be

17   punished.

18        Count Thirty-Nine of the indictment charges that from

19   in or before the late 1980s and continuing until in or about

10:25 20   1999, the defendant possessed firearms in furtherance of crimes

21   of violence.  It is against federal law to possess a firearm in

22   furtherance of a crime of violence.  For you to find the

23   defendant guilty of this crime, you must be satisfied that the

24   government has proven each of the following things:

25        First, that the defendant committed at least one crime

of violence, specifically either Count One or Count Two of the

indictment; and second, the defendant knowingly possessed a

firearm in furtherance of the commission of that crime.

A defendant's possession of a firearm is "in

furtherance of" a crime if the firearm possession made the

commission of the underlying crime easier, safer, or faster, or

in any other way helped the defendant commit the crime.  There

must be some connection between the firearm and the underlying

crime, but the firearm need not have been actively used during

the crime.

The term "possess" means to exercise authority,

dominion or control over something.  It is not necessarily the

same as legal ownership.  The law recognizes different kinds of

possession.  Possession includes both actual and constructive

possession.  A person who has direct, physical control of

something on or around his person is then in actual possession

of it.  A person who is not in actual possession but who has

the power and the intention to exercise control over something

is in constructive possession of it.  Whenever I use the term

"possession" in these instructions, I mean actual as well as

constructive possession.

Possession also includes both sole and joint

possession.  If one person alone has actual or constructive

possession, possession is sole.  If two or more persons share

actual or constructive possession, possession is joint.

1    Whenever I have used the word "possession" in these

2    instructions, I mean joint as well as sole possession.

3         Count Forty of the indictment charges Mr. Bulger with

4    possession of machine guns in furtherance of crimes of

5    violence.  This also charges the defendant with violating

6    Section 924(c) of Title 18 of the United States Code, the

7    relevant part of which I've already read to you.

8         Count Forty of the indictment charges that from in or

9    before the late 1980s and continuing until in or about 1999,

10:28 10   the defendant possessed machine guns in furtherance of crimes

11   of violence.  It is against federal law to possess a machine

12   gun in furtherance a crime of violence.  For you to find the

13   defendant guilty of this crime, you must be satisfied that the

14   government has proven each of the following things:

15        First, that the defendant committed at least one crime

16   of violence, specifically either Count One or Two of the

17   indictment; and second, that the defendant knowingly possessed

18   a machine gun in furtherance of the commission of that crime.

19        A defendant's possession of machine gun is "in

10:28 20   furtherance of" a crime if the machine gun possession made the

21   commission of the underlying crime easier, safer or faster, or

22   in any other way helped the defendant commit the crime.  There

23   must be some connection between the machine gun and the

24   underlying crime, but the machine gun need not have been

25   actively used during the crime.  All of the definitions of

1    "possess" and the concepts of actual and constructive

2    possession, and sole and joint possession that I gave you in

3    regard to Count Thirty-Nine, the possession of firearms in

4    furtherance of crimes of violence, also apply to this count,

5    Count Forty, possession of machine guns in furtherance of a

6    crime of violence.

7         Count Forty-two of the indictment charges Mr. Bulger

8    with possession of unregistered machine guns.  This charges the

9    defendant with violating Section 5861(d) and Section 5845(a) of

10:29 10    Title 26 of the United States Code.  Section 5861(d) provides,

11    in part, that:

12         It shall be unlawful for any person to receive or

13    possess a firearm which is not registered to him in the

14    National Firearms Registration and Transfer Record.

15         For the purpose of this section, the term "firearm"

16    means machine gun.

17         Count Forty-two of the indictment charges that from in

18    or about the late 1980s and continuing until in or about 1999,

19    the defendant knowingly and intentionally possessed one or more

10:30 20    machine guns which were not registered to him in the National

21    Firearms Registration and Transfer Record.  For the defendant

22    to be found guilty of this offense, you need only conclude that

23    he knowingly and intentionally possessed one firearm which was

24    not registered to him in the National Firearms Registration and

25    Transfer Record.

1    To sustain its burden of proof for the crime of

2    possessing an unregistered firearm as charged in Count

3    Forty-two of the indictment, the government must prove the

4    following five essential elements beyond a reasonable doubt:

5        First, that the defendant, Mr. Bulger, knew that he

6    possessed one of the firearms described in Count Forty-Two;

7    second, the firearm was a machine gun; third, the firearm

8    possessed was capable of operating as it was designed or could

9    readily be put in operating condition; fourth, the defendant

10:31 10   knew of the characteristics of the firearm as described in the

11   indictment, that is, that it was a machine gun; and fifth, the

12   firearm was not registered to the defendant in the National

13   Firearms Registration and Transfer Record.

14       Count Forty-Five of the indictment charges the

15   defendant with the transfer of possession of unregistered

16   machine guns.  This charges the defendant with violating

17   Section 922(o) of Title 18 of the United States Code.  Section

18   922(o) provides, in part, that:

19       It shall be unlawful for any person to transfer or

10:32 20   possess a machine gun.

21       The prove the defendant guilty of the offense charged

22   in Count Forty-Five, the government must prove each of the

23   following elements beyond a reasonable doubt:

24       First, that the defendant transferred or possessed a

25   firearm as described in the indictment; second, that the

1    firearm the defendant transferred or possessed was a machine

2    gun; and third, that the defendant acted knowingly.

3           The term "machine gun" means any weapon which shoots,

4    is designed to shoot, or can be readily restored to shoot

5    automatically more than one shot without manual reloading by a

6    single function of the trigger.  The term shall also include

7    the frame or receiver of any such weapon, any part designed and

8    intended solely and exclusively or combination of parts

9    designed and intended for use in converting a weapon into a

10:32 10  machine gun, and any combination of parts from which a machine

11   gun can be assembled if such parts are in the possession or

12   under the control of a person.

13          Count Forty-Eight of the indictment charges the

14   defendant with possession of firearms with obliterated serial

15   numbers.

16          This count charges the defendant with violating

17   Section 922(k) of Title 18 of the United States Code.  Section

18   922(k) provides, in part, that:

19          It shall be unlawful for any person knowingly to

10:33 20  possess or receive any firearm which has had the importer's or

21   manufacturer's serial number removed, obliterated, or altered

22   and has, at any time, been shipped or transported in interstate

23   or foreign commerce.

24          The defendant is charged with possessing a firearm in

25   or affecting commerce with an obliterated or removed serial

number.  It is against federal law to possess a firearm with an
obliterated or removed serial number that has been connected
with interstate or foreign commerce.  For you to find the
defendant guilty of this crime, you must be satisfied that the
government has proven each of the following things beyond a
reasonable doubt:

First, that the defendant knowingly possessed a
firearm described in the indictment; second, that the serial
number was removed, obliterated or altered at the time the
defendant possessed the firearm; and third, that the firearm
was connected with interstate or foreign commerce.  This means
that the firearm, at any time after it was manufactured, moved
from one state to another or from a foreign country into the
United States.  The travel need not have been connected to the
charge in the indictment, need not have been in furtherance of
any unlawful activity, and need not have occurred while the
defendant possessed the firearm.

The term "firearm" means any weapon which will or is
designed or may readily be converted to expel a projectile by
action of an explosive.  The term "firearm" also includes the
frame or receiver of any such weapon.

You'll be pleased to know I've now come to the last
and final part of my instructions, the rules for your
deliberations.

When you retire, you will discuss the case with the

1    other jurors to reach agreement if you can do so.  As your

2    first order of business, you should select a foreperson.  You

3    shall permit your foreperson to preside over your deliberations

4    and your foreperson will speak for you here in court.  Your

5    verdict as to each count must be unanimous; that is, all of you

6    must agree on the verdict.

7           Each of you must decide the case for yourself, but you

8    should do so only after considering all the evidence,

9    discussing it fully with the other jurors, and listening to the

10:35 10  views of the other jurors.

11          Do not be afraid to change your opinion if you think

12   you are wrong, but do not come to a decision simply because

13   other jurors think it is right.

14          This case has taken great time and effort to prepare

15   and try.  There is no reason to think it could be better tried

16   or that another jury is better qualified to decide it.  It is

17   important, therefore, that you reach a verdict if you can do so

18   conscientiously.  If it looks at some point as if you may have

19   difficulty in reaching a unanimous verdict, and if the greater

10:36 20  number of you are agreed on a verdict, the jurors in both the

21   majority and the minority should reexamine their positions to

22   see whether they have given careful consideration and

23   sufficient weight to the evidence that has favorably impressed

24   the jurors who disagree with them.  You should not hesitate to

25   reconsider your views from time to time and to change them if

1    you are persuaded that this is appropriate.

2          It is important that you attempt to return a verdict,

3    but of course, only if each of you can do so after having made

4    your own conscientious determination.  Do not surrender an

5    honest conviction as to the weight and effect of the evidence

6    simply to reach a verdict.

7          At this point I'm going to ask Ms. Hourihan to

8    distribute to each of you a chart of the elements of the

9    offenses and the Racketeering Acts charged in this case.

10:37 10          (Pause.)

11          THE COURT:  Okay.  It looks like all of you have a

12    copy now.

13          This chart is solely for the purposes in assisting you

14    in keeping track of each of the elements in each of the charged

15    offenses and Racketeering Acts.  It is not a substitute for the

16    instructions I've given you today.  These instructions as a

17    whole, my instructions as a whole, that is, shall govern your

18    deliberations, and this chart is merely offered as an aid to

19    your understanding of those instructions.

10:38 20          Let me just walk you through what this is.  I realize

21    that I covered a lot of ground this morning in talking at you,

22    and this is to assist you in remembering which elements apply

23    to which counts and which Racketeering Act.  Just to take you

24    through it briefly, each of the elements of each of the

25    separate counts are listed.

1          Counts One and Two are here on the first page.  Page 2

2     is where the elements for each of the Racketeering Acts begin.

3          So Racketeering Act One and Two, and again, it lists

4     each of the elements that apply, since some of these elements

5     arise under state law and some of arise under federal law.

6          The Racketeering Acts and their elements appear on

7     this chart through page 22.

8          If you look at page 23, that's where the remainder of

9     the counts appear, starting with Counts Three, Four, and Five

10:39 10    on page 23.

11         On page 24 are the elements for the concealment money

12    laundering, Counts Six through Twenty-Six, Count Twenty-Seven.

13         Count Thirty-Nine starts on the top of page 26, and

14    goes through all of the firearms offenses, Counts Thirty-Nine,

15    Forty, Forty-Two, Forty-Five, and Forty-Eight.

16         Counsel and I both thought this might be an aid to you

17    during your deliberations.

18         Jurors, I now want to read for you what you will

19    receive in the jury room, which is what we call the verdict

10:40 20    form.  This is simply the written notice of the decision you

21    will reach in this case.  You will have a copy in the jury room

22    with you.

23         It has the case caption on the top, and it provides,

24    We, the jury, find the defendant, James J. Bulger... and it has

25    a listing for each of the counts.

1          As to Count One, the racketeering conspiracy, and

2    there's a space for either guilty or not guilty, which is what

3    your foreperson will check.  The same is true for all of the

4    remaining counts.

5          As to Count Two, as I described to you in the

6    instructions, there's a listing of each of the Racketeering

7    Acts.  So each of the 33 acts.  And if you find that Mr. Bulger

8    is guilty as to Count Two, the substantive Racketeering Act, it

9    asks you to indicate below which alleged Racketeering Acts you

10:41 10   unanimously find the government has proven beyond a reasonable

11   doubt.  And again, it lists each of the 33 Racketeering Acts

12   and there's a place to mark either "proved" or "not proved."

13   And as I said, the verdict form lists all of the remaining

14   counts through Count Forty-Eight, and then on the final page,

15   there's a place for the foreperson's signature and the date.

16         After you have reached unanimous agreement on a

17   verdict, your foreperson will fill in the form that has been

18   given to you, sign, and date it, and advise the court security

19   officer, the jury officer, outside your door that you're ready

10:42 20   to return to the courtroom.

21         After you return to the courtroom, your foreperson

22   will deliver the completed verdict form as directed in open

23   court.

24         After you reach a verdict, there may be an additional

25   proceeding.

1      If it becomes necessary during your deliberations to

2   communicate with me, you may send a note through the jury

3   officer signed by your foreperson or by one or more members of

4   the jury.  No members of the jury should ever attempt to

5   communicate with me on anything concerning the case, except by

6   a signed writing, and I will communicate with any member of the

7   jury on anything concerning the case only in writing or orally

8   here in court.

9      If you send out a question, I will consult with the

10:42 10   parties as promptly as possible before answering it, which may

11   take some time.  You may continue with your deliberations while

12   waiting for the answer to any question.

13      Remember, you are not to tell anyone, including me,

14   not the court security officer, not any member of the staff,

15   how the jury stands numerically or otherwise until after you've

16   reached a unanimous verdict or have been discharged.

17      Jurors, this is the juncture where I just need to

18   consult with counsel at sidebar.  Bear with us for a moment.

19      (At sidebar on the record.)

10:44 20      THE COURT:  Mr. Wyshak, anything?

21      MR. WYSHAK:  No objections, your Honor.

22      THE COURT:  Okay.

23      Mr. Carney?

24      MR. CARNEY:  I thought it was comprehensive and

25   excellent.

1          THE COURT:  Well, thank you.

2          So my plan is to just at the end send the 12 off, I'll

3     keep the six alternates behind.  I'm going to give them

4     instructions about how they're still important, they're not

5     discharged, we're going to make them comfortable, and there may

6     be a need for them to jump if something happens to one of the

7     jurors, and that, you know, they can have their electronic

8     device back as long as they abide by all of my instructions.

9          Okay?

10:44  10          MR. CARNEY:  Thank you.

11          (End of discussion at sidebar.)

12          THE COURT:  Members of the jury, it is now time for

13     the case to be submitted to you.  I will submit to you a

14     written copy of the jury charge that I read to you this morning

15     when you go to the jury room.  I want to caution you, however,

16     not to dwell on any one particular portion of it, if you decide

17     to review it at all, because you must consider these

18     instructions as a whole and not just one individual particular

19     instruction.

10:45  20          In a moment you may commence your deliberations.

21          All of you who are on the jury must be together at all

22     times when you're deliberating.  Whenever you need a recess for

23     any purpose, your foreperson may declare a recess.  Do not

24     discuss the case during a recess in your deliberations.  All

25     your discussion of the case should occur only when you are all

1    together and your foreperson has indicated that deliberations

2    may proceed.  This should be your procedure so that everyone in

3    the jury has an equal opportunity to participate and hear all

4    of what other members of the jury have to say.

5            In a moment, you're going to go to the jury room, the

6    12 members of the deliberating jury, and commence your

7    deliberations.

8            The exhibits, with the exception of the firearms,

9    ammunition, and cash themselves that were admitted in evidence

10:45 10   will be sent back with you as well.  The firearms, ammunition,

11   and cash admitted will be available for your inspection, if you

12   request it.

13           You will receive, as I said, a copy of the indictment,

14   and as I said, a written copy of the charge.

15           After you've picked your foreperson, you may want to

16   turn your attention to the JERS system.  It's a touch-screen

17   program.  You probably noticed the big screen on the wall,

18   that's a JERS system.  On the bottom left corner of the screen

19   there's a button for a brief tutorial on using the system, it

10:46 20   runs for about a few minutes.  There is then a button on the

21   screen, the bottom right of the screen, that will allow you to

22   access the exhibits that have been uploaded to the system.  So

23   all of the exhibits, including going back to you in hard copy

24   form are also all uploaded onto that system, as well as a copy

25   of the jury instructions I just gave you.

1       As I said, our deliberating jury in this case is going

2  to be 12 jurors.  It will be all of the members of the jury who

3  are sitting in the front row and the first three of you in the

4  back row.  I would ask you in a moment to rise and go back to

5  the jury room to begin your deliberations.  I want to thank you

6  for your attention this morning, and as I said, we'll get the

7  exhibits back to you along with the verdict form, indictment,

8  and jury instructions.

9       If the first 12 jurors -- we can stand for the first

10:47 10  12 jurors to go to the jury room.

11      I'd ask the remaining six jurors to stay here for a

12  moment.

13      (Deliberating jurors left the courtroom.)

14      THE CLERK:  Please be seated.

15      THE COURT:  To the remaining jurors in the box, you

16  probably figured out by now you're our alternate jurors in this

17  matter.  I am not discharging you at this time because you

18  still have a very important role to play.  As was the case

19  throughout this trial, if anything happens to any of our

10:48 20  deliberating jurors, we may need one or more of you to step in

21  to become one member of the deliberating jury.  For that

22  reason, I need to ask you to continue to serve in this matter

23  until a verdict is reached in this case.

24      All of my cautionary instructions to all of you still

25  apply.  You cannot speak to each other about this case, cannot

1    speak to any of the deliberating jurors that you might run into

2    in the hallways during their deliberations, and you still

3    cannot be exposed to any media coverage of this matter or do

4    any outside research.

5           We're going to make sure that you are comfortable

6    while you continue to serve in this matter in a waiting space

7    that's separate from the deliberating jury, and we'll still

8    make sure to feed you and make sure you're otherwise

9    comfortable.

10:49 10          If you want to bring any reading material or if you

11   have any electronic devices that you had to check downstairs,

12   we'll make sure that those get to you.  Just keep in mind and

13   bear in mind that you still cannot read or be exposed to any

14   media coverage of this case.  And again, even though you'll be

15   in a room together, you cannot discuss this case.

16          I want to thank you for your continued service.  I

17   realize you might be somewhat disappointed in not yet having

18   the opportunity to talk about this case, but your service as

19   alternate jurors is very important to the integrity of this

10:50 20   proceeding.

21          All rise for our remaining jurors.

22          (Alternate jurors left the courtroom. )

23          THE COURT:  Counsel, anything else at this point?

24          MR. KELLY:  No, your Honor.

25          MR. CARNEY:  No, your Honor.

1          THE COURT:  Counsel, have you yet certified on the

2     record that the exhibits are in order?

3          MR. KELLY:  Yes, we'll do so now.  I think Agent

4     Lemanski spoke with the deputy clerk, and we are ready to

5     certify the exhibits.

6          THE COURT:  I'll leave you to do that with

7     Ms. Hourihan on the record after we stand in recess.

8          Counsel, I think I mentioned this before, but if we

9     haven't heard from the jury beforehand about any matter, my

10:51 10  practice is to have Ms. Hourihan check in with them at around

11    4:15.  So I would ask counsel to gather in the courtroom around

12    4:30, because if the jury wants to be excused for the day,

13    we'll excuse them at 4:30.  I'll just remind them of my

14    cautionary instructions.

15         It is also my practice to greet the jurors every day

16    in the morning, and I'll do that with all 18, even though our

17    alternate jurors will be going to a separate waiting space.

18         MR. CARNEY:  Can I ask a question, please?

19         THE COURT:  Yes.

10:51 20  MR. CARNEY:  Are we permitted to go back to our

21    office?  We can be back at the court within 20 minutes of

22    notification, or do you prefer that we wait here at the

23    courthouse?

24         THE COURT:  Counsel, I prefer if you wait closer by,

25    because I don't know what, if any, question they may have.  But

1    why don't -- well, I think for this morning that might be okay

2    to do, counsel.

3           MR. CARNEY:  Thank you, your Honor.

4           THE COURT:  Counsel, anything else?

5           MR. KELLY:  No, your Honor.

6           MR. CARNEY:  No, your Honor, thank you.

7           THE COURT:  Counsel, before we know what the outcome

8    in this case is, I just want to thank all counsel in this case

9    for their advocacy and preparation of this case.  I think you

10:52 10   all showed incredible skill and wise economy in presenting this

11   case and defending this case, and I say that to all of the

12   attorneys.  So Mr. Hafer, Mr. Brennan, don't ever let lead

13   counsel let you think otherwise in terms of your contributions

14   to this case.

15          I also want to thank all of you for the courtesy that

16   you've to shown the Court and my staff.

17          I should also thank all of my staff for keeping the

18   trains running on time, and all of the court staff that have

19   been in my courtroom for the past two months.

10:53 20        Thank you.

21          COUNSEL:  Thank you, your Honor.

22          (Court recessed at 10:53 a.m.)

23          MR. KELLY:  Brian Kelly on behalf of United States, we

24   were just present for the jury instructions and jury charge,

25   and we have reviewed the government's exhibits, and I hereby

1    certify that the government's exhibits that were offered in

2    court are in fact the ones that are in the record now and can

3    be presented to the jury.  This is with respect to the

4    government's exhibits only.

5              (Discussion off the record.)

6              MR. BRENNAN:  This is Hank Brennan, and I am

7    certifying the defense exhibits.

8              (Recess taken at 12:04 to 4:34 p.m.)

9              (Jury entered the courtroom.)

04:36 10       THE CLERK:  Please be seated.

11             THE COURT:  Jurors, we're going to let you go home for

12   the day.  You should all, and when I say all, I mean both the

13   deliberating jurors and our alternates, bear in my mind my

14   cautionary instructions.  You are still not allowed to talk to

15   anyone outside about this case, and in fact aren't allowed to

16   talk to each other until we greet you tomorrow morning and you

17   go back officially to the deliberation room to continue your

18   deliberations.  Again, don't watch any media accounts, don't do

19   any outside research, and we'll see you in the morning.

04:36 20       Thank you.

21             THE CLERK:  All rise.

22             (Jury left the courtroom.)

23             THE COURT:  Counsel, anything?

24             MR. CARNEY:  Yes, I wondered if we could approach the

25   sidebar, please.

```
 1              MR. KELLY:  I'd like one minute, first.

 2              THE COURT:  Sure.

 3              Everyone else can be seated.

 4              MR. KELLY:  Your Honor, we would request that the

 5     Court specifically instruct Mr. Carney that he needs to follow

 6     the local rule --

 7              MR. CARNEY:  Your Honor.

 8              MR. KELLY:  -- with regards to press.

 9              It's come to our attention that he's trying to arrange

04:37 10  some interview with Mr. Bulger and CNN tonight by phone from

11     the prison.

12              We think that's woefully inappropriate.  The local

13     rule provides that during the trial of any criminal matter, no

14     lawyer shall give or authorize any extrajudicial statement or

15     interview related to the trial or issues in the trial which a

16     reasonable person would expect to be disseminated by means of

17     public communication.  And we think if he is arranging a

18     telephone interview tonight with his client, who by the way,

19     failed to take the witness stand in his own defense but now

04:38 20  wants to give interviews, we think that would be a direct

21     violation of the rules.

22              And if he's going to tell the Court, Well, it's simply

23     so it can be aired later, that's something that should be done

24     post-verdict, because, frankly, we don't believe it.

25              This is the same defense attorney who told the Court
```

1  he wouldn't reference the polygraph in his opening, and he did.

2  This is the same defense attorney who put exhibits into the

3  public record and said, Oops, my mistake.

4       Now he's arranging with the local facility for a phone

5  call from his client tonight, as the jury steps out and begins

6  its deliberations so that he can speak to CNN and we think it's

7  totally inappropriate, and we would ask can the Court to

8  admonish counsel not to do it.

9       THE COURT:  Mr. Carney?

04:39 10      MR. CARNEY:  The government has its facts wrong.

11       There is a documentary film being made about this case

12  that expected to be shown in its earliest in April of 2014.

13  The documentary crew asked me if they could film me in my

14  office, speaking to my client.  In an effort to be totally

15  transparent, the first step I did was, I called the

16  superintendent of the jail, anticipating that I would speak to

17  the superintendent, he would speak to the marshal, the marshal

18  would speak to the prosecutors, I would speak to the Court; but

19  just as the first step, openly doing this, asking the

04:40 20  superintendent if he had any issue with them filming me in my

21  office while this occurred for a documentary that will not

22  appear before April of 2014.  He said he'd call me back.

23       He did call me back.  He raised an issue with me, and

24  I said, Fine.  That's -- so no interview with my client by this

25  crew was ever going to take place.

1          Moreover, because it's a documentary that can't --

2     that is not expected to be shown before April of 2014, it would

3     comply totally with the rule because a documentary being filmed

4     now has no possibility of being shown to the public while this

5     case is pending.

6          THE COURT:  And just back up for a moment.

7          So where it stands now is that no interview is being

8     recorded?

9          MR. CARNEY:  That's correct.

04:41 10        And this documentary crew was not going to be

11    interviewing my client.

12         THE COURT:  In the first scenario, but now the new

13    scenario no interview is taking place.

14         MR. CARNEY:  Yes.

15         I mean, documentary people like to film people doing

16    things, and since they're not able to interview Mr. Bulger

17    pursuant your Honor's order earlier, they wanted to get a

18    picture of me speaking there.

19         And so in an effort to be transparent, the first call

04:41 20   I made was to the superintendent to ask him what his thoughts

21    were.

22         I mean, if I wanted to be going behind anyone's back,

23    I wouldn't have notified anybody, because how would they know

24    this is happening?

25         So, basically, the bottom line is the government has

        1    its facts wrong.  It would have been completely in compliance

        2    with the local rule, but I was just taking the first step in

        3    this process.

        4              MR. KELLY:  Well, several points.

        5              First of all, it was initially represented to us that

        6    Mr. Bulger was going to give an interview.  If that's not the

        7    case, that's --

        8              THE COURT:  Well, I understand that not to be the

        9    case.

04:42  10              MR. KELLY:  Secondly, why would -- if he's just

       11    getting a picture taken holding the phone, it doesn't matter

       12    who's on the other end, so why would Mr. Bulger have any

       13    involvement in that at all?

       14              And thirdly, I think if it's not being aired until

       15    April of 2014, counsel should -- could wait a day or two until

       16    the verdict's been returned before he continues his relentless

       17    interaction with the media.

       18              THE COURT:  Well, as I understand it, there's no

       19    interaction going on, counsel?

04:42  20              MR. CARNEY:  Right.

       21              THE COURT:  Okay.

       22              MR. CARNEY:  And as I say, when I called the

       23    superintendent, I wanted to get his input about this, and

       24    whenever it concerns a federal prisoner, it's going to go

       25    further, and if he said, Jay, I'm not comfortable with that, it

1    wouldn't have happened.

2         THE COURT:  Counsel, I think representations,

3    Mr. Kelly, have been made on the record to this point.

4         MR. KELLY:  Thank you.

5         THE COURT:  Okay.

6         Counsel, just one additional thing, just about

7    logistics in response to Mr. Kelly's inquiries.

8         You don't have to be here at 8:45 tomorrow.  If

9    counsel could be here a before 9:00, our jurors, as you know,

04:43 10   have been very prompt in this case, and I want to be able to

11   greet them promptly at 9:00 and let them get back to

12   deliberations.

13        Mr. Carney, you had asked me before about counsel

14   sticking around.  It is my usual practice, in both civil and

15   criminal cases, to have counsel stick around the courthouse.  I

16   know this is somewhat of an inconvenience for you, I know you

17   have a conference room space, but certainly there are a lot of

18   people camped out here, including, frankly, Mr. Bulger himself,

19   and I would just ask you to stick around the courthouse.

04:43 20   Mr. Brennan, I would ask you to do the same, just because if

21   there are any questions, I'd like to be able to answer them

22   promptly.  I know I told them that they can continue their

23   deliberations, but in my experience, they're waiting somewhat

24   with baited breath to hear what the Court's response is.

25        MR. CARNEY:  Can I respectfully ask the Court to

1    reconsider that and tell you why?

2         As you know, I'm appointed by the Court on this case,

3    and have devoted my time almost exclusively for months and

4    months to virtually nothing but this case and have put my

5    entire practice on hold.  There are people I represent who are

6    anxious to meet with me and can't meet with me in the

7    courthouse.

8         I can also represent, your Honor, I've tried quite a

9    number of cases in this court in the 25 years that I've been a

04:45 10   member of the bar -- well, I've been a member of the bar here

11   since '79, but I've tried cases in this court for 25 years now.

12   In every single trial that I've had in this court, I've been

13   permitted to go back to my office, and in every single trial,

14   whether there was a verdict or a question, I was back in the

15   courthouse in less than 20 minutes.

16        I just can't deal with my practice when I'm in the

17   courthouse, and given, frankly, the sacrifice that Mr. Brennan

18   and I have made to devote as much time as we did to this case,

19   we would respectfully request that we be able to go to the

04:45 20   office.  The way we would come back is by cab, there's a cab

21   stand with long line of cabs --

22        THE COURT:  I know, counsel, but to be perfectly

23   honest, I think, and correct me if I'm wrong, the jury was

24   ready to go this afternoon, and I think we were waiting on

25   counsel, and I don't want to be the case, particularly if they

1  have a question --

2          MR. CARNEY:  I thought we were told to be here at

3  4:30.

4          THE COURT:  Well, counsel, that's what I'm talking

5  about.

6          So --

7          MR. CARNEY:  I was in the building.

8          THE COURT:  Okay.

9          MR. CARNEY:  I got a call from Mr. Brennan, and I

04:46 10  alerted him to something outside the courthouse -- I mean to

11  something outside the courtroom and then came in here.

12          THE COURT:  Counsel, I understand your concern, I

13  understand other practices might be different in other

14  courtrooms, but I'm going to stand by what I said.

15          MR. CARNEY:  Yes, your Honor.

16          THE COURT:  Thank you.

17          Counsel, we'll see you in the morning.

18          THE CLERK:  All rise.

19          (Court adjourned at 4:46 p.m.)

20                  - - - - - - - - - - - -

21

22

23

24

25

1                        CERTIFICATION

2          I certify that the foregoing is a correct transcript

3    of the record of proceedings in the above-entitled matter to

4    the best of my skill and ability.

5

6

7

8    /s/Debra M. Joyce                August 6, 2013
     Debra M. Joyce, RMR, CRR        Date
9    Official Court Reporter

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25