UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 99-10371-DJC |
| | ) | |
| JAMES J. BULGER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

James "Whitey" Bulger is one of the most violent and despicable criminals in Boston history. Having now been convicted of thirty-one felonies, including RICO counts involving multiple murders, Bulger richly deserves to spend the rest of his life in jail.

More specifically, Bulger's conviction on Counts 1, 2, 3, 5-27, 42, 45 and 48 result in a U.S. Sentencing Guideline range of life – there is no lower level. Additionally, Bulger's conviction on Count 39 requires a mandatory consecutive sentence of five years' incarceration and his conviction on Count 40 requires a mandatory consecutive sentence of life imprisonment. As set forth in the Presentence Report ("PSR") at paragraphs 89

and 134, the U.S. Probation Department agrees with these calculations.[1]

There are no mitigating factors, and defendant Bulger has no redeeming qualities, which would justify any sentence below the one called for by the U.S. Sentencing Guidelines and the applicable case law and statutes: life imprisonment on Counts 1, 2, 3, 5-27, 42, 45 and 48, followed by a consecutive sentence of five years' incarceration on Count 39, which in turn must be followed by a consecutive sentence of life imprisonment on Count 40. Of course, there must also be a mandatory special assessment of $3,100 based upon the thirty-one counts of conviction. Further, the Court should enter the requested orders of forfeiture (for specific property and for a money judgment) to prevent any money -- whether earned from his crimes or obtained in the future -- from finding its way into Bulger's pocket.[2] See

[1] Government counsel previously opined – incorrectly - that Bulger's conviction on Count 40 would require a mandatory consecutive sentence of thirty years' incarceration; in fact, both the case law and the U.S. Sentencing Guidelines ("U.S.S.G.") require a mandatory consecutive sentence of life imprisonment. See, U.S.S.G. §2K2.4 and Deal v. United States, 508 U.S. 129, 133 (1993); United States v. Robles, 709 F.3d 98, 101 (2nd Cir. 2013)(citing cases).

[2] The government has proposed entering into a settlement agreement with the victims in this case so that any forfeited funds may be divided among, and paid out to, the victims. The overwhelming majority of the victims have indicated to the

ECF Dkt Nos. 1323, 1324. Finally, the Court should order restitution to the murder victims of Bulger's racketeering organization as charged in the Third Superseding Indictment and to extortion victims Michael Solimando and Richard Bucheri. See 18 U.S.C. § 3663A(b).[3] The government will summarize the documented restitution claims in a separate filing prior to sentencing.

---

United States that they support this proposal and would opt in to such a settlement agreement.

[3] The restitution order should include both the estates of the murder victims for which the jury returned verdicts of no finding or not proven, and the estates of the murder victims that the jury found were proven beyond a reasonable doubt. See United States v. Aguirre-González, 597 F.3d 46, 51 (1st Cir. 2010)("the district court may now 'order restitution without regard to whether the conduct that harmed the victim was conduct underlying the offense of conviction'")(quoting United States v. Acosta, 303 F.3d 78 (1st Cir. 2002)). See also, United States v. Watts, 519 U.S. 148, 157 (1997) ("a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence"); United States v. Bradley, 644 F.3d 1213, 1298 (11th Cir. 2011) (The district court did not err in ordering restitution based upon activity for which the jury acquitted the defendant, but for which the Court found the Government proved by a preponderance of the evidence.)

The restitution orders for murder victims' estates should also include both funeral and related expenses pursuant to 18 U.S.C. § 3663A(b)(3) and lost income pursuant to 18 U.S.C. § 3663A(b)(2). See United States v. Cienfuegos, 462 F.3d 1160, 1168 (9th Cir. 2006) ("[t]o not award restitution for future lost income would lead to a perverse result where murderers would be liable for markedly less in restitution than criminals who merely assault and injure their victims").

**Whitey Bulger Deserves No Mercy**

This Court presided over a two-month trial which graphically revealed Bulger's sinister nature and his truly disturbing disregard for human life. His crimes caused untold grief to the victims' families as well as enormous pain and suffering to the victims themselves. Bulger's horrific crimes and sadistic behavior (e.g., shooting Bucky Barrett in the back of the head at close range after hours of interrogation and then lying down on the couch to relax as his gang buried Barrett) demonstrate that he deserves no mercy at the time of sentencing.

When he was finally captured after sixteen years as a fugitive, Bulger chose to go to trial and play an elaborate game of "Let's Pretend." While legally irrelevant, Bulger was most intent on pretending he was never an FBI informant despite the innumerable meetings he had with various FBI agents in which he provided information on his criminal competitors. Strangely, despite denying his well-documented role as an informant, Bulger also tried to pretend that the federal government had given him full immunity in exchange for apparently nothing. Yet, when given the opportunity pretrial to present evidence of this imaginary license to kill, Bulger declined to offer any. Through counsel, Bulger also pretended pretrial that he was

going to testify and explain to everyone his many absurd claims. While ultimately unsuccessful, Bulger even attempted to block the press from reporting on his life of crime by asking the Court to sequester various reporters whom he pretended to be calling as witnesses. Tellingly, he listed the reporters (Howie Carr, Shelley Murphy, Kevin Cullen, Dick Lehr) whom he most despised and then dropped them from the witness list when his sequester request failed. And finally, perhaps most cruelly, Bulger, through counsel, even pretended to care about his murder victims' families.

Whitey Bulger's decades-long crime spree is now over. Presiding over a massive criminal enterprise, Bulger extorted dozens of individuals, flooded South Boston with cocaine, shot innocent people, strangled women, murdered his competitors, corrupted FBI agents, and then ran away and hid for sixteen years when he was finally indicted. While many of the victims will speak for themselves and their loved ones at the time of sentencing, the actual sentence should speak for itself: life in prison.

**Conclusion**

For the reasons set forth above, the United States respectfully requests that the Court sentence James "Whitey"

Bulger to life in prison on Counts 1, 2, 3, 5-27, 42, 45 and 48, followed by a consecutive sentence of five years' incarceration on Count 39, and then a consecutive sentence of life imprisonment on Count 40.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

Dated: November 7, 2013 By: */s/ Brian T. Kelly*
BRIAN T. KELLY
FRED M. WYSHAK, JR.
ZACHARY R. HAFER
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the notice of Electronic Filing.

*/s/ Brian T. Kelly*
BRIAN T. KELLY
Assistant U.S. Attorney

Dated: November 7, 2013